## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RUSSIAN RESEARCH CENTER**<br>**THE KURCHATOV INSTITUTE**<br>**1, Kurchatov Square**<br>**Moscow 123182**<br>**Russian Federation**<br><br>**Plaintiff**<br><br>vs.<br><br>**WESTERN SERVICES CORPORATION**<br>**5705 Industry Lane**<br>**Frederick, Maryland  21704**<br><br>and<br><br>**8714 Birkenhead Court**<br>**Laurel, Maryland 20723-5981**<br><br>**SERVE:    Alexander L. Adamovich**<br>**Registered Agent**<br>**8941 Tamar Drive, #101**<br>**Columbia, Maryland  21045**<br><br>**AND**<br><br>**GUIA OUTMELIDZE (a/k/a George Utmel)**<br>**5705 Industry Lane**<br>**Frederick Maryland  21704**<br>**SERVE:  Guia Outmelidze (a/k/a George Utmel)**<br><br>**Defendants.** | **CASE NO: AMD 02 CV3878** |

## SECOND AMENDED COMPLAINT

Plaintiff Russian Research Center Kurchatov Institute ("KI"), by undersigned counsel,

files this Second Amended Complaint against defendants Western Services Corporation

("WSC") and Guia Outmelidze (a/k/a George Utmel) (hereinafter "Outmelidze") and as grounds therefore, states as follows:

1.      The purpose of this Second Amended Complaint is to reflect that KI has obtained Copyright protection for additional components of the SimPort program (the "Copyrightable Components"), and to add corresponding claims for copyright infringement.

## INTRODUCTION AND PARTIES

2.      Plaintiff KI has its principal place of business in Moscow, Russia.  It has no place of business in the United States.

3.      Defendant WSC is a Maryland corporation that has its principal place of business at 5705 Industry Lane, Frederick, Maryland.

4.      Defendant Outmelidze, upon information and belief, is a citizen and resident of Virginia.

5.      Jurisdiction is based on 28 U.S.C. § 1332 in that the parties are citizens and residents of different states and the amount in controversy is greater than $75,000.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## KI's SimPort

7.      KI is the first state national research center of Russia.  Historically, it was Russia's resource for research and development in the field of atomic energy.  Later KI turned its attention to new problems beyond those relating to atomic energy.  Today KI is involved in many areas of science, beginning at the birth and substantiation of a scientific idea and terminating with the creation of experimental technologies and developments.  Its employees are generally known throughout the world as extremely accomplished scientists.  The KI name carries with it a reputation of scientific integrity, advanced skill and excellence.

8.      Beginning in approximately the late 1980's and early 1990's, KI software specialists and project engineers began developing simulation software that would embrace a full range of tasks on mimic and training systems.  KI's idea was to develop instrumentation for modeling simulation and technology to simulate processes in both nuclear and fossil fuel power plant facilities.

9.      By 1995, KI had developed a series of sophisticated software simulation tools called AIS-95 that could be used to create a customized simulation software package for nuclear and fossil fuel power plants.  By its nature, the tools were and are highly interactive with the power plants and if installed would need to be customized to fit the plants.  Among other tools making up the software, AIS-95 (and thereafter SimPort) contains:  a Hydraulic Steam-Water Properties Calculation Tool, a Thermal Hydraulic Network Application Tool, an Engineering Station Simulation Diagrams Editor, and an Engineering Station Soft Panels Editor.  Some or all of these tools have been part of the software from the earliest AIS-95 version through and including the current 2002 version of SimPort.

10.      By 1996, KI had begun to prepare AIS-95 for promotion and presentation for the worldwide market, including the United States.  Toward that end, KI had prepared an operating version of AIS-95.

11.      In late 1996, KI was approached by Science Applications International Corporation ("SAIC"), a research and engineering firm based in the United States, which was interested in KI's AIS-95 software technology and in partnering with KI to bring the software to western markets.  The parties envisioned a joint effort that would require intensive efforts by KI's engineers to create the interface between the simulation program tools and the various power plants where the software would be installed.  Toward that end,

483924.2                                              3

WSC was to be the vehicle by which KI's software experts were to come to the United States and elsewhere to work at customer sites after SAIC obtained contracts for the software.

12.    Beginning in approximately early 1997, KI began working cooperatively with WSC and SAIC to develop the interfaces for the U.S. market, and to install KI's AIS-95 simulation software.  At that time, upon information and belief, WSC consisted of little more than one individual, Defendant Outmelidze, who was retained by SAIC or its successor in interest with regard to simulation software business, Data Systems & Solutions ("DS&S"), a joint venture between SAIC and Rolls-Royce.  Since WSC had little or no expertise in simulation software and had no employees who were able to perform the work required, KI's employees, visiting from Russia, were to do the work on site to support SAIC's customers.

13.    On or about March 1, 1997, KI and WSC entered into an agreement to facilitate KI software engineers coming to the United States to work on the simulation software, and to enable KI's software experts to obtain visas to travel to the U.S. to work cooperatively with WSC and others to continue the development and positioning of the software program.

14.    On or about April 1, 1997, KI, after consultation with SAIC and WSC, renamed its AIS-95 simulation software program "SimPort" to enhance its commercial attractiveness in western markets.  Since 1997, KI has modified and updated the SimPort software, creating at least one other version, SimPort 2002.  Unless the context indicates otherwise, all versions of SimPort and all components thereof will be collectively referred to as "SimPort."

15.    Pursuant to the March 1, 1997 Agreement, KI engineers did visit the United States and elsewhere to work with WSC and others on SimPort installations for contracts awarded to SAIC/DS&S.

16.    KI permitted WSC, SAIC and DS&S to utilize its SimPort name in connection with proposals to potential licensees of the SimPort program.

17.    KI also provided project engineers and software specialists to WSC to assist WSC and others in providing the simulation software for a variety of projects.

18.    Initially, WSC had no capability to write the source code, improve the tools of the software package that comprised SimPort, or even install the SimPort software into a particular power plant.  Upon information and belief, however, WSC and Outmelidze tried to acquire the source code of KI's SimPort program from visiting KI engineers by surreptitiously trying to strike personal deals with them for the SimPort source code.

19.    Gradually, WSC began to hire away KI employees who had worked on the development of KI's SimPort in order to obtain KI's confidential information and to work on competing simulation software for WSC.  Upon information and belief, WSC and Outmelidze were well aware that KI's current and former employees were obligated pursuant to their employment relationships not to reveal confidential information to non-KI personnel.  In particular, Outmelidze and WSC knew and understood that KI employees were not permitted to provide SimPort source code or related confidential information to Outmelidze or WSC.

20.    Among the most serious of WSC's wrong-doing, however, was its false and misleading representations concerning its rights to KI's SimPort program and related technology. KI is now aware, but was not aware at the time,  that on or about December 9, 1997, WSC purported to grant SAIC a license to use KI's SimPort program in return for royalties and other

consideration.  In this license, WSC represented and warranted to SAIC that WSC owned or

controlled all world-wide "patent" rights and "know-how" related to KI's software and associated

technology.  This representation is false and was false when made, and was made by WSC for the

purpose of obtaining for itself financial and other benefits which rightly belonged to KI.

21.     Notwithstanding the purported license granted to SAIC from WSC, SAIC was well

aware of, and communicated the fact that the SimPort software was developed and owned by KI.

22.     From 1997 through 2001, KI continued to cooperate with WSC and SAIC/DS&S

with the understanding that KI's role in connection with the creation of SimPort would be

recognized and that it would be compensated for its efforts and for the use of its SimPort software.

KI repeatedly raised with WSC, Outmelidze and others the issue of memorializing the complete

arrangement between the parties, including the financial arrangement and the acknowledgement of

KI's creation of the SimPort program.  Outmelidze and others repeatedly responded to these

requests by acknowledging KI's important role in the creation, modification and further

development of SimPort and affirming that KI was entitled to its share of the profits from SimPort,

or some other equitable compensation.  Outmelidze and others also repeatedly promised that

further written documentation of the arrangement between the parties would be forthcoming.

23.     Notwithstanding these promises, WSC and Outmelidze failed and refused to make

any payments to KI or to provide KI with adequate information about the project proposals in

which the SimPort program was used.  WSC and Outmelidze also failed to provide any

documentation to further memorialize the parties' duties to each other, or to execute such

documentation when it was presented by KI.

24.     Upon information and belief, KI's SimPort, or derivatives thereof, were

utilized by WSC, SAIC and/or DS&S in at least the following power plants: Sherco 2

(Northern State Power Co. in Minnesota), Armstrong (Allegheny Power Service Co. in Pennsylvania), Arnot (ESKOM in South Africa), Hatch (Georgia Power Co. in Georgia), Seabrook (New Hampshire), Vermont Yankee (Vermont Yankee Co. in Vermont), Bradwell (BNFL in Great Britain), Dungeness (BNFL in Great Britain), Hinkley Point (BNFL in Great Britain), Oldbury (BNFL in Great Britain), and Sizewell (BNFL in Great Britain). Upon information and belief, WSC, SAIC and/or DS&S have licensed and/or sold software substantially similar or identical to KI's SimPort to additional power plants and others.

26. Upon information and belief, WSC, Outmelidze and others were paid substantial sums for the SimPort programs installed at or otherwise licensed or sold to the power plants listed in paragraph 24, above. WSC, Outmelidze and others were able to obtain these financial and other benefits solely because of KI's own efforts and WSC's and other's misrepresentations concerning their rights to use and license KI's software and associated technology. KI has never received any payment for the use of the SimPort programs in those installations (or any other) for projects awarded to WSC, SAIC and/or DS&S.

26. Upon information and belief, in approximately 1999, WSC and Outmelidze decided that WSC would create its own software, and use KI's SimPort name, so that it would not be dependent upon KI to provide WSC with KI's technology and personnel. Upon information and belief, WSC and Outmelidze also wanted to avoid having to pay KI and/or having to acknowledge KI's creation of the SimPort program.

27. Upon information and belief, thereafter, to further the scheme to completely usurp and control the SimPort program and to deprive KI of its share of the profits or other

equitable compensation, WSC and Outmelidze hired a number of KI engineers and software specialists who had developed KI's SimPort to move to the United States, to become employees of WSC and to work on a simulation software program derived from KI's SimPort. Upon information and belief, at that time WSC and Outmelidze knew that hiring such KI employees to work on a SimPort derivative being credited by WSC would require the KI employees to provide confidential information in breach of their non-disclosure obligations regarding the SimPort program.

28. Upon information and belief, after 1999, WSC, Outmelidze and others made certain modifications to KI's SimPort program. As a result, WSC and Outmelidze now maintain and represent that they have their own SimPort software program. Upon information and belief, WSC and Outmelidze have licensed such a SimPort program to DS&S, again falsely representing that WSC has the necessary rights to the SimPort program to provide such a license. WSC's SimPort program, its tools, and its functions have remained substantially the same as KI's SimPort. Moreover, WSC and Outmelidze have been marketing, licensing and selling a program called SimPort, without acknowledging that (i) the program is derived from one created by KI, (ii) KI owns the intellectual property rights to SimPort, and (iii) KI has not authorized WSC's and Outmelidze's use of KI's SimPort program.

29. On or about May 28, 2002, KI sent a cease and desist letter to WSC, a copy of which was set forth as Exhibit A to KI's First Amended Complaint. Nonetheless, WSC has continued to use the SimPort program in violation of KI's rights and to its detriment. Upon information and belief, WSC has also permitted others, such as SAIC/DS&S, to utilize the SimPort program in violation of KI's rights and to its detriment.

30.    Prior to filing the original Complaint in this action, KI applied for copyright protection for the 1997 and 2002 versions of the SimPort program as well as the four Copyrightable Components. The Certificate of Copyright for the 2002 version of SimPort was attached to Plaintiff's First Amended Complaint at Exhibit B. After examination, the Register of Copyrights determined that the 1997 and 2002 versions of the SimPort program, and each Copyrightable Component, is copyrightable subject matter and that the other legal and formal requirements necessary for issuance of Certificates of Registration had been met. As such, the United States Copyright Office issued Certificates of Registration granting copyright protection to KI for the 1997 and 2002 versions of the SimPort program, as well as each Copyrightable Component. The effective date of the Certificate of Registration for the 2002 version is July 10, 2002. The effective dates of the 1997 version, and each Copyrightable Component is as follows:

a.    effective date for the 1997 version of SimPort is February 4, 2003 (attached as Exhibit C);

b.    effective date for SimPort Thermal Hydraulic Steam-Water Properties Calculation Tool is January 17, 2003 (attached as Exhibit D);

c.    effective date for SimPort Thermal Hydraulic Network Application Tool Version 1.0 PITON is January 17, 2003 (attached as Exhibit E);

d.    effective date for SimPort Engineering Station Simulation Diagrams Editor is January 17, 2003 (attached as Exhibit F);

e.    effective date for SimPort Engineering Station Soft Panels Editor is January 17, 2003 (attached as Exhibit G).

### COUNT I
### (Common Law Unfair Competition)
### Defendants Outmelidze and WSC

31.    Paragraphs 1 through 30 of this Complaint are realleged and incorporated herein by reference.

32.     Outmelidze and WSC have engaged and continue to engage in a course of conduct which was and is designed to and which has had the effect of, and unless stopped will continue to have the effect of, passing off KI's SimPort program, or derivatives thereof, as their own.

33.     On information and belief, the acts done by Outmelidze and WSC are intended to divert and secure to Outmelidze and WSC the benefits and credibility arising from KI's labors, reputation and goodwill embodied in KI's SimPort program and other resources.

34.     On information and belief, Outmelidze's and WSC's use of KI's SimPort program, or derivatives thereof, has deceived, and will continue to deceive the public regarding the source of KI's SimPort program and has resulted, and will continue to result, in actual confusion regarding the source of KI's SimPort program.

35.     The foregoing acts constitute unfair competition under the common law of the State of Maryland as well as other states.

36.     KI has suffered and will continue to suffer monetary damages in an amount to be determined, but greater than $75,000, as well as non-monetary damages as a result of the activities of Outmelidze and WSC.  The aforesaid acts by Outmelidze and WSC will greatly and irreparably damage KI and will continue to damage KI unless enjoined by the Court and KI has no adequate remedy at law for Outmelidze's and WSC's continuing activities.

**COUNT II**
**(Tortious Interference With Business Relations)**
**Defendants Outmelidze and WSC**

37.     Paragraphs 1 through 36 of this Complaint are realleged and incorporated herein by reference.

38.     KI engineers and software specialists who had assisted in developing KI's SimPort program were obligated pursuant to the terms of their employment not to reveal confidential information to non-KI personnel, including Outmelidze and WSC.  Included in such confidential information was the source code for KI's SimPort program.

39.     Upon information and belief, during the course of their employment, KI's engineers and software specialists were approached by WSC and Outmelidze in an attempt to have the engineers and software specialists reveal KI SimPort's source code to WSC and Outmelidze.  Upon information and belief, WSC and Outmelidze knew they had no right to the source code and that obtaining the source code from the engineers and software specialists would require them to violate their non-disclosure obligations.  Moreover, WSC hired away a number of KI engineers and software specialists to become employees of WSC for the purpose of working on KI's SimPort and creating derivatives thereof for WSC and Outmelidze.

40.     Upon being employed by WSC, the former KI employees disclosed the source code for KI's SimPort program to WSC in violation of their non-disclosure agreement with KI.

41.     Moreover, at a time when KI and WSC, among others, were ostensibly cooperating to develop a mutually beneficial business relationship regarding KI's SimPort program, WSC usurped KI's business relationships, and the potential advantage arising from KI's software and technology, by falsely representing to SAIC and others that WSC, and not KI, had the right to license the SimPort technology.

42.     The hiring of the former KI employees by WSC and Outmelidze and the other wrongdoing alleged herein was done for the purpose of damaging KI in its lawful business by appropriating KI's SimPort program for their own use.

43.    As a result of WSC's and Outmelidze's wrongful and unlawful actions, KI's then-existing relationships with a number of its employees, customers and potential customers were disrupted and WSC and Outmelidze induced those employees, former employees, customers and potential customers to breach their obligations to, or decline to do business with, KI.

44.    As a result of WSC's and Outmelidze's actions, KI's existing and prospective relationships with SAIC/DS&S, and potential power plants customers, including those identified above in paragraph 24, were impaired and/or destroyed.  WSC's and Outmelidze's actions precluded KI from capitalizing on its own intellectual property and induced SAIC, DS&S and others to cease their dealings with KI in connection with the SimPort software.

45.    The foregoing acts constitute tortious interference with business relations under the common law of the State of Maryland.

46.    KI has suffered and will continue to suffer monetary damages in an amount to be determined, but in any event no less than $75,000, as well as non-monetary damages as a result of the activities of Outmelidze and WSC.  The aforesaid acts by Outmelidze and WSC will greatly and irreparably damage KI and will continue to damage KI unless enjoined by the Court.

### COUNT III
**(Unjust Enrichment)**
**Defendants Outmelidze and WSC**

47.    Paragraphs 1 through 46 of this Complaint are realleged and incorporated herein by reference.

48.    KI authored, designed and developed the SimPort program and diligently continued working on the SimPort program in an effort to improve the SimPort program.

49.    KI is the sole owner of the SimPort program.

50.    Outmelidze and WSC have knowingly used KI's SimPort program for their own profit and advantage and to the detriment of KI.  Outmelidze and WSC have relied and will continue to rely on KI's SimPort program, and derivatives thereof, to attract customers, investors, business relationships and profits.

51.    Outmelidze and WSC have knowingly and voluntarily accepted and retained the benefits conferred by their direct and continued copying, use, and marketing of KI's SimPort program, and derivatives thereof.

52.    The circumstances are such that allowing Outmelidze and WSC the continued use of KI's SimPort program without compensation to KI for the value thereof would be inequitable and KI has been harmed as a result.

**COUNT IV**
**(Breach of Contract)**
**Defendants WSC and Outmelidze**

53.    Paragraphs 1 through 52 of this Complaint are realleged and incorporated herein by reference.

54.    WSC, Outmelidze, KI and others agreed orally to an arrangement whereby KI would provide the intellectual property to the simulation software, the interface and installation expertise and the credibility and reputation of KI to enhance the attractiveness of the simulation software.  WSC and Outmelidze were to provide a vehicle for travel for KI software specialists and engineers to develop and modify the software for contracts awarded to WSC and/or SAIC/DS&S.  Others were to provide marketing expertise and efforts and entree to the United States and the western market for KI's SimPort.  Several writings memorialize portions of the arrangement.  KI was to receive fifty percent (50%) of the profits from the sales or licenses of SimPort, or some other equitable compensation.

55.     KI has never received any monies from the sales and/or licenses of SimPort, in violation of this agreement.

56.     KI has suffered and will continue to suffer monetary damages in an amount to be determined, but in any event no less than $75,000.

**COUNT V**
**(Copyright Infringement)**
**SimPort Version 2002**
**Defendants Outmelidze and WSC**

57.     Paragraphs 1 through 56 of this Complaint are realleged and incorporated herein by reference.

58.     The 2002 version of the SimPort program was developed wholly by KI employees and is substantially derived from the 1997 version of SimPort, which was original in its entirety.  KI is the rightful owner of the SimPort program as is evidenced by its Certificate of Copyright Registration, attached to the First Amended Complaint as Exhibit B.  By issuing the Certificate of Registration, the Register of Copyrights has determined that the SimPort program is copyrightable and that all legal and formal requirements for issuance of a Certificate of Registration were met.

59.     As has been previously alleged, and upon information and belief, the Defendants have willfully copied all or substantially all of KI's 1997 and 2002 versions of SimPort computer program (as well as the Copyrightable Components) in violation of KI's rights, and have sold and/or licensed the same for its profit and gain; profit and gain rightfully belonging to KI.  At a minimum, Defendants had a reasonable possibility of access to the SimPort technology and the programs now sold by Defendants are, at a minimum, substantially similar to KI's SimPort program.  Defendants have copied constituent elements of the SimPort technology that are original.

60.    KI has never received any monies from the sales and/or licenses of SimPort by Defendants, in violation of KI's rights and the agreement between the parties to the contrary.

KI has suffered and will continue to suffer monetary damages in an amount to be determined, but in any event no less than $75,000, as well as non-monetary damages as a result of the activities of Outmelidze and WSC.  The aforesaid acts by Outmelidze and WSC will greatly and irreparably damage KI and will continue to damage KI unless enjoined by the Court.

**COUNT VI**
**(Copyright Infringement)**
**SimPort Version 1997**
**Defendants WSC and Outmelidze**

61.    Paragraphs 1 through 60 of this Complaint are realleged and incorporated herein by reference.

62.    The 1997 version of the SimPort program was developed wholly by KI employees and is original in its entirety.  KI is the rightful owner of the SimPort program as is evidenced by its Certificate of Copyright Registration, attached hereto as Exhibit C. By issuing the Certificate of Registration, the Register of Copyrights has determined that the 1997 version of the SimPort program is copyrightable and that all legal and formal requirements for issuance of a Certificate of Registration were met.

63.    As has been previously alleged, Defendants have willfully copied all or substantially all of KI's 1997 and/or 2002 version of the SimPort computer program in violation of KI's rights, and have sold and/or licensed the same for their profit and gain; profit and gain rightfully belonging to KI.  At a minimum, Defendants had a reasonable possibility of access to the SimPort technology and the programs now sold by Defendants

are, at a minimum, substantially similar to KI's SimPort program. Defendants have copied constituent elements of the SimPort technology that is original.

64.    KI has never received any monies from the sale and/or licensing of SimPort by Defendants, in violation of KI's rights and the agreement between the parties to the contrary.

KI has suffered and will continue to suffer monetary damages in an amount to be determined, but in any event no less than $75,000, as well as non-monetary damages as a result of the activities of the Defendants. The aforesaid acts by the Defendants will greatly and irreparably damage KI and will continue to damage KI unless enjoined by the Court.

**COUNT VII**
**(Copyright Infringement)**
**SimPort Thermal Hydraulic Steam-Water Properties Calculation Tool**
**Defendants WSC and Outmelidze**

65.    Paragraphs 1 through 64 of this Complaint are realleged and incorporated herein by reference.

66.    The SimPort program, including the SimPort Thermal Hydraulic Steam-Water Properties Calculation Tool (the "Calculation Tool"), was developed wholly by KI employees and is original in its entirety. KI is the rightful owner of SimPort, including this Copyrightable Component of SimPort, as is evidenced by its Certificate of Copyright Registration, attached hereto as Exhibit D. By issuing the Certificate of Registration, the Register of Copyrights has determined that the SimPort program is copyrightable and that all legal and formal requirements for issuance of a Certificate of Registration were met.

67.    As has been previously alleged, Defendants have willfully copied all or substantially all of KI's SimPort computer program (including the Calculation Tool) in violation of KI's rights, and have sold and/or licensed the same for their profit and gain;

profit and gain rightfully belonging to KI.  At a minimum, Defendants had a reasonable possibility of access to the SimPort technology (including the Calculation Tool) and the programs now sold by Defendants are, at a minimum, substantially similar to KI's SimPort program and contain a substantially similar or exact copy of the Calculation Tool. Defendants have copied constituent elements of the SimPort technology that are original.

68.     KI has never received any monies from the sale and/or licensing of SimPort and/or the Calculation Tool by Defendants, in violation of KI's rights and the agreement between the parties to the contrary.

KI has suffered and will continue to suffer monetary damages in an amount to be determined, but in any event no less than $75,000, as well as non-monetary damages as a result of the activities of the Defendants.  The aforesaid acts by the Defendants will greatly and irreparably damage KI and will continue to damage KI unless enjoined by the Court.

**<u>COUNT VIII</u>**
**(Copyright Infringement)**
**SimPort Thermal Hydraulic Network**
**Application Tool Version 1.0 PITON**
**Defendants WSC and Outmelidze**

69.     Paragraphs 1 through 68 of this Complaint are realleged and incorporated herein by reference.

70.     The SimPort program, including the SimPort Thermal Hydraulic Network Application Tool Version 1.0 PITON ("PITON"), was developed wholly by KI employees and is original in its entirety.  KI is the rightful owner of SimPort, including this Copyrightable Component of SimPort, as is evidenced by its Certificate of Copyright Registration, attached hereto as Exhibit E.  By issuing the Certificate of Registration, the

Register of Copyrights has determined that PITON is copyrightable and that all legal and formal requirements for issuance of a Certificate of Registration were met.

71.     As has been previously alleged, Defendants have willfully copied all or substantially all of KI's SimPort computer program (including PITON)  in violation of KI's rights, and have sold and/or licensed the same for their profit and gain; profit and gain rightfully belonging to KI.  At a minimum, Defendants had a reasonable possibility of access to the SimPort technology (including PITON) and the programs now sold by Defendants are, at a minimum, substantially similar to KI's SimPort program and contain a substantially similar or exact copy of PITON.  Defendants have copied constituent elements of the SimPort technology that are original.

72.     KI has never received any monies from the sale and/or licensing of SimPort and/or PITON by Defendants, in violation of KI's rights and the agreement between the parties to the contrary.

KI has suffered and will continue to suffer monetary damages in an amount to be determined, but in any event no less than $75,000, as well as non-monetary damages as a result of the activities of the Defendants.  The aforesaid acts by the Defendants will greatly and irreparably damage KI and will continue to damage KI unless enjoined by the Court.

<u>COUNT IX</u>
**(Copyright Infringement)**
**SimPort Engineering Station Simulation Diagrams Editor**
**Defendants WSC and Outmelidze**

73.     Paragraphs 1 through 72 of this Complaint are realleged and incorporated herein by reference.

74.     The SimPort program, including the SimPort Engineering Station Simulation Diagrams Editor (the "Diagrams Editor"), was developed wholly by KI employees and is

original in its entirety.  KI is the rightful owner of SimPort, including this Copyrightable Component of SimPort, as is evidenced by its Certificate of Copyright Registration, attached hereto as Exhibit F.  By issuing the Certificate of Registration, the Register of Copyrights has determined that the Diagrams Editor is copyrightable and that all legal and formal requirements for issuance of a Certificate of Registration were met.

75.    As has been previously alleged, Defendants have willfully copied all or substantially all of KI's SimPort computer program (including the Diagrams Editor)  in violation of KI's rights, and have sold and/or licensed the same for their profit and gain; profit and gain rightfully belonging to KI.  At a minimum, Defendants had a reasonable possibility of access to the SimPort technology (including the Diagrams Editor) and the programs now sold by Defendants are, at a minimum, substantially similar to KI's SimPort program and contain a substantially similar or exact copy of the Diagrams Editor. Defendants have copied constituent elements of the SimPort technology that are original.

76.    KI has never received any monies from the sale and/or licensing of SimPort and/or the Diagrams Editor by Defendants, in violation of KI's rights and the agreement between the parties to the contrary.

KI has suffered and will continue to suffer monetary damages in an amount to be determined, but in any event no less than $75,000, as well as non-monetary damages as a result of the activities of the Defendants.  The aforesaid acts by the Defendants will greatly and irreparably damage KI and will continue to damage KI unless enjoined by the Court.

**COUNT X**
**(Copyright Infringement)**
**SimPort Engineering Station Soft Panels Editor**
**Defendants WSC and Outmelidze**

77.     Paragraphs 1 through 76 of this Complaint are realleged and incorporated herein by reference.

78.     The SimPort program, including the SimPort Engineering Station Soft Panels Editor (the "Soft Panels Editor"), was developed wholly by KI employees and is original in its entirety.  KI is the rightful owner of SimPort, including this Copyrightable Component of SimPort, as is evidenced by its Certificate of Copyright Registration, attached hereto as Exhibit G.  By issuing the Certificate of Registration, the Register of Copyrights has determined that the Soft Panels Editor is copyrightable and that all legal and formal requirements for issuance of a Certificate of Registration were met.

79.     As has been previously alleged, Defendants have willfully copied all or substantially all of KI's SimPort computer program (including the Soft Panels Editor)  in violation of KI's rights, and have sold and/or licensed the same for their profit and gain; profit and gain rightfully belonging to KI.  At a minimum, Defendants had a reasonable possibility of access to the SimPort technology (including the Soft Panels Editor) and the programs now sold by Defendants are, at a minimum, substantially similar to KI's SimPort program and contain a substantially similar or exact copy of the Soft Panels Editor. Defendants have copied constituent elements of the SimPort technology that are original.

80.     KI has never received any monies from the sale and/or licensing of SimPort and/or the Soft Panels Editor by Defendants, in violation of KI's rights and the agreement between the parties to the contrary.

KI has suffered and will continue to suffer monetary damages in an amount to be determined, but in any event no less than $75,000, as well as non-monetary damages as a result of the activities of the Defendants.  The aforesaid acts by the Defendants will greatly and irreparably damage KI and will continue to damage KI unless enjoined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, KI prays that this Court grant judgment in its favor and:

1.      Enjoin and restrain Outmelidze and WSC, their agents, officers, directors, employees, agents, affiliates, partners, consultants, subcontractors, customers , licensee**s**, sublicensees, successors, assigns and attorneys and all those in active concert or participation with them from:

a.      Continuing to use, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works copied or derived from any version of KI's SimPort program or constituent element or part thereof;

b.      Assisting, aiding, or abetting any other person or entity from engaging in or performing any of the aforesaid acts; and

c.      Unfairly competing with KI in any manner.

2.      Direct Outmelidze and WSC to deliver up for destruction all copies of any software and/or source code copied or derived from KI's SimPort program;

3.      Award KI monetary damages with interest in an amount to be determined at trial;

4.      Award KI the costs and attorneys' fees incurred in connection with the investigation, preparation and prosecution of this action; and

5.      Award such other and further relief as this Court may deem just and proper.

Respectfully submitted,

_____

John M.G. Murphy  Fed. Bar No: 03811
Ober, Kaler, Grimes & Shriver
120 E. Baltimore St., 8th fl.
Baltimore, MD  21202
410-685-1120
Fax:  410-547-0699

Attorneys for Plaintiff
Russian Research Center - Kurchatov Institute

OF COUNSEL:

E. Scott Johnson
Ober, Kaler, Grimes & Shriver
120 E. Baltimore St., 8th fl.
Baltimore, MD  21202
410-685-1120
Fax:  410-547-0699