**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | | |
|---|---|---|
| BRIAN NAUGHTON, et al. | * | |
| Plaintiffs, | * | |
| vs. | * | Civil Action No. WMN-02-cv-3238 |
| MILLENNIUM TITLE & ESCROW, LLC., et al. | * | |
| | * | |
| Defendants. | | |

_____

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiff, Brian Naughton (the "Named Plaintiff"), on his own behalf and on behalf of the class defined herein, by and through their attorneys, Kieron F. Quinn and Richard S. Gordon and QUINN, GORDON & WOLF, CHTD., and Denis Murphy and CIVIL JUSTICE, INC. hereby sue Defendants Millennium Title & Escrow, LLC, Eric Lamb, National Fidelity Mortgage Corporation, National Processing Center, LLC and Water Street Payoff Processing Center, LLC, and states as follows:

**I.    <u>INTRODUCTION</u>**

1.    This is a class action by homeowners seeking relief from the predatory practices of a title company – Millennium Title & Escrow, LLC ("Millennium Title"); the title company's principal and owner – Eric Lamb ("Lamb"); a Mortgage Broker  –  National Fidelity Mortgage Corporation ("National Fidelity"); and two sham affiliated business entities – National Processing Center, LLC ("NPC") and Water Street Payoff Processing Center, LLC ("Water Street Payoff") – for violations of  statutory and common law obligations.

2.      Millennium Title relies heavily on mortgage brokers to obtain business.  In order to promote its title services, Millennium Title, as described further below, met and corresponded with mortgage brokers, including National Fidelity, and advised them to set up sham entities known as  "Affiliated Business Arrangements" as a way to pay illegal referral fees and kickbacks to mortgage brokers at the expense of the borrower.

3.      Under Defendants' scheme, Millennium Title solicited title work from National Fidelity promising that National Fidelity could make additional money for each loan referred without performing any additional work.  Millennium Title and Lamb, together with National Fidelity, then set up Defendants NPC and Water Street Payoff, two affiliated business arrangement that were established to appear on closing documents as entities which had performed title work or settlement services for, or in conjunction with, the closing of the mortgage loan.  Both NPC and Water Street Payoff are owned, in whole or in part, by National Fidelity.

4.      Once the NPC  and Water Street Payoff affiliated business arrangements were created, NPC and Water Street Payoff appeared on the settlement documents of each mortgage loan originated by National Fidelity and closed by Millennium Title as entities that had performed *bona fide* and substantial title or closing services.  This, however, was false and untrue.  Even though NPC  and Water Street Payoff each charged and were paid a fee by the borrower that ranged from $100 -$575 for each loan settlement, NPC and Water Street Payoff, in fact, performed little or no work in connection with the mortgage transactions.  Moreover, following the settlement, the fees attributable to NPC and Water Street Payoff – which were *in addition to* the customary and usual fee that Millennium Title charged for the title and closing

2

work – were channeled back to Defendant National Fidelity, which collected the fee without disclosing to the borrower that the monies were paid to reward the mortgage broker for the referral of the closing and settlement work to Millennium Title.   In so doing, National Fidelity, Lamb and Millennium Title were able to systematically and deceptively hide and conceal the fact that NPC  and Water Street Payoff were shams and served no purpose in the transaction other than to: (1)  permit the mortgage brokers to pocket additional monies, paid by the borrower, while providing no additional goods or services; and (2) facilitate the payment of a referral fee and kickback, sponsored by Millennium Title, at the increased expense of the borrower and in violation of the borrower's rights under state and federal law.

5.      Plaintiffs are a class of borrowers who entered into mortgage loan transactions using the services of Millennium Title where the HUD-1 Settlement Statements include a charge for services for NPC, Water Street Payoff or other affiliated business arrangement purporting to provide title, closing or settlement services in connection with the transaction.

**II.    PARTIES**

    **A.    The Named Plaintiff**

6.      Brian Naughton is a resident of Baltimore County, Maryland who resides at 5 Atherton Garth, Lutherville, Maryland 21093.  Mr. Naughton is a professor at Morgan State University.

    **B.    The Co-Conspirators**

7.      Conspirator Millennium Title is a Maryland corporation, located in Baltimore County, Maryland with its principal place of business at 2624 Lord Baltimore Drive, Suite E, Baltimore, MD 21228.

8.      Millennium Title is licensed to conduct title and mortgage loan closing services in Maryland and also conducts business in Maryland and other states throughout the United States.

9.      Upon information and belief, Millennium Title conducts thousands of title services and mortgage loan closings each year.

10.     Conspirator Eric Lamb is a Maryland resident and is the principal and owner of Millennium Title.  At all times relevant to this Complaint, Lamb, who is sued in his individual capacity, oversaw the day-to-day operations of Millennium Title and participated in the illegal acts described herein.

11.     Co-Conspirator Lamb set up and is also the resident agent for the sham entities NPC and Water Street Payoff.

12.     Conspirator National Fidelity is a Maryland corporation with its principal place of business in Baltimore City at 104 Water  Street, Suite 300, Baltimore, MD 212281. National Fidelity, at all times relevant to this Complaint, held itself out to the public as a mortgage broker licensed under the laws of the State of Maryland.

13.     Conspirator NPC, sometimes referred to as National Processing, is a Maryland Limited Liability Company with its principal place of business at 2 Winters Lane, Baltimore, MD  21228.  NPC is owned in whole or in part by National Fidelity and is a sham enterprise established by Defendants to facilitate the payment of illegal referral fees and kickbacks by Defendant Millennium Title to Defendant National Fidelity.

14.     Conspirator Water Street Payoff is a Maryland Limited Liability Company with its principal place of business at 104 Water Street, Suite 300, Baltimore, MD  21202, the office of National Fidelity Mortgage.  Water Street Payoff is owned in whole or in part by National

Fidelity and is a sham enterprise established by Defendants to facilitate the payment of illegal

referral fees and kickbacks by Defendant Millennium Title to Defendant National Fidelity.

III.    **JURISDICTION AND VENUE**

15.    This Court has personal jurisdiction over the Defendants pursuant to Sections 6-

102 and 6-103 of the Courts and Judicial Proceedings Article of the Annotated Code of

Maryland.

16.    Venue is appropriate inasmuch as the principal place of business of  Conspirator

National Fidelity is in Baltimore City and the security for many of the loans closed by the

conspirators is located in  Baltimore City. Venue is also proper in this Court because all of the

conspirators systematically and continually transact business in Baltimore City.

IV.    **FACTS APPLICABLE TO ALL COUNTS**

17.    At all times relevant to this Complaint, Millennium Title has been in the business

of providing title, settlement and escrow services.

18.    Millennium Title obtains its business by referrals from real estate companies,

mortgage lenders and mortgage brokers.

19.    National Fidelity is a mortgage broker, licensed under the laws of the State of

Maryland.

20.    In the regular order of its business, National Fidelity procures loans secured by

real estate and, in connection with the performance of such services, receives fees either directly

or indirectly, all of which must be disclosed to the borrowers under state and federal laws.

21.    It is the standard and typical practice of mortgage brokers to select the title

company and closing agents in respect of the settlement of mortgage loans.  Accordingly, at all

times relevant to this Complaint, it has been Millennium Title's usual practice to market its title, settlement and escrow services through written and oral communications with mortgage brokers, including National Fidelity.

22.    Upon information and belief, as part of its communications with mortgage brokers, Millennium Title proposed that National Fidelity – which is limited by federal and state law in the fees that it can charge the borrower – could make additional monies by referring business to Millennium Title.  In particular, Millennium Title, through its principal Lamb have routinely and customarily encouraged, incited, aided and abetted mortgage brokers, including but not limited to National Fidelity, to establish "Affiliated Business Arrangements," which appear on the closing documents as entities assisting Millennium Title in the provision of its title, settlement and escrow services.

23.    Defendant Lamb is an attorney licensed to practice law in the State of Maryland.

24.    Upon information and belief, Defendant Lamb routinely performs the legal work to prepare and file the documents necessary to establish the "Affiliated Business Arrangements" and otherwise counsels and advises mortgage brokers to form and establish  affiliated business arrangement.

25.    An "affiliated business arrangement" is defined in section 3(7) of the Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. § 2601 *et seq*. (hereinafter "RESPA") (12 U.S.C. 2602(7)) as:

> [A]n arrangement in which (A) a person who is in a position to refer business incident to or as part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons

directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.

26.     The "affiliated business arrangement," however, must be a *bona fide* provider of settlement services and not a "sham arrangement used as a conduit for referral fee payments." *HUD Statement of Policy* 1996-2 (Sham Controlled Business Arrangements).  Such a sham arrangement is illegal, violates federal law and is a deceptive or unfair trade practice under Maryland law, as set forth below.

27.     In due course, Defendants Millennium Title and National Fidelity, with an intent to defraud the borrower, organized two sham and phony limited liability companies – National Processing Center, LLC and Water Street Payoff Processing Center, LLC.

28.     Although both NPC and Water Street Payoff are identified on borrowers "HUD-1 Settlement Statements" – which are the official and standard forms used in borrower real estate transactions to identify the charges and categories of charges resulting from the mortgage loan transaction – as receiving fees for the provision of its title, settlement and/or escrow services, in fact, Millennium Title, its agents or employees perform all or substantially all of the title, settlement and escrow services.

29.     Upon information and belief, NPC and Water Street Payoff perform no work and provides no services that Millennium Title does not otherwise provide in the course of closing a mortgage loan.

30.     Upon information and belief, NPC is inadequately capitalized.

31.     Upon information and belief, NPC does not have its own employees but utilizes "loaned employees" or independent contractors.

32.     Upon information and belief, NPC does not manage its own business affairs.

7

33.    Upon information and belief, NPC does not have separate offices or business locations, but operates out of Millennium Title's offices.

34.    Upon information and belief, NPC contracts out most or all of the work or services for which it is hired.

35.    Upon information and belief, NPC does not compete in the marketplace.

36.    NPC is not licensed to conduct or provide mortgage or title related services in the State of Maryland.

37.    Upon information and belief, Water Street Payoff is inadequately capitalized.

38.    Upon information and belief, Water Street Payoff does not have its own employees but utilizes "loaned employees" or independent contractors.

39.    Upon information and belief, Water Street Payoff  does not manage its own business affairs.

40.    Upon information and belief, Water Street Payoff  does not have separate offices or business locations, but operates out of Millennium Title's offices.

41.    Upon information and belief, Water Street Payoff  contracts out most or all of the work or services for which it is hired.

42.    Upon information and belief, Water Street Payoff  does not compete in the marketplace.

43.    Water Street Payoff is not licensed to conduct or provide mortgage or title related services in the State of Maryland.

44.    Instead, both NPC and Water Street Payoff were formed solely to facilitate illegal payments and kickbacks by co-conspirator Millennium Title to co-conspirator National Fidelity,

to reward National Fidelity for having referred the mortgage title and closing work to Millennium Title in the first place.

45     Although NPC and Water Street Payoff do virtually nothing in respect of the mortgage loan transactions procured by National Fidelity and closed by Millennium Title, NPC and Water Street Payoff are each paid a substantial fee by the borrower for purported goods or services rendered in connection with the mortgage loan.

46.     The unearned fees payable to NPC and Water Street Payoff are reflected on a false and misleading HUD-1 Settlement Statement.

47.     To further the scheme, and with an intent to defraud the borrower, the HUD-1 Settlement Statement was completed by Millennium Title and then sent, for approval and informational purposes, to its co-conspirator National Fidelity.

48.     The HUD-1 Settlement Statement ostensibly provided the borrower information relating to the relationships between Millennium Title and National Fidelity and the settlement services that NPC and Water Street Payoff would perform in respect of the mortgage loan transaction.  The HUD-1 Settlement Statement was designed to give the borrower false assurances that each of the sham entities was providing necessary, legal and legitimate title services and to thus lull the borrower into a false sense of legitimacy thereby preventing the borrower from contesting or questioning the charge or range of charges by NPC and Water Street Payoff in connection with the mortgage loan transaction.  The HUD-1 Settlement Statement succeeded in this respect.

49.     The HUD-1 Settlement Statement concealed the true nature of the relationship between the conspirators, concealed the fact of the bogus payments to NPC and Water Street

Payoff and concealed the fact that the bogus sham entities were performing no services and supplying no goods in connection with the mortgage loan transaction. The HUD-1 Settlement Statement also concealed the fact that, as a kickback, referral or split-fee, co-conspirator National Fidelity would be paid an additional fee, above and beyond that already agreed to by the borrower for National Fidelity's services, a practice which the conspirators all knew to be illegal and in violation of sections 8(a) and (b) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2607 *et seq.*, as well as being an unfair and deceptive trade practice under the Maryland Consumer Protection Act.

50. In reliance upon these false and misleading statements and omissions, the borrowers executed the operative mortgage documents, including but not limited to the HUD-1 Settlement Statement. Following such execution, the monies payable to NPC and Water Street Payoff on the HUD-1 Settlement Statement were, in turn, paid or remitted to National Fidelity for its benefit, even though National Fidelity performed no title, settlement or escrow services in respect of the mortgage loan transaction.

51. The fees paid to NPC and Water Street Payoff were unearned referral fees and kickbacks and were paid at the expense and to the detriment of borrowers, in violation of state and federal law.

52. Following the settlement, the fees attributable to NPC and Water Street Payoff – which were *in addition to* the customary and usual fee that Millennium Title charged for the title and closing work – were channeled back to Defendant National Fidelity, which, with an intent to defraud, collected the fee without disclosing to the borrower that the monies were paid to reward the mortgage broker for referring the closing and settlement work to Millennium Title.

## V.    FACTS APPLICABLE TO NAMED PLAINTIFF

53.    In mid-to-late 2001 named Plaintiff Naughton sought to refinance his home located in Maryland.   Through a solicitation over the internet, named Plaintiff established contact with co-conspirator National Fidelity, to assist him in obtaining a loan for approximately $114,000.

54.    Named Plaintiff entered into a written agreement with National Fidelity which set forth the total costs and fees for National Fidelity's services.

55.    National Fidelity procured a mortgage loan for named Plaintiff through Flagstar Bank, FSB, in McLean, Virginia.

56.    During the time frame of this Complaint, National Fidelity referred all of the title, settlement and closing services in respect of Named Plaintiffs' refinance to Millennium Title.  In turn, co-conspirator Millennium Title conducted all title searches and examinations for Named Plaintiffs' mortgage loan, prepared the closing documents and disbursed the mortgage funds in accordance with the lender's closing instructions, procured title insurance and handled the execution and recording of the closing documents.

57.    Upon information and belief, National Fidelity provided to Named Plaintiffs a packet of loan documents, including a false and misleading HUD-1 Settlement Statement and a false and misleading "Affiliated Business Disclosure" advising Named Plaintiffs that National Fidelity owns part or all of the sham entities and indicating further that NPC and Water Street Payoff would provide some or all of the settlement services in connection with the mortgage loan.

11

58.     The HUD-1 Settlement Statement and disclosure ostensibly provided the Named Plaintiffs information relating to the relationships between the companies and the services that NPC and Water Street Payoff  would perform in respect of the mortgage loan transaction.  The documents were designed to give Named Plaintiffs false assurances that NPC and Water Street Payoff were providing necessary, legal and legitimate title services and to thus lull Named Plaintiff into a false sense of legitimacy, preventing Named Plaintiff from contesting or questioning the charge or range of charges by NPC and Water Street Payoff.  The documents succeeded in this respect.

59.     The HUD-1 Settlement Statement concealed from the Plaintiffs the true nature of the relationship between the conspirators, concealed the fact of the bogus payments to NPC and Water Street Payoff and concealed the fact that NPC and Water Street Payoff were performing no services and supplying no goods in connection with the Named Plaintiff's mortgage loan transaction.  The HUD-1 Settlement Statement also concealed from Named Plaintiff the fact that, as a kickback, referral or split-fee, co-conspirator National Fidelity would be paid an additional fee, beyond that already agreed to by the Named Plaintiff for National Fidelity's origination services.

60.     The Named Plaintiff closed on the mortgage loan on or about February 1, 2002.

61.     Line 1103 of Named Plaintiffs' HUD-1 Settlement Statement notes that Named Plaintiff paid $375.00 for "Title examination" to "National Processing."

62.     "National Processing" refers to NPC, one of the sham entities or enterprises that was set up by the conspirators to facilitate the payment of illegal referral fees or kickbacks to National Fidelity.

63.     "National Processing" or NPC performed no substantive work in respect of Named Plaintiff's mortgage loan.  Nonetheless, NPC and/or its principal National Fidelity received a payment from Named Plaintiffs' transaction as a kickback or referral fee to reward National Fidelity for hiring Millennium Title to perform the title and closing work for Named Plaintiff's mortgage loan.

64.     Even though "National Processing" or NPC  is identified on Named Plaintiff's HUD-1 as receiving a fee for the "Title examination," upon information and belief, the title examination (as well as any "processing" related to that examination) was actually performed by co-conspirator Millennium Title, its agents or employees.

65.     In addition, Line 1303 of Named Plaintiffs' HUD-1 Settlement Statement notes that Named Plaintiff paid $200.00 for "WATER STREET PAYOFF" to "Water Street Payoff."

66.     "Water Street Payoff" refers to Water Street Payoff Processing Center, LLC, one of the sham entities or enterprises that was set up by the conspirators to facilitate the payment of illegal referral fees or kickbacks to National Fidelity.

67.     "Water Street Payoff" performed no substantive work in respect of Named Plaintiff's mortgage loan.  Nonetheless, "Water Street Payoff" and/or its principal National Fidelity received a payment from Named Plaintiff's transaction as a kickback or referral fee to reward National Fidelity for hiring Millennium Title to perform the title and closing work for Named Plaintiff's mortgage loan.

68.     In connection with the activities giving rise to this action, the Defendants acted with malice, intent and knowledge, and with a wanton disregard for the rights of Plaintiffs and other borrowers.

## VI.     CLASS ACTION ALLEGATIONS AND DEFINITION OF THE CLASS

69.     The named Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to Md. Rule 2-231.  The class of victims consists of:

> All borrowers who entered into mortgage loan transactions using the services of Millennium Title where the borrower paid fees in connection with the transaction to either (1) NPC; (2) Water Street Payoff; and/or (3) another affiliated business arrangement owned by Summit Mortgage, Horizon Financial, Country Home Mortgage and/or Advantage Investors Mortgage.

> ~~All borrowers who entered into mortgage loan transactions using the services of Millennium Title where the HUD-1 Settlement Statements include a charge for services for NPC, Water Street Payoff or other affiliated business arrangement purporting to provide title, closing or settlement services in connection with the transaction.~~

Excluded from the class are those individuals who now or have ever been executives of Defendants National Fidelity, or other mortgage brokers utilizing sham affiliated business arrangements.

70.     The class, as defined above, is identifiable.  The named Plaintiff is a member of the class.

71.     The class consists, to Plaintiffs' information and belief, of hundreds and perhaps thousands of individuals, and is thus so numerous that joinder of all members is clearly impracticable.

72.     There are questions of law and fact which are not only common to the class, but which predominate over any questions affecting only individual class members.  The predominating questions include, but are not limited to:

(a)     Whether NPC received illegal referral fees or kickbacks in respect of the mortgage loans involving Millennium Title;

(b)     Whether Water Street Payoff received illegal referral fees or kickbacks in respect of the mortgage loans involving Millennium Title;

(c)     Whether National Fidelity received illegal referral fees or kickbacks in respect of the mortgage loans involving Millennium Title;

(d)     Whether the Defendants split fees in connection with the origination of federally-related mortgage loans in violation of RESPA;

(e)     Whether the Defendants committed numerous <u>illegal</u> acts ~~of fraud~~ in furtherance of their scheme;

(f)     Whether NPC was providing bona fide goods or services;

(g)     Whether the payment to NPC violates RESPA;

(h)     Whether Water Street Payoff was providing bona fide goods or services;

(i)     Whether the payment to Water Street Payoff violates RESPA;

(j)     Whether Public Law 91-452 applies to the activities of the Defendants;

(k)     Whether NPC was a "sham" affiliated business arrangement;

(l)     Whether Water Street Payoff was a "sham" affiliated business arrangement;

(m)     Whether the Defendants were part of a conspiracy to <u>violate state and federal law;</u> ~~defraud the class;~~

(n)     Whether the Defendants negligently misrepresented the nature of the charge for "National Processing";

(o)     Whether the Defendants negligently misrepresented the nature of the charge for "Water Street Payoff"; and

15

(p)     Whether the Defendants or any of them have entered into similar transactions with entities not hereinabove identified, for the purpose of receiving illegal referral fees or kickbacks in respect of mortgage loans.

73.     The claims of the named Plaintiff are typical of the claims of each member of the class, within the meaning of  Md. Rule 2-231 (a)(3), and are based on and arise out of  identical facts constituting the wrongful conduct of Defendants.

74.     The prosecution of the separate actions by individual members of the class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Rule 2-231 (b)(1)(A).

75.     Defendants' actions are generally applicable to the class as a whole, and Plaintiffs seek equitable remedies with respect to the class as a whole within the meaning of Rule 2-231 (b)(2).

76.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of 2-231 (b)(3).

## COUNT I –  VIOLATIONS OF THE
## MARYLAND CONSUMER PROTECTION ACT
### (All Defendants)

77.     Plaintiffs reallege and incorporate by reference the allegations set out in Paragraphs 1 through 76, and further allege:

78.     The mortgage loan transactions set forth herein are governed by the Consumer Protection Act, Md. Com. Law Code Ann. §§ 13-101 *et. seq*.

79.     Section 13-303 of the Commercial Law Article prohibits unfair or deceptive trade practices in the sale of any consumer realty or the extension of consumer credit.

80.    The Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following:

a.    False or misleading oral or written statements that have the capacity, tendency, or effect of deceiving or misleading consumers;

b.    Failure to state a material fact if the failure deceives or tends to deceive; and

c.    Deception, fraud, misrepresentation or knowing concealment, suppression or omission of any material fact concerning the sale of consumer realty or the extension of consumer credit, with the intent that the consumer rely on the deception, fraud, misrepresentation or knowing concealment, suppression or omission of the material fact.

81.    The Defendants violated the Act by concealing the arrangement between them and extracting additional and illegal fees for the mortgage brokers, at the expense of the consumer, in violation of Maryland law.

82.    The Defendants further violated the Act by inciting, encouraging and aiding and abetting NPC and Water Street Payoff to conduct or provide mortgage or title related services in the State of Maryland even though they were not licensed to do so.

83.    Further, Defendants either directly or indirectly conspired to violate the provisions of the Real Estate Settlement Procedures Act as described above 12 USC § 2607; Reg. X 24 CFR §§ 3500.01 *et seq.*, by requiring that borrowers pay a fee to affiliated business arrangements that perform little or no substantive work in connection with the mortgage closing.

84.    The failure to comply with the provisions of the various acts governing the Plaintiffs, and the members of the class they represents, were deceptive and unfair acts within the meaning of the Maryland Consumer Protection Act in that the Defendants engaged in the

suppression and omission of material facts, identified herein, that had the capacity, tendency or effect of deceiving or misleading the Plaintiffs and the members of the Class and that did in fact deceive or mislead Plaintiffs and members of the class, causing Plaintiffs and members of the class injury and loss.

85.    The Defendants' acts and omissions constitute unfair and deceptive trade practices and violate the Maryland Consumer Protection Act.  Plaintiffs have been damaged.

WHEREFORE, Plaintiffs pray that:

A.    The Court award Plaintiffs damages in an amount equal to the kickbacks or referral fees that were paid by or on their behalf as a consequence of the Defendants' unfair and/or deceptive trade practices, plus reasonable interest thereon;

B.    Members of the Class be granted a Judgment in an amount to be determined, after discovery, of damages in an amount equivalent to the illegal fees paid to the Defendants;

C.    The Court award Plaintiffs reasonable costs and attorney's fees as permitted by Section 13-408 of the Commercial Law Article; and

D.    The Court award Plaintiffs such other and further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. §2607
### (All Defendants)

18

86.     Plaintiffs reallege and incorporate by reference the allegations set out in Paragraphs 1 through 85, and further allege:

87.     Throughout the class period, the Defendants procured and/or provided closing, title or settlement services in respect of residential mortgage loans, including "federally related mortgage loans" as that phrase is defined by RESPA at 12 U.S.C. § 2602(l) and at 24 C.F.R. § 3500.2(3), to the named Plaintiffs and other borrowers.  Upon information and belief,  the Defendants procured mortgage loans and/or provided closing, title or settlement services for more than 1,000 mortgage loans in each of the last three years.

88.     At all times during the class period National Fidelity conducted business as "mortgage brokers," as that phrase is defined by Regulation X at 24 C.F.R. § 3500.2(8), and contracted with the named Plaintiffs and other class members.  As such, the mortgage brokers provided to the Plaintiffs and other Class members real estate "settlement services" as that phrase is defined by RESPA at 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2(16).

89.     Based upon the foregoing facts, the Defendants each violated RESPA with respect to Plaintiffs and all other class members by giving, paying or receiving fees, kickbacks or other things of value to or from the sham and bogus entities NPC and Water Street Payoff, pursuant to an agreement or understanding that business incident to or a part of a real estate settlement or closing services involving "federally related mortgage loans" would be referred to Millennium Title by National Fidelity.

90.     The payments to NPC and Water Street Payoff constituted a violation of § 8(a) of RESPA, 12 U.S.C. §2607(a), which prohibits the payment of referral fees or kickbacks in connection with the origination of federally-related mortgage loans.

19

91.     The payments to NPC and Water Street Payoff also constituted a violation of §

8(b) of RESPA, 12 U.S.C. §2607(b), which prohibits the splitting of fees in connection with the

origination of federally-related mortgage loans.

WHEREFORE, Plaintiffs pray that:

A.     Pursuant to 12 U.S.C. § 2607(d)(2), the Court award Plaintiffs and the class

members an amount equal to three times the amount of any and all payments to NPC and Water

Street Payoff in respect of each mortgage loan, as well as any and all other amounts or damages

allowed to be recovered by RESPA;

B.     The Court award Plaintiffs reasonable costs and attorney's fees; and

C.     The Court award Plaintiffs such other and further relief as the Court deems

just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION
### (All Defendants)

92.     Plaintiffs reallege and incorporate by reference the allegations set out in

Paragraphs 1 through 91, and further allege:

93.     Agents or employees of the Defendants negligently and recklessly made the false

and misleading representations and omissions alleged herein, including but not limited to those

set forth herein, regarding the terms and conditions applicable to Plaintiffs' mortgage loan,

intending that Plaintiffs reasonably rely upon the false and misleading representations and

omissions to their detriment, which they did.

20

94.    As a direct and proximate result of the fraudulent statements, representations and omissions, Plaintiffs were induced, <u>ab initio</u>, to enter into a mortgage loan that included a payment to a sham entity that performed no services and supplied no goods in respect of the mortgage loan.

95.    Defendants, their agents or employees, owed a duty of care to Plaintiffs.

96.    Defendants recklessly and negligently breached the duty of care they owed to Plaintiffs by making false representations to Plaintiffs and concealing material facts from them, as set forth herein.

97.    Defendants knew, or had reason to know, that Plaintiffs would reasonably rely on the representations and concealments which, as erroneous, would cause loss or injury.

98.    Plaintiffs justifiably and reasonably took actions to their detriment as alleged herein, in reliance on the false representations and concealments.

WHEREFORE, Plaintiffs pray that:

A.    The Court award Plaintiffs compensatory damages in excess of $20,000 and in an amount to be determined by the jury;

B.    The Court award punitive damages to be determined by the jury;

C.    The Court award Plaintiffs reasonable costs and attorney's fees; and,

D.    The Court award Plaintiffs such other and further relief as the Court may deem just and proper.

## ~~COUNT IV – FRAUD~~

21

~~(All Defendants)~~

~~99.    Plaintiffs reallege and incorporate by reference the allegations set out in Paragraphs 1 through 98, and further allege:~~

~~100.    Agents or employees of the Defendants intentionally and knowingly made the false and misleading representations and omissions alleged herein, including but not limited to those set forth herein, regarding the terms and conditions applicable to Plaintiffs' mortgage loan, intending that Plaintiffs reasonably rely upon the false and misleading representations and omissions to their detriment, which they did.~~

~~101.    As a direct and proximate result of the fraudulent statements, representations and omissions, Plaintiffs were induced, ab initio, to enter into a mortgage loan that included a payment to a sham entity that performed no services and supplied no goods in respect of the mortgage loan.~~

~~WHEREFORE, Plaintiffs pray that:~~

~~A.    The Court award Plaintiffs compensatory damages in excess of $20,000 and in an amount to be determined by the jury;~~

~~B.    The Court award punitive damages to be determined by the jury;~~

~~C.    The Court award Plaintiffs reasonable costs and attorney's fees; and,~~

~~D.    The Court award Plaintiffs such other and further relief as the Court may deem just and proper.~~

## COUNT IV ~~V~~ – VIOLATIONS OF THE MARYLAND FINDERS FEE ACT
### (Defendant National Fidelity)

22

99 ~~102~~.        Plaintiffs reallege and incorporate by reference the allegations set out in

Paragraphs 1 through 98 ~~101~~, and further allege:

100 ~~103~~.        Under the provisions of the Commercial Law Article, Annotated Code of

Maryland Section 12-805(d), a mortgage broker may not charge a finder's fee, or any portion of

it, unless the full amount of the finder's fee is pursuant to a written agreement between the

mortgage broker and the borrower which is separate and distinct from any other document.

101 ~~104~~.        Under 12-801 (c) of the Commercial Law Article, a "finder's fee"

includes any compensation or commission directly or indirectly imposed by a broker and paid by

or on behalf of the borrower for the broker's services in procuring, arranging or otherwise

assisting a borrower in obtaining a loan or advance of money.

102 ~~105~~.        Named Plaintiffs' HUD-1 discloses that the affiliated business

arrangement received a substantial fee, which was then paid or channeled back to the mortgage

broker.

103 ~~106~~.        The fees paid to NPC and Water Street Payoff, as described herein, were

finder's fees made indirectly to the Defendant National Fidelity. The fees were paid to the

affiliated business arrangement for the benefit of the mortgage broker in violation of Section 12-

805(d).

104 ~~107~~.        The payment of such fees to the mortgage brokers was illegal and, further,

was never properly disclosed to the Named Plaintiffs or the class, in violation of the Maryland

Finder's Fee Act.

105 ~~108~~.    Under the provisions of the Maryland Finders Fee Act Section 12-807, any mortgage broker who violates any provision of this subtitle must forfeit to the borrower (1) three times the amount of the finder's fee collected.

WHEREFORE, Plaintiffs pray that:

A.    The Court order, pursuant to Md. Com. Law Code Ann. § 12-807, that Defendant National Fidelity return to the Plaintiffs and the members of the class they represent all monies paid, directly or indirectly, as finder's fees under the mortgage loan transactions, and all reasonable interest thereon;

B.    The Court order, pursuant to Md. Com. Law Code Ann. § 12-807, that Defendant National Fidelity forfeit to named Plaintiffs and the class three times the amount of the finder's fees collected;

C.    The Court award such other and further relief as the Court deems just and proper.

## COUNT VI – AIDING AND ABETTING
## <u>VIOLATIONS OF THE MARYLAND FINDERS FEE ACT</u>
### (Defendants Millennium Title, Lamb, NPC and Water Street Payoff)

106 ~~109~~.    Plaintiffs reallege and incorporate by reference the allegations set out in Paragraphs 1 through 105 ~~108~~, and further allege:

107 ~~110~~.    By paying and or facilitating the illegal payment of finder's fees to mortgage brokers as set forth in Count <u>I</u>V, above, Defendants Millennium Title, Lamb, NPC and Water Street Payoff encouraged, incited, aided and abetted the act of the direct perpetrator of the legal wrong.

24

108 ~~111~~.      Consequently, by assisting, supporting, and supplementing, instigating, advising and  encouraging the efforts of National Fidelity to violate the Finder's Fee Act, Defendants Millennium Title, Lamb, NPC and Water Street Payoff are responsible for the underlying damages available to the Plaintiffs and the class as if Defendants Millennium Title, Lamb, NPC and Water Street Payoff had performed the illegal acts themselves.

WHEREFORE, Plaintiffs pray that:

A.      The Court order, pursuant to Md. Com. Law Code Ann. § 12-807, that Defendants Millennium Title, Lamb, NPC and Water Street Payoff return to the Plaintiffs and the members of the class they represent all monies paid to National Fidelity, directly or indirectly, as finder's fees under the mortgage loan transactions, and all reasonable interest thereon;

B.      The Court order, pursuant to Md. Com. Law Code Ann. § 12-807, that Defendants Millennium Title, Lamb, NPC and Water Street Payoff forfeit to named Plaintiffs and the class three times the amount of the finder's fees collected;

C.      The Court award such other and further relief as the Court deems just and proper.

## COUNT V~~II~~ – CIVIL CONSPIRACY
### (All Defendants)

109 ~~112~~.      Plaintiffs reallege and incorporate by reference the allegations set out in Paragraphs 1 through 108 ~~111~~, and allege further:

110 ~~113~~.      The Defendants conspired with each other by common agreement or understanding, for: (a) the unlawful purpose of depriving Plaintiffs and class members of their

rights under the statutory provisions and common law, as alleged herein; and (b) the purpose of unlawfully depriving Plaintiffs and class members of both their money and property.

111 ~~114~~.    The Defendants,  acting with each other, did unlawfully deprive Plaintiffs and class members of both their money and property and the rights alleged herein by the overt acts alleged herein, all of which were performed to advance the conspiracy.

112 ~~115~~.    In furtherance of said conspiracy, the Defendants both individually and in concert committed the overt acts or omissions alleged herein, to the economic loss and injury of Plaintiffs and class members.

113 ~~116~~.    The acts and omissions of the Defendants caused injury and loss to Plaintiffs and  the class.

WHEREFORE, Plaintiffs pray that:

A.    The Court award Plaintiffs compensatory damages in excess of $20,000 and in an amount to be determined by the jury;

B.    The Court award punitive damages to be determined by the jury;

C.    The Court award Plaintiffs reasonable costs and attorney's fees; and,

D.    The Court award Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_____/s/_____

Kieron F. Quinn,  Federal Bar No.  00393
Richard S. Gordon, Federal Bar No.  06882
QUINN, GORDON & WOLF, CHTD.
40 West Chesapeake Ave., St. 408
Baltimore, Maryland  21204-4803
(410) 825-2300

Denis J. Murphy
CIVIL JUSTICE, INC.
~~321 East 25th Street~~
~~Baltimore, Maryland   21218~~
~~(410) 235-0480~~
520 West Fayette Street, Room 410
Baltimore, Maryland   21201
(410) 706-0174

Attorneys for Plaintiffs

27