IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RUSSIAN RESEARCH CENTER,<br>THE KURCHATOV INSTITUTE | ) )<br>)<br>) |
| Plaintiff, | ) )<br>) |
| vs. | ) )<br>) |
| WESTERN SERVICES CORPORATION,<br>*et al.* | Case No.: 02CV3878<br>) )<br>) )<br>) |
| Defendant, | ) )<br>) |

**MEMORANDUM IN OPPOSITION TO
THE DEFENDANTS' MOTION TO COMPEL**

Plaintiff Russian Research Center, The Kurchatov Institute ("KI"), by its undersigned attorneys, pursuant to Local Rule 104.8(a), hereby opposes Defendants and Counter-Plaintiffs George Utmel ("Utmel") and Western Services Corporation's ("WSC") Motion to Compel, and as grounds therefore, states as follows.

Many observers of the profession have noted that few things give rise to the potential of reflecting worse on the practice of law than the typical civil litigation discovery dispute. Courts forced to deal with such matters have often concluded that the extreme aggression and venomous filings that, absent reason and professionalism, can be seen in such disputes, cause "the parties, the profession and the public [to] all lose" – and

490933.3

in the case of discovery, before the lawsuit has really even began. Powell v. Cobe Laboratories, 2000 U.S. Dist. LEXIS 3235 at *7 (March 2, 2000), quoting Miller v. Bittner, 985 F.2d 935, 941 (8th Cir. 1993).

WSC's Motion to Compel tends strongly in the wrong direction. In the first two pages, we hear that undersigned counsel has "wreaked havoc" on WSC's business, intentionally damaged WSC by "merely filing its lawsuit," "delay[ed] the most basic discovery" while at the same time "aggressively purs[ing] wide-ranging and irrelevant discovery,"[1] and "holding [other discovery] hostage,"[2] which of course "speak[s] volumes as to [counsel's] true motives."[3]

Undersigned counsel would note that even if he were so Machiavellian, he scarcely has the time to excel at it. Rather, the facts concerning his firm's coordination of the appearance of witnesses from a half-globe away show that his reasonable efforts to coordinate discovery and proceed with litigation in

---

[1] This apparently is a reference to KI's subpoenaing records from the entities to which WSC sold the infringing software.

[2] This apparently is a reference to plaintiff's counsel's suggestion that all the discovery disputes in this matter – including those relating to WSC's withholding of internal communications about the infringing software – be discussed and resolved together.

[3] Undersigned counsel would proffer to the Court, consistent with his professional responsibilities, that his motives regarding this case are simply a desire to prepare this case for trial. He has no knowledge of or interest in the parties' business activities unrelated to this lawsuit.

this case were unreasonably rejected by WSC in favor of filing this motion.

A point by point rebuttal of WSC's description of the parties' dealings is unfortunately necessary, and will be undertaken with the sincere hope that some good will come of it. However, one fact is conspicuous in its absence from WSC's papers, and its consideration is clearly helpful – that is, the fact that in a spirit of compromise, KI offered non-party witnesses Dr. Rakitin and Professor Malkin for deposition, *in Baltimore*, over the course of *five days*, from July 29 through August 2, to be used as WSC wished. In fact, the witnesses arranged for the purchase of non-refundable airline tickets in order to appear on these days.[4] Despite receiving far more than it was entitled to and everything it asked for, WSC declined to accept the five days, stating simply that it "had other commitments."[5]

By the time the Court addresses WSC's motion, it may be too late to salvage any value from the non-refundable tickets. The cost and inconvenience of KI's clearing of its two key-witnesses' schedules for the depositions has already accrued,

---

[4]    We are nonetheless hopeful that, in a way we understand is possible under the Russian economy, KI will be able to ameliorate or remove that charge.

[5]    Rather, WSC wanted to depose one witness for two days, and have one or both the witnesses return to America at a later time for three more days of deposition. This is not possible, or fair to KI.

and cannot be recovered.   Notwithstanding this, KI remains
willing to give WSC access to these witnesses, and even five
days' access – if WSC pays for any losses sustained on the
cancelled fare, and prepays appropriate airfare for any
subsequent travel.   WSC fails to appreciate the difficulty in
arranging international travel from Russia, and it would be
unfair, particularly under current circumstances, to cause KI
not only to suffer almost complete lack of access to two of its
key people for perhaps the nine days the international travel,
time changes, and deposition time will consume, but also to
suffer the loss of the cancelled airfare and additional airfare,
as well.   Absent such agreement, the Court should allow the
defendants access to the witnesses in Moscow.

**Two and a Half Days Is Enough Time To Depose Two Fact Witnesses**

Scheduling the depositions of Dr. Rakitin and Prof. Malkin
to testify in America has presented numerous difficulties, which
WSC fails or declines to appreciate.   Nonetheless, KI tackled
and resolved the difficulties, only to be rejected by WSC with
ever-escalating demands for more.

Dr. Rakitin, a Russian citizen works in Moscow as the
Deputy Director of KI and the Deputy Supervisor of the Modeling
Technology for AIS '95 and SimPort and simulator projects
development.   Professor Malkin, also a Russian citizen, works in

Moscow as the Administrator and Director of KI and is the Scientific Leader and Supervisor of Modeling Technology for AIS, SimPort and simulator projects development. Both provide absolutely essential services for KI, and their absence from their duties will cause KI significant hardship. Despite this, both agreed to travel over 4,000 miles, to the United States for their depositions.[6]

During discussions as to where the depositions would take place, the parties also exchanged possible dates when counsel for all concerned would be available for both depositions, with the understanding that these dates would thereafter be proposed to their respective clients to determine their availability. Margaret Keeley, counsel for WSC, initiated discussion of deposition dates in the end of April. In a telephone message left on April 29, 2003, Ms. Keeley stated that she would like to "start talking about some dates for [the depositions of] Malkin and Rakitin." Ms. Keeley suggested "the first and second week in June" for their depositions. In response, counsel for KI informed Ms. Keeley that KI's counsel's schedules would not accommodate depositions in early June.

---

[6]    WSC offered to pay only their *coach* airfare for the more than 19-hour trip in return for their accommodation, which Dr. Rakitin and Professor Malkin nevertheless graciously accepted. See letter from Meg Keeley to Jesse Hammock, June 17, 2003, attached as Exhibit A. At this stage, it would be most appropriate for WSC to provide them with first class seats.

Thereafter, Ms. Keeley and KI's counsel spoke again by phone, on or about May 12, 2003, to establish timeframes when at least counsel for both sides would be available. Counsel for KI and WSC proposed that July 7-11, 16-18 and 23-25 were dates that appeared to meet counsel for KI and WSC's schedules. Counsel for KI then consulted with Dr. Rakitin, Prof. Malkin and counsel for GSE to determine if their schedules were open during this timeframe. In attempting to accommodate all of these schedules, it did not appear that the early July dates were possible for the parties.

After the May 12, 2003, call, Ms. Keeley and counsel for KI spoke by phone on several more occasions or left one another voice-mail messages eliminating some of the proposed dates and commenting on which of the others looked more likely.[7] But, because of the schedules of Dr. Rakitin and Professor Malkin (and counsel), the necessity of coordinating travel from Russia to the United States, no date was established and the July dates appeared to no longer be possibilities. Despite this, on May 27, 2003, Ms. Keeley noted the depositions of Dr. Rakitin and Prof. Malkin for July 14th and 16th, respectively.[8] In the

---

[7] Notably, during the conversation Ms. Keeley never mentioned that she expected to depose each for two full days.

[8] One wonders why, if Ms. Keeley now believes she needs three full days to depose Dr. Rakitin, the scheduling of the proposed depositions through her notices only allowed for two.

letter accompanying her Notices of Depositions, Ms. Keeley, stated that she expected to have two days to depose both (not two and a half or three), despite the Local Rule to the contrary.  <u>See</u> Letter from Ms. Keeley to all counsel, May 26, 2003, attached as Exhibit B.

In response to the notices, counsel for KI informed Ms. Keeley that Dr. Rakitin and Prof. Malkin would not be available on the dates noted.  Later, on or about June 6, 2003, counsel for KI and WSC discussed alternative dates, ultimately agreeing that the last week of July may be an appropriate timeframe. During this conversation, Ms. Keeley indicated that she now expected *two* days for each deposition.  When counsel for KI (Mr. Hammock) stated that this was beyond the one-day allowance stated in Federal Rule 30(d)(2), Ms. Keeley responded that, prior to Mr. Hammock's involvement in the case, she and Mr. Murphy (counsel in charge for KI) had an agreement that the only time-limits the parties would enforce was the total number of hours allowed for all depositions; no limit to the number of days, or presumably, the number of hours in any day.[9]  When Mr.

---

[9]    Ironically, when KI made its second offer to resolve the dispute regarding the depositions of Prof. Malkin and Dr. Rakitin – to extend the maximum number of hours for the three days of depositions to allow for four days worth of hours, Ms. Keeley objected that extending the number of hours in a day was unacceptable.  It seems that with each offer of compromise WSC's position becomes more hardened and unreasonable.

Hammock reported this to Mr. Murphy, Mr. Murphy stated, with some surprise, that the two had never reached any such agreement.

Having found apparently agreeable days in the end of July, the parties set about the resolve the dispute regarding the length of the depositions. When Mr. Hammock reported to Ms. Keeley that Mr. Murphy's recollection of their conversation differed from her's, Mr. Keeley stated that of course the two had reached an agreement, why else would Mr. Murphy have included the agreement in his letter to the Court dated April 17, 2003, in which the parties set forth their agreement as to the timing of depositions. <u>See</u> Letter from counsel to Judge Davis, attached as Exhibit C.

Based on this assertion by Ms. Keeley, Mr. Hammock reviewed Mr. Murphy's letter, to which Ms. Keeley was copied, and found that its contents directly contradicted Ms. Keeley's recollection. Notably, the letter stated:

> The parties respectfully note that their agreement and recommendation as to deposition time is made *without prejudice to the rights of any party to request* further time and/or *relief from* the witness number and *day and hour* restrictions set forth [in] Fed. R. Civ.P. 30(a)(2)(A) and 30(d)(2).

<u>See</u> Exhibit C.

---

Accordingly, counsel for KI wrote to Ms. Keeley to address the alleged agreement. See Letter to Ms. Keeley, June 24, 2003, attached as Exhibit D. Counsel stated that, clearly, not only did Ms. Keeley and opposing counsel not have an "agreement" to waive the day and hour restrictions, the letter to the Court cited by Ms. Keeley shows the parties specifically addressed that they had *no agreement* on this point. Ms. Keeley responded on June 25, 2003 that it was her understanding that the issue was not addressed in "more detail" because opposing counsel noted that the 7-hour limitation could be waived by agreement of the parties. See Letter from Ms. Keeley, June 25, 2003, attached as Exhibit E. Interestingly, after the joint letter regarding depositions and prior to noting the depositions of Dr. Rakitin and Prof. Malkin, Ms. Keeley did not request KI's waiver of the one-day or 7-hour rule. Ms. Keeley threatened that, if KI would not adhere to its prior "agreement", she would seek this Court's relief. See id.

Nonetheless, and in an effort to resolve the dispute, and because the parties had finally found agreeable days for the depositions of the Russian citizens (July 30 through August 1), KI proposed that the parties meet half way, and offered to extend the depositions to allow for one-and-a-half days for each deposition. See Letter to Ms. Keeley dated July 1, 2003, attached as Exhibit F. This would allow the parties to maintain

their agreement as to the July 30 through August 1st timeframe, and give Ms. Keeley the extra time she claimed to need.

Nonetheless, Ms. Keeley still protested that this did not give her enough time because of the need for an interpreter, and rejected the offer.  In an attempt to further accommodate WSC's request for more time, KI proposed to waive the length-of-day requirements and allow twelve-hour depositions on the three days so that she could have four-days worth of hours.  In a telephone call on July 3, 2003, Ms. Keeley rejected KI's offer of compromise, stating that wanted four days (two apiece) and had recently filed a motion to compel.  In a further effort to resolve the dispute regarding the depositions, KI offered to waive the limit pertaining to the number of hours in any one day of depositions to give WSC and Ms. Keeley the number of hours they seek over a two-day deposition.  <u>See</u> Letter to Ms. Keeley, July 7, 2003, attached as Exhibit G.  Ms. Keeley rejected this offer as well.

Despite KI and WSC's numerous conversations attempting to resolve this dispute, WSC filed the Motion now before this Court.  In that Motion, for the first time since the parties began discussing the issue, Ms. Keeley requested "two to *three*" days for each deposition based on perhaps a new understanding belief that each question would be translated form English to Russian, and then each answer would be given in Russian and

translated to English.[10]  Such a procedure is wholly unnecessary. Ms. Keeley was informed in the June 9, 2003, tele-conference involving counsel for all parties that her assumption on this point was incorrect and that such a procedure was not necessary; at the very least, Dr. Rakitin understands and speaks English very well.  Professor Malkin also understands and speaks English, but may have a greater need for a translator.

Even after WSC filed its Motion, counsel for KI has made numerous attempts to accommodate.  As recently as the July 9 teleconference KI offered to make Dr. Rakitin and Prof. Malkin available from Tuesday July 29, 2003 through Saturday August 2, 2003, *five full days*, or two-and-a-half days apiece.  See Letter to Ms. Keeley dated July 9, 2003, attached as Exhibit H.  Ms. Keeley's rejected this offer as well, stating cryptically she had "other commitments."  See Letter from Ms. Keeley, July 11, 2003, attached as Exhibit I.[11]

KI has made every effort to accommodate WSC at every step of its escalating demands.  Its officers have volunteered to travel to the United States from their home in Russia, if WSC would simplify matters and help defray the costs.  When Ms.

---

[10]    Why it was not realized earlier that a translation typically involves these steps is not clear.  However, as noted infra such likely will not be the case with Dr. Rakitin at least, and perhaps Professor Malkin, as well.

Keeley initially claimed she needed two days for each deposition, KI attempted to compromise and offered a day and a half; Ms. Keeley said no.  KI then offered to extend each day to allow the same number of hours as are available in four days (two days apiece); again, Ms. Keeley said no.  Incredibly, KI has now offered two-and-a-half days apiece and Ms. Keeley still says no.

It should also not be lost on the Court that the depositions of both Dr. Rakitin and Prof. Malkin will be highly duplicative.  Both worked very closely regarding SimPort and Dr. Rakitin certainly is aware of all the facts and circumstances of this case that Prof. Malkin knows.  Moreover, Dr. Rakitin speaks very good English, will likely understand every English question posed to him and will most likely be able to answer every question in English.  Therefore, Ms. Keeley's system of full translation of every question and answer would be a tremendous waste of time with regard to Dr. Rakitin, at least, and most of the information she seeks from both, can be discovered through him alone.

In summary, Ms. Keeley's request for "two *to three* days" of depositions for both Dr. Rakitin and Professor Malkin should be denied.  Dr. Rakitin is fluent in English and will not need a

---

[11]    Notably, Ms. Keeley's initial request was for only two days apiece and KI has now offered two-and-a-half days apiece, which WSC

translator to the extent Ms. Keeley assumed.  A one-and-a-half day deposition (10 ½ hours) is more than sufficient time for Dr. Rakitin.  Professor Malkin, while admittedly needing greater assistance from a translator, knows no more (or very little) about the facts surrounding this case than does Dr. Rakitin, and his testimony will, therefore, be largely duplicative of Dr. Rakitin's.  Therefore, KI respectfully requests that if WSC continues to reject KI's offers of compromise, this Court deny the relief sought by WSC and Utmel, and order that Dr. Rakitin's deposition take no more than 10 ½ hours (one and one-half days) and Professor Malkin's no more than 7 hours (one day), together with the airfare accommodations requested later in this memorandum.

## Kurchatov Has Produced And Continues To Produce Electronic Versions of Its Software

The central issues in this copyright case are WSC's failure to pay KI for the numerous contracts WSC and its business associates were awarded using KI's software, and, WSC's subsequent copying and licensing of KI's proprietary and highly valuable computer code, SimPort.  Recently, the parties exchanged some of the code sought by each; KI produced its current version of SimPort and WSC produced what it claims is the first and last version of SimPort 2000 and the only retained

---

has rejected for no specific reason.

version of SimPort '97.  <u>See</u> Letter to Ms. Keeley of July 14, 2003 attached as Exhibit J.  KI employees coming to the United States in the end of July will bring the remainder of KI's software, which will be produced to WSC.  Because this production meets or will meet WSC's request, KI respectfully submits that intervention by the Court on this issue is unnecessary and that KI has and will continue to provide responsive, relevant and non-privileged documents and computer code.[12]  Accordingly, KI asks that this Court deny the relief sought by WSC and Utmel.

**<u>Kurchatov Has Produced Or Is Producing</u>**
**<u>The Documents Sought In WSC's Motion to Compel</u>**

WSC's third and final request for relief is that this Court order KI to produce documents "relating to" its "authority" to bring this suit and the relationship between KI and its "sister" company InterDCM/InterDum.  On July 15, 2003, KI produced the documents sought in WSC and Utmel's Motion to Compel.  <u>See</u> Letter to Ms. Keeley dated July 15, 2003 attached as Exhibit K. Because KI has produced the documents sought by WSC and Utmel, KI respectfully requests that this Court deny the relief they sought regarding these documents.

---

[12]    Unfortunately, KI is required to address the substantial inadequacies of WSC's recent software production in its own Motion to Compel.  Hopefully, those issues will be resolved long before this Court's intervention.

## CONCLUSION

WSC has seriously "jumped the gun" in filing its motion, and as a consequence has caused the parties not only to expend the considerable sums necessary to brief this matter for the Court, but has also possibly caused KI to suffer the loss of airfare purchased for the earlier scheduled depositions, all because of WSC's unjustified rejection of KI's offer of far more deposition time and related accommodations than WSC is entitled to under the Rules.  This is unjust.

Attempts to resolve this dispute continue; however, should WSC continue to reject KI's reasonable proposals, WSC should be given no more access to these witnesses than is reasonably necessary (2½ days), should pay for losses caused KI by reason of WSC's unreasonable rejections, and should pay in advance for the witnesses' first class airfare to America.

For the foregoing reasons, KI respectfully requests that this Court deny WSC and Utmel's Motion to Compel, conditioning any depositions of KI employees upon WSC's payment for the lost airfare, and first class airfare for future travel.

Respectfully submitted,


_____/s/_____
John M.G. Murphy
Federal Bar No.03811
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202-1643
410-685-1120
410-547-0699 (fax)

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July, 2003, a copy of the foregoing Memorandum in Opposition of Defendant Western Services Corporation's Motion to Compel sent via facsimile and Federal Express to:

    Margaret A. Keeley, Esquire
    Williams & Connolly
    725 Twelfth St., N.W.
    Washington, DC 20005-5901

    Attorneys for Defendants

And via hand delivery to:

    Frank J. Gorman, Esq.
    Charles L. Simmons, Esq.
    Gorman & Williams
    Two North Charles Street
    Baltimore, MD 21201

    Counsel for Counter-Defendant
    GSE Systems, Inc.

                     /s/
                    John M.G. Murphy