**OBER|KALER**
A Professional Corporation

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

FILE COPY

Jesse B. Hammock
jbhammock@ober.com
410-347-7664

Offices In
Maryland
Washington, D.C.
Virginia

July 15, 2003

**VIA FACSIMILE (202-434-5029) AND FEDERAL EXPRESS**

Margaret A. Keeley, Esquire
Williams & Connolly
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901

      Re:    *Kurchatov v. Western Services Corporation, et al.*
             In the United States District Court for the District of Maryland
             Case No. AMD 02 CV3878

Dear Meg:

    I write to outline the remaining outstanding discovery issues regarding WSC's document production and to follow up on Ann Sagerson's July 3, 2003 letter regarding the same, and to provide documents supplementing KI's former responses. As a preliminary matter, regarding your inquiry as to translators for depositions, it is our position that if we need a translator, we will hire our own.

    Enclosed you will find recently received documents from Kurchatov responsive to numerous of WSC's requests. Although the majority of the documents are in Russian, it is my belief that they pertain to the following subjects:

    Document Nos. KI010234 – KI010346 contain employment records, including confidentiality agreements as requested.

    Document Nos. KI010347 – KI010349 contain internal communications within KI concerning SimPort;

    Document Nos. KI010350 – KI010354 contain documents relating to the legal relationship between KI and InterDCM/InterDUM;

491255.1





1903 OBER|KALER 2003
Forward thinking.
For the century ahead.

OBER KALER
A Professional Corporation

Case 1:02-cv-03878-AMD   Document 44-13   Filed 07/17/2003   Page 2 of 4

Margaret A. Keeley, Esquire
July 15, 2003
Page 2

Document Nos. KI010355 – KI010356 contain documents evidencing the grant of authority to institute legal proceedings against WSC and Utmel;

Document Nos. KI010357 – KI010385 contain various other documents responsive to numerous of WSC's requests.

Request Nos. 1, 2, 3 and 4:

There are three outstanding issues regarding WSC's production of software. Initially, Ann Sagerson on July 3, 2003, confirmed that WSC will produce "all source code in its possession" responsive to Request No. 2. As yet, KI has not received any source code for any software other than the three versions of SimPort received on July 9, 2003. Please confirm when KI can expect to receive the electronic versions of this additional software.

As to WSC's production of SimPort, it remains our opinion that WSC must produce all versions of SimPort and all source code upon which it is based. In her July 3, 2003 letter to KI, Ann Sagerson stated that so long as KI's expert states a "reasonable" basis for needing the other versions SimPort, such copies would be provided. As you will recall, in our July 9, 2003 teleconference, I communicated to you that KI's expert was of the opinion that all versions of SimPort are necessary for a complete evaluation of each version's reliance on KI's SimPort. While I appreciate your assurance that all of the versions are duplicative, it is still necessary for KI to determine this on its own. Also in our July 9, 2003 conversation, you stated for the first time that WSC no longer possesses any of the software upon which its versions of SimPort 1997 and/or SimPort 2000 are based. Please confirm whether such prior versions exist, and if so, when they will be produced.

Request Nos. 5, 6 and 7:

Ms. Sagerson's July 3, 2003 letter fails to address whether WSC will produce the documents requested by Request Nos. 5, 6 and 7. As you will recall, among other things, these Requests seek memos, e-mail, correspondence, notes, flow charts, diagrams, information received from third parties during and related to the development, creation or execution of SimPort. While appearing to address these issues, Ms. Sagerson's letter merely recites that these requests do not pertain to software other than SimPort, and then states that "WSC will produce the source code for all non-SimPort simulation software technology." Obviously, this response does not address the communications and correspondence (and other information) sought by Requests Nos. 5, 6 and 7.

491255.1

OBER|KALER
A Professional Corporation

Case 1:02-cv-03878-AMD   Document 44-13   Filed 07/17/2003   Page 3 of 4

Margaret A. Keeley, Esquire
July 15, 2003
Page 3

In other places, Ms. Sagerson's letter does address e-mail and other such communications between WSC, SAIC and DS&S. Notably, these responses ignore any communication with any entities other than DS&S and SAIC as requested by Requests Nos. 5, 6 and 7, which must be produced. Nonetheless, Ms. Sagerson states that WSC will produce all communications and like documents (with the exception of e-mail) between WSC, SAIC and DS&S. Please confirm when such communications will be provided as they have not been received yet. As to the e-mail communications, it is not KI's responsibility to examine all of WSC's e-mail exchanged with SAIC and DS&S in light of the fact that KI's Request No. 29 seeks only those communications related to simulation technology. Since such communications are obviously relevant to the dispute between the parties, it is necessary for WSC to produce them. Alternatively, if you wish to provide them in electronic, searchable format, ordered by date, KI will accept all 8,000 e-mails Ms. Sagerson claims exist. Either way, it is necessary for WSC to produce these communications, responsive to Requests 5, 6, 7 and 29.

Request No. 8:

In response to Request No. 8, Ms. Sagerson states that WSC will provide all documents sought, but because of the volume, requests that we provide the name of a copy service so that the documents can be copied and billed to KI. Please confirm the approximately number of documents so that we can assess the potential cost and may properly instruct you as to what copy service to send these documents to.

Request Nos. 9, 12-15, 17, 20-28, 30:

Thank you for confirming that KI "will produce all responsive documents" with regard to these Requests. Please confirm when *all* such responsive documents will be produced, or if it is your assertion that all such responsive documents have been produced.

Request Nos. 10, 11, 18 and 19:

Initially, upon review of the profit and loss documents provided by WSC, we agree that the time and remuneration figures are accurately reflected therein. I do note, however, that in our July 9, 2003, teleconference, you stated that WSC's SimPort has been licensed to approximately 30 facilities. Please note that the profit and loss documents provided in WSC's prior production do not reflect payment from 30 companies, but instead show payment from only approximately fifteen companies. We await similar profit and loss documents for all facilities to which WSC's "version" SimPort has been licensed. On a related topic, I note that upon review

OBER|KALER

Margaret A. Keeley, Esquire
July 15, 2003
Page 4

of WSC's document production, there are no documents that evidence the one million dollar time and materials fee paid to KI as alleged in WSC's Answer at Paragraph 27. Please confirm whether you have provided documents evidencing these payments, and if not, when they will be produced.

With regard to Request No. 10, we again require that WSC produce all work product related to any computer software evidencing work performed by scientists formerly associated with KI. Any proprietary documents would presumably be covered by the Confidentiality Agreement between the parties, obviating any concerns regarding confidentiality. Moreover, I point out that Ms. Sagerson has already agreed to produce the software upon which this work product is based.

With regard to Request No. 11, we confirm that Ms. Sagerson stated that WSC has produced all non-privileged, responsive documents. If any documents are being withheld as privilege, KI anticipates that WSC will place them on a privileged log as discussed by the parties.

With regard to Request Nos. 18 and 19, while we appreciate WSC's production of certain financial information, it is not *all* of what was requested. Notably, you mentioned in our July 9, 2003 teleconference that WSC has licensed SimPort to over 30 facilities. Nonetheless, the financial information provided shows payments from only about fifteen facilities. Moreover, the information provided is WSC's alleged synopsis of the underlying financial documents. It is necessary for KI to evaluate the underlying financial documents to assess the accuracy of WSC's synopsis. As such, KI requests that WSC provide all documents requested in Request Nos. 18 and 19 consistent with WSC's obligations under the Federal Rules.

Please respond within 48 hours to notify me whether the documents and software outline above will be produced so as to prevent the necessity of seeking judicial relief. If you have any questions, please do not hesitate to give me a call.

Very truly yours,

Jesse B. Hammock

JBH:cld
Enclosures
cc:  Charles L. Simmons, Esquire (w/enclosures -- via first class mail)
     John M. G. Murphy, Esquire (w/o enclosures)

491255.1