**WILMER, CUTLER & PICKERING**

2445 M STREET, N.W.

WASHINGTON, DC 20037-1420

TELEPHONE +1 (202) 663 6000
FACSIMILE +1 (202) 663 6363
WWW.WILMER.COM

THOMAS P. OLSON
(202) 663-6651
THOMAS.OLSON@WILMER.COM

WASHINGTON
NEW YORK
BALTIMORE
NORTHERN VIRGINIA
LONDON
BRUSSELS
BERLIN

June 20, 2003

<u>BY FIRST CLASS MAIL AND TELECOPIER</u>

John M.G. Murphy, Esq.
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
8th Floor
Baltimore, MD 21202
Fax No.: (410) 547-0699

Re:   Subpoenas served by The Kurchatov Institute

Dear Mr. Murphy:

    It has come to our attention that the Russian Research Center The Kurchatov Institute ("KI") has caused at least a dozen subpoenas to be served on current and former customers of our clients, Science Applications International Corporation ("SAIC") and Data Systems & Solutions ("DS&S") in connection with your litigation against Western Services Corporation ("Western").

    The subpoenas that your firm has issued to these customers are fatally defective in several respects and the recipients are under no obligation to respond to them. But setting aside those defects for the moment, there is no need for KI to harass SAIC's and DS&S's customers in any event. To the extent that the subpoenas seek documents that may properly be the subject of discovery, those documents can be obtained either from Western, which is a party to the litigation, or from our clients.

    As my colleague Colin Rushing advised your associate Jesse Hammock on Wednesday, DS&S and SAIC are ready and willing to produce documents from their files in a manner that will fully address any legitimate need that you may have for documents relating to work done by DS&S or Western for these customers.

    In light of this voluntary offer, which fully addresses your reasonable discovery needs, we ask that you withdraw immediately your unnecessary subpoenas to SAIC and DS&S customers. As you know, pursuit of discovery against customers in litigation of this kind can amount to a form of competitive abuse. *See Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) ("[I]t is undisputed that Joy and Flakt are fierce competitors in the technology that is the subject of this lawsuit, and Joy has not convinced the Court that the same information it seeks from third parties is not available from Flakt. Therefore, unless Joy can demonstrate that it

has a specific need for evidence available only from third party customers of Flakt, the Court concludes that Flakt and its customers are entitled to protection. Thus, Flakt's Motion for a Protective Order will be granted . . . .")

The timing of KI's service of subpoenas on these customers, some of which are actively weighing competing bids submitted by DS&S (with Western as a subcontractor) and by your clients for important future projects, is troubling, as is KI's failure to pursue the natural route for obtaining these documents -- from either Western or from DS&S.

We need to resolve this matter by Tuesday, June 24. Should KI continue to harass SAIC's and DS&S's customers despite this voluntary undertaking -- which fully addresses KI's legitimate discovery needs -- we will take those steps necessary to protect our customers from further harassment by KI.

I look forward to hearing from you.

Very truly yours,

Thomas P. Olson