IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| RUSSIAN RESEARCH CENTER<br>THE KURCHATOV INSTITUTE,<br><br>          Plaintiff,<br><br>  v.<br><br>WESTERN SERVICES CORP., et al.,<br><br>          Defendants and<br>          Third-Party Plaintiff,<br><br>  v.<br><br>GSE SYSTEMS, INC.<br><br>          Third-Party<br>          Defendants. | Case No.: AMD 02-3878 |

**MOTION TO COMPEL THE DEPOSITIONS OF TWO
PRINCIPAL OFFICERS OF PLAINTIFF KURCHATOV, AND TO
COMPEL PLAINTIFF KURCHATOV TO PRODUCE
ELECTRONIC VERSIONS OF THE SOFTWARE ALLEGED TO
<u>HAVE BEEN INFRINGED, AND OTHER DOCUMENTS</u>**

Defendants Western Services Corp. and Mr. George Utmel (collectively, "Western"), through undersigned counsel, hereby request that the Court order Plaintiff Russian Research Center Kurchatov Institute ("Kurchatov") to make two of its principal officers, Messrs. Semen Malkin and Igor Rakitin, available for deposition in the State of Maryland for two to three days each prior to August 23, 2003. These depositions were first requested in May 2003, and were initially noticed and confirmed for July 2003.

Plaintiff has since cancelled those confirmed dates, however, and now refuses to make either Messrs. Malkin or Rakitin available for more than one and one-half days of deposition, despite the fact that each deponent will require the use of an interpreter. Nor has Plaintiff provided dates upon which the depositions of Messrs. Malkin and Rakitin can go forward for more than one and one-half days.

Remarkably, Plaintiff Kurchatov has also refused to produce an electronic copy of the very software it claims Western is infringing. Although Kurchatov concedes that the software is relevant and discoverable, it is improperly holding that software hostage to other discovery disputes. Western thus also seeks an order compelling the immediate production of this software.

Finally, Kurchatov has refused to produce documents relating to its legal authority to bring this lawsuit, and its legal relationship to its "sister" corporations, named InterDCM and InterDUM. These documents speak directly to Western's defenses that the present suit is *not* authorized, and that many of the agreements and transactions alleged by Kurchatov would be barred by illegality. Kurchatov has provided no legitimate basis for withholding these documents, and Western requests that the Court compel their production as well.

Western also requests that Kurchatov be required to pay the costs of bringing this Motion.

Further grounds in support of this Motion are discussed in the accompanying Memorandum.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


By: _____/s/_____
      Bruce R. Genderson (Bar No. 02427)
      Margaret A. Keeley (Bar No. 15654)
      Ann Sagerson (Bar No. 15821)

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

*Counsel for Western Services Corporation and George Utmel*

Dated: July 2, 2003

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RUSSIAN RESEARCH CENTER**<br>**THE KURCHATOV INSTITUTE,**<br><br>        Plaintiff,<br><br>  v.<br><br>**WESTERN SERVICES CORP., et al.,**<br><br>        Defendants and<br>        Third-Party Plaintiff,<br><br>  v.<br><br>**GSE SYSTEMS, INC.**<br><br>        Third-Party<br>        Defendants. | Case No.: AMD 02-3878 |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
THE DEPOSITIONS OF TWO PRINCIPAL OFFICERS OF
PLAINTIFF KURCHATOV, AND TO COMPEL PLAINTIFF
KURCHATOV TO PRODUCE ELECTRONIC VERSIONS
OF THE SOFTWARE ALLEGED TO HAVE BEEN
<u>INFRINGED, AND OTHER DOCUMENTS</u>**

Kurchatov brought this lawsuit in the District of Maryland, alleging that Western and Mr. Utmel have infringed Kurchatov's proprietary rights by copying simulation software that Kurchatov claims to own. Kurchatov's allegations, which third-party defendant GSE quickly broadcast throughout the small, power plant simulation community, have wreaked havoc on Western's existing client relationships, as well as its bids for potential new projects. Having accomplished this damage by merely filing its lawsuit, Kurchatov is now attempting to avoid any

detailed examination of its allegations by delaying the most basic discovery. It refuses to make officers available for more than one and one-half days of deposition, *even though the depositions must be taken with the assistance of an interpreter.* It refuses to produce the electronic version of the very software it claims has been infringed, holding it hostage to other discovery disputes. And it refuses to produce other documentation that is plainly relevant to the defenses pled by Western.[1]

Kurchatov should not be permitted to postpone discovery any longer. At a minimum, Kurchatov must produce the software at issue, and make its people available for two to three days of deposition each. Kurchatov should also be required to pay the costs borne by Western in bringing this motion.

I. **KURCHATOV'S OFFICERS SHOULD BE MADE AVAILABLE FOR DEPOSITION.**

On May 26, 2003, based upon scheduling discussions with Kurchatov's counsel, Western noticed the depositions of Messrs. Malkin and Rakitin for July 14 through July 17, 2003 in Baltimore, Maryland. Exhibit ("Ex.") 2.[2] Despite the fact that Messrs. Malkin and Rakitin are two of the key principals at Kurchatov with

---

[1] At the same time that Kurchatov has delayed discovery amongst the parties, Kurchatov has aggressively pursued wide-reaching and irrelevant discovery against Western's customers – speaking volumes as to its true motives.

[2] According to Kurchatov's interrogatory responses, Mr. Malkin is the Administrator and Director of Kurchatov DCMM (the Dynamics, Control and Math Modeling Department, which is responsible for simulation), and Mr. Rakitin is the Deputy Director of Kurchatov DCMM, and each was intimately involved in the events alleged in the Complaint. Ex. 3 (excerpts from Kurchatov's interrogatory responses). Moreover, Messrs. Malkin and Rakitin are in charge of the day-to-day activities of the current litigation. Id.

2

knowledge concerning the events alleged in the Complaint, Kurchatov objected to the depositions of Messrs. Malkin and Rakitin taking place in the United States, and insisted that Mr. Utmel pay for both his counsel and a court reporter to travel to Russia to depose Messrs. Rakitin and Malkin.  Ex. 1 at ¶ 2 (Declaration of Margaret A. Keeley, Esq.).

In order to avoid involving the Court in this dispute, and to expedite the scheduling of Messrs. Rakitin and Malkin, Western compromised by offering to pay for the witnesses to travel to the United States for their July 14-17 depositions.  Id. at ¶ 3.  Kurchatov's counsel accepted this offer, and confirmed the July dates by telephone with Western's counsel.  Id. at ¶ 4.

On June 13, 2003 counsel for Kurchatov wrote Western to inform it that in fact neither Mr. Malkin nor Mr. Rakitin was available to be deposed any time during the month of July, but that each would be available in August, other than the "non-negotiable" dates of August 20-24.  Ex. 4.[3]  Western accepted this change in scheduling, and requested that the depositions go forward August 11-14.  Ex. 5.

Once again counsel for Kurchatov withdrew the offered dates.  Counsel for Kurchatov called Western's counsel to inform her that August 11-14 would not work, because although Messrs. Malkin and Rakitin would be available, Mr. John

---

[3] According to counsel, when Messrs. Malkin and Rakitin confirmed their availability on the *July* 14-18 dates, they mistakenly believed they were confirming for *August* 14-18.  Ex. 1 at ¶ 5.

3

Murphy intended to defend the depositions, and would not be available that week. Ex. 1 at ¶ 7 (Keeley Decl.). The next day, however, Kurchatov noticed the deposition of Mr. Utmel for August 14, 2003 – one of the days that counsel had just represented was unavailable.[4] Ex. 6. Meanwhile, Kurchatov notified Western that Messrs. Rakitin and Malkin would only make themselves available for one day of deposition each. Ex. 7 (Kurchatov counsel's letter of June 20, 2003). See also Ex. 8 (Kurchatov counsel's letter of June 24, 2003).

Western nonetheless tried to find dates agreeable to all parties one more time, and suggested any four days during the week of July 28, or two days during the week of July 28 and two days during the week of August 4. Ex. 1 at ¶ 8 (Keeley Decl.). Kurchatov did not respond until June 30, 2003, when its counsel wrote to inform Western that Messrs. Rakitin and Malkin were both on vacation (*in the United States*), and that no dates could be confirmed until they returned. Ex. 12 (e-mail from Jesse Hammock).

On July 1, 2003, counsel for Kurchatov left a voicemail stating that Messrs. Malkin and Rakitin would be available the last week of July 2003, but that each would be available only one day – suggesting Wednesday and Friday of that week. Ex. 1 at ¶ 9. Finally, on July 1, 2003 counsel for Kurchatov wrote that in the

---

[4] Kurchatov not only noted the deposition of Mr. Utmel and several employees of Western, Kurchatov also caused subpoenas to be formally served on these witnesses the following week, despite the fact subpoenas are not required to notice a party's deposition, and even though counsel for Western had called Kurchatov's counsel in the interim to state that formal service through a process server was neither required nor desired.

4

spirit of compromise it would make each witness available for one and one-half days of deposition. Ex. 10.

### A. Kurchatov's Officers Should Be Made Available for More than 7 Hours of Deposition.

Federal Rule of Civil Procedure 30(d) places a one day, seven hour limit on depositions, but states that courts *must* allow additional time "if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." Fed. R. Civ. P. 30(d). Messrs. Malkin and Rakitin are the two officers of the plaintiff Kurchatov with the most involvement in the events alleged in the Complaint. Even under ordinary circumstances, these depositions could exceed seven hours. But we do not face ordinary circumstances. Both Messrs. Malkin and Rakitin require an interpreter. Thus every question will have to be stated in English, and then re-stated in Russian. Similarly, every answer will have to be given in Russian, and then repeated by the interpreter in English. At a *minimum*, this will double the time required for the deposition, and more likely lengthen the time even more.

Indeed, the parties previously acknowledged that the use of interpreters would "greatly prolong the process," and therefore agreed to a total of 120 deposition hours for Western, and 80 deposition hours each for Kurchatov and third-party defendant GSE. See Joint Report Regarding ADR, Deposition Hours, and Trial Before a Magistrate, filed with this Court April 17, 2003. Inexplicably, Kurchatov now wishes to ignore the time burden imposed by the use of an

5

interpreter, and limit Messrs. Malkin's and Rakitin's depositions to one and one-half days.

Fair depositions cannot be accomplished in one and one-half days under these circumstances, and thus Western requests that the Court permit Western to depose Messrs. Malkin and Rakitin for at least two days, and if necessary three days, each.

> B. **Kurchatov's Officers Should Be Required To Provide Counsel With Four Days Between Now and August 25, 2003 When They Will Be Available For Deposition.**

Counsel for Western has spent more than a month diligently trying to schedule deposition dates for Messrs. Rakitin and Malkin. Yet each time Western believes that it has confirmed dates, Kurchatov backs out. Now the latest word from counsel is that while Messrs. Rakitin and Malkin will be available for deposition the last week of July, they will only be available for one and one-half days each.

Scheduling depositions for foreign witnesses can be difficult, but it is not impossible. Western has been more than patient. It is time for Messrs. Malkin and Rakitin to coordinate with their counsel and provide dates when they are available for two to three days of deposition each. Western requests that the Court order Messrs. Malkin and Rakitin each to provide four days between now and August 25, 2003 when they are available for deposition so that counsel for Western may select two to three days for each deponent.

## II. KURCHATOV SHOULD BE COMPELLED TO PRODUCE ELECTRONIC VERSIONS OF THE SOFTWARE IT CLAIMS IS INFRINGED.

Kurchatov has alleged five claims of copyright infringement against Western – and three other claims that are derivatives of the copyright claims –yet has refused to produce electronic copies of the very software code that it claims has been infringed. Electronic copies of the software are critical to any expert analysis of infringement, and Kurchatov initially agreed to exchange electronic versions of the software. See, e.g., Ex. 4 (June 13, 2003 letter from Kurchatov's counsel). Kurchatov later backed away from this offer, however, claiming that Western's refusal to produce *every single copy* of SimPort in its possession justified Kurchatov's withholding of its electronic version of code pending resolution of the dispute over production of Western's duplicate copies of SimPort. Ex. 7.

Kurchatov's position came as a surprise to Western's counsel as they had previously discussed Western's production, and agreed that Western would initially produce only the first and last versions of its SimPort 2000 source code, as well as any existing code from the prior software – referred to as SimPort 1997 in Western's Answer and Counterclaim. Counsel for Kurchatov even wrote to confirm "that we agreed in our telephone conversation of June 6, 2003 that Western will produce the first and last versions of SimPort 2000, as well as all versions of

7

SimPort '97." Ex. 4 (June 13, 2003 letter from Kurchatov's counsel).[5]

Western has informed Kurchatov that it stands ready and willing to exchange the agreed upon code while their dispute over the numerous interim copies of the code is resolved, but Kurchatov has refused. See Ex. 9 (June 30, 2003 letter from Kurchatov's counsel). Kurchatov should be required to go forward with the exchange now, both because the existence of other discovery disputes does not justify Kurchatov's delay and because the other discovery disputes have no merit in any event.

### A. The Dispute Over the Production of Multiple Copies of SimPort 2000 Does Not Justify Withholding Kurchatov's Electronic Code.

The fact that Kurchatov and Western may dispute the relevancy of duplicate copies of the SimPort source code does not relieve Kurchatov of its obligation to produce an electronic version of its own code – the relevancy of which is not in dispute. Indeed, the Local Rules of this Court explicitly provide that: "*Unless otherwise ordered by the Court, the existence of a discovery dispute as to one matter does not justify delay in taking any other discovery*." Local Rule 104(3) (emphasis added). Cf. Fed. R. Civ. P. 34(b) ("If objection is made to part of an item or category, the part shall be specified and [production] permitted of the remaining parts."). Kurchatov has not sought an order from this Court. Nor has it requested

---

[5] Although Kurchatov tries to attribute its recent change in position to its expert, Kurchatov's counsel's letter of June 13, 2003 makes clear that its expert was consulted prior to confirming that only the first and last versions of SimPort 2000 would initially be produced.

8

that Western consent to an extension of time until the dispute over Western's code can be resolved. Rather, Kurchatov unilaterally granted itself an indefinite extension on grounds explicitly rejected by Local Rule 104. Kurchatov should be ordered to immediately exchange its electronic software code for Western's SimPort 1997 and SimPort 2000.

    **B.    There Is No Relevance to the Multiple Copies of Code Requested by Kurchatov.**

Not only does the dispute over the production of Western's multiple copies of the SimPort source code fail to provide a proper basis for Kurchatov withholding its own source code, but also the underlying dispute has no merit.

SimPort is used to build power plant simulators. Western has used SimPort to build or upgrade simulators for dozens of power plants, and has saved a copy of most of these simulators. Western's version of the simulator contains a full copy of the SimPort source code. Thus Western has a copy of the SimPort software from almost every project that it has completed.

The source code for SimPort changes very little from project to project.[6] Rather, the difference between each "version" is in the specifics of the simulator itself, which is customized for each power plant customer. Because the SimPort source code itself changes very little, these multiple copies of SimPort source code are substantially no different than that which Kurchatov will already possess through the production of the first version of SimPort 2000. Nonetheless, in order

---

[6] Western does modify the source code when "bugs" are found.

9

to allow Kurchatov to make that evaluation itself, Western is also producing the most recent version of SimPort 2000.[7] Accordingly, Kurchatov should not be permitted to use this meritless discovery dispute as justification for not exchanging the software code with Western immediately.

### III. KURCHATOV SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATING TO ITS AUTHORIZATION TO BRING THIS LAWSUIT AND THE LEGAL RELATIONSHIP BETWEEN KURCHATOV, InterDCM, AND InterDUM.

Western requested documents relating to Kurchatov's authority to bring this lawsuit, as well as the documents evidencing the legal relationship between Kurchatov and its "sister corporations," InterDCM, and InterDUM. These documents are relevant to at least three of Western's defenses: the defense that there was a lack of authority to contract (Western's Sixth Defense); the defense that there is a lack of standing to bring this lawsuit (Western's Eighth Defense); and the defense that Kurchatov's claims are barred by illegality (Western's Thirteenth Defense).

Kurchatov nonetheless objected that Western's requests were irrelevant, overbroad and unduly burdensome. Ex. 11 (excerpt from Kurchatov's Responses to Western's Document Requests). Western thus agreed to narrow its request to documentation sufficient to show that Kurchatov has granted authority to bring this suit, and documentation sufficient to show the relationship between

---

[7] Western has also informed Kurchatov that it would consider producing the other copies of SimPort 2000 if Kurchatov's expert articulated a reasonable basis for needing the interim copies *after reviewing the first and last versions of SimPort 2000.*

10

Kurchatov, InterDCM, and InterDUM. Ex. 5 (letter of June 17, 2003). Kurchatov has still refused production, however, stating that they will produce the documents only if Western produces all documents to which Western has objected. Ex. 7.

Whether Kurchatov has authorized the present lawsuit goes to the very issue of whether this case is properly before this Court. Moreover, Western has serious questions concerning the legal relationship between InterDCM, InterDUM, and Kurchatov – questions which cannot be answered through the means ordinarily used to research companies incorporated within the United States. Because these companies are formed abroad, it is critical that Kurchatov provide the missing information in discovery.

Indeed, while Kurchatov's counsel has represented that "InterDCM" (International Dynamic Control Modeling) and "InterDUM" are the same company, and InterDCM is simply the English translation of InterDUM, counsel for Western is informed that there is no Russian equivalent of "Control" which begins with a "U." Thus questions remain as to whether these are the same company, or two different companies, and as to the exact nature of the legal relationship between InterDCM, InterDUM, and Kurchatov.

The Court should therefore require Kurchatov to produce documents sufficient to establish the legal relationship between these entities, and Kurchatov's authorization to bring this lawsuit.

## CONCLUSION

For the foregoing reasons, Western and Mr. Utmel respectfully request that the Court grant their Motion to Compel, and award them the attorneys fees incurred in bringing this Motion.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


By: _____/s/_____
Bruce R. Genderson (Bar No. 02427)
Margaret A. Keeley (Bar No. 15654)
Ann Sagerson (Bar No. 15821)

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

*Counsel for Western Services Corporation and George Utmel*

Dated: July 2, 2003

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion to Compel the Depositions of Two Principal Officers of Plaintiff Kurchatov, and to Compel Plaintiff Kurchatov to Produce Electronic Versions of the Software Alleged to Have Been Infringed, and Other Documents, and a copy of the Memorandum in support thereof, were sent to the following by FedEx on July 2, 2003:

>John M.G. Murphy, Esq.
>Ober, Kaler, Grimes & Shriver, P.C.
>120 East Baltimore Street
>Baltimore, MD 21202
>
>Charles L. Simmons, Jr., Esq.
>Gorman & Williams
>Two North Charles Street
>Suite 750
>Baltimore, MD 21201

_____/s/_____
Margaret A. Keeley