

EXHIBIT

3

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| Russian Research Center<br>The Kurchatov Institute. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No.: AMD 02-3878 |
| Western Services Corp., et al. | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF RUSSIAN RESEARCH CENTER THE KURCHATOV INSTITUTE'S ANSWERS AND OBJECTIONS TO DEFENDANT WESTERN SERVICES CORPORATION'S FIRST SET OF INTERROGATORIES

Plaintiff Russian Research Center, The Kurchatov Institute ("KI"), by its undersigned attorneys and pursuant to Fed.R.Civ.P. 33, hereby answers the interrogatories propounded upon it by defendant Western Services Corporation ("WSC"), as follows:

(a) The information furnished in these answers is not based solely upon the knowledge of the executing party, but includes the knowledge of the agents, representatives and, except to the extent the same is privileged, attorneys of the executing party.

(b) The word usage and structure of these answers is that of the attorney of the executing party and is not, and does not purport to be, that of the executing party.

481464.3

Michael Balcerek, Robert Larrick, Jr., Jye-Yuh Lee, Steve Freel, John

Boyd, Neil O'Konnor, Mladen Udbinac, Jude Pierre, Sergey Zhigunov,

11939 Sentinel Point Ct., Reston, VA 20191, Merrill Quintrell

(Electric Power Research Institute), and Rob Johnson.

Interrogatory No. 3:    For each such person identified in
your response to Interrogatory No. 2 above, state the facts and
subject matter about which that person has knowledge.

Answer No. 3:  The Plaintiff objects to this interrogatory

to the extent that it seeks information that is beyond the custody or

control of KI, is not relevant to the subject matter of this lawsuit,

is not reasonably calculated to lead to the discovery of admissible

evidence, and on the grounds that the interrogatory is premature,

overly broad and unduly burdensome.  KI also objects to this

interrogatory in that it seeks information in violation of the

attorney work-product privilege, attorney/client privilege and the

joint-defense privilege.  The interrogatory is also objected to on

the ground that it seeks information beyond the custody or control of

KI.  Notwithstanding, and without waiving these objections, KI states

as follows.

KI Employees:

(a)  Dr. Rakitin: Knowledge of KI's SimPort and its origin,
efforts to establish and document a relationship with SAIC/DS&S
and WSC regarding the use of KI's SimPort, litigation involving
SimPort against WSC, the relationship between KI and GSE, GSE's
due diligence efforts to determine KI's ownership rights to
SimPort, the Memorandum of Understanding and Master Software
License Agreement between GSE and KI for SimPort, the press

release issued by GSE in August 2002, what documents were provided or shown to attendees at the January 2003 SCS Simulation Conference, and GSE's intentions to market and utilize SimPort.

(b)   Professor Malkin: Knowledge and supervision of KI's SimPort and its origin, efforts to establish and document a relationship with SAIC/DS&S and WSC regarding the use of KI's SimPort, of the SimPort litigation involving WSC, the relationship between KI and GSE, GSE's due diligence efforts to determine KI's ownership rights to SimPort, the Memorandum of Understanding and Master Software License Agreement between GSE and KI for SimPort, the press release issued by GSE in August 2002, and GSE's intentions to market and utilize SimPort.

(c)   Acad. N.N. Ponomarev-Stepnoi: Knowledge of and management and supervision of KI's SimPort software beginning in or about the early 1990's, knowledge of relations and negotiations between KI and DS&S, SAIC and WSC regarding the use of KI's SimPort, knowledge of the relationship between KI and GSE, GSE's due diligence efforts to determine KI's ownership rights in SimPort, the Memorandum of Understanding and Master Software License Agreement between GSE and KI for SimPort, GSE's August 2002 press release, and GSE's intentions to market and utilize SimPort.   Knowledge of the authorization and institution of the suit against WSC by KI.

(d)   Dmitry Yanushevich: Knowledge of KI's SimPort and its origin, development of KI's SimPort technology including, but not limited to, supervising the development of KI's hydraulic tool and the transfer thereof to KI's SimPort.   Knowledge of the Sherco, Armstrong and Arnot projects and how KI's SimPort was utilized in those projects, the development activity conducted by KI employees under the Sherco, Armstrong and Arnot projects, the acceptance test procedures used by the customers on the Sherco, Armstrong and Arnot projects and KI's involvement in such activity, and how software changes were introduced in the Armstrong simulator mathematical description.

(e)   Andrey Zenkov: Knowledge of KI's SimPort and its origin, development of KI's SimPort technology, development and testing of KI's hydraulic tool and the transfer thereof to KI's SimPort, how KI's SimPort was utilized for the simulator upgrade projects for MAGNOX Projects, Hinkley Point A and Bradwell in 1999 and

SimPort was used including the nature and extent of the activities and work of the KI Engineers, and the role George Utmel performed on the Sherco project.

(z) <u>Merrill Quintrell</u>: Knowledge of SimPort technology, joint funding of projects sponsored by EPRI where SimPort used, solicitation and evaluation activity conducted by EPRI for SimPort-related projects, contracts awarded by EPRI to SAIC/DS&S utilizing SimPort technology, payments received by EPRI from SAIC, DS&S and/or WSC, payments made by EPRI to SAIC, DS&S and/or WSC, and representations made by DS&S regarding SimPort and its ownership.

(aa) <u>Lesley LaMothe</u>: Knowledge of KI's trademark applications for SimPort.

(bb) <u>Donna Dugger and Susan Todd</u>: Knowledge of KI's copyright applications for SimPort.

(cc) <u>Rob Johnson</u>: Knowledge of SimPort technology, SimPort dispute and the litigation.

(dd) <u>Peter M. deJonge</u>: Thorpe, North & Western. Knowledge of KI's trademark application for SimPort.

<u>Interrogatory No. 4</u>:    Identify the person who first conceived the mark "SimPort," and identify any documents or other evidence relating to the allegation contained in Paragraph 14 of the Amended Complaint that KI renamed the AIS-95 simulation software program "SimPort," or any other evidence of KI's first use of the "SimPort" mark.

<u>Answer No. 4</u>: The Plaintiff objects to this interrogatory to the extent that it seeks information that is not relevant to the subject matter of this lawsuit, is not reasonably calculated to lead to the discovery of admissible evidence, and seeks proprietary and confidential business information, or information that is protected by the attorney/client privilege, attorney work-product privilege or

the joint defense privilege.    Notwithstanding and without waiving these or any other objections, KI states that the SimPort mark was first conceived in or about 1997 during a "brain-storming" session involving KI, SAIC, and WSC employees, including, but not limited to Semen Malkin, Igor Rakitin and Guia Outmelidze.    The main goal of changing the name from AIS '95 to SimPort was for KI to maintain "free use" of the AIS '95 name for simulation promotion and marketing within the former Soviet Union and in Europe for non-simulation use, and to increase the market attractiveness and name recognition of the product.    The SimPort name was mostly oriented for the U.S. market to be used by a would-be "New Company," to be jointly operated by KI (or its subsidiary InterDCM) and WSC.    Thereafter, KI first used the mark in commerce by affixing it to the formerly-named AIS '95 technology promotional materials, by or about April, 1997 during commercial presentations (which resulted in sales) to two entities, the Electric Power Research Institute ("EPRI") and Northern State Power ("NSP").    Also, by document dated April 9, 1997, SAIC submitted a joint proposal with KI for KI's SimPort simulation software under EPRI RFP No. 3384-10 for the Northern State Power Sherco Unit 2 Fossil Power Plant Full Scope Simulator.

        Interrogatory No. 5:    Identify  ·  any    information, documents and/or technology (in any form) KI engineers transferred to WSC in the United States relating to simulation technology, the precise form in which it was transferred, the timeframe when it was transferred, and any licenses or other governmental approvals related

to KI's transfer of such information, documents and/or technology to WSC in the United States

Answer No. 5: The Plaintiff objects to this interrogatory as seeking information that is not relevant to the subject matter of this lawsuit, is not reasonably calculated to lead to the discovery of admissible evidence, and is overly broad and unduly burdensome. KI also objects in that the question seeks confidential and proprietary trade secret information, or seeks information protected by the attorney/client privilege, the attorney work-product doctrine or the joint-defense privilege. Without waiving these or any other objections, KI states that, according to a verbal agreement between Dr. Rakitin, Prof. Malkin and Mr. Valeri Milachenko of SAIC, KI and InterDCM prepared a special demonstration project version of the then-named AIS '95 software, including executive codes of the software technology. This demonstration model, which could perform a variety of tasks, was then presented to SAIC in the form of software modules and components, including Engineering Station, Data Presentation Modules, Object and Task Builder, Hydraulic Tool, Logic Tool, Wire Tool, and Electric Tool. KI and SAIC employees presented the demonstration model to various entities, including EPRI and NSP, resulting in the award of lucrative contracts to SAIC/DS&S for KI's simulation technology, by then renamed SimPort, adaptable to each entity's specifications. This special demonstration version of KI's

481464.3                              13

other objections, Plaintiff states that the legal proceedings were authorized by an order of Acad. N.N. Ponomarev-Stepnoi, RRC/KI Vice President, who has authority to make such orders. Acad. N.N. Ponomarev-Stepnoi instructed Mr. Igor Rakitin and Prof. Semen Malkin to manage the day-to-day activities regarding the litigation and to inform him of the progress.

Interrogatory No. 13:    Identify any and all equipment, including computers, provided to KI or its employees by WSC, Utmel, SAIC or DS&S, and identify the current location of each piece of equipment.

Answer No. 13: KI objects to this interrogatory to the extent it seeks information that is not relevant to the litigation now before this court and that is not likely to lead to discoverable information. Notwithstanding and without waiving these objectsion, KI states as follows. WSC provided monies to purchase two computers. The exact date of such purchase is not now known, but is estimated to have been provided in 1998 or 1999. Both computers, now obsolete, are currently at the KI DCMM/InterDCM site.

Interrogatory No. 14:    Identify all KI employees who worked on the development and/or implementation of AIS-95, SimPort, SimPort 1997 or SimPort 2000 including:

a. The specific technolog[ies] that each employee worked on;
b. The time period that each employee worked on the technology;
c. The country in which each employee was located when working on the technology and, if more than one country, the time periods that were spent in each country;
d. The nature of the employee's contribution to the development and/or implementation of the technology; and

e. The employee's supervisor(s).

Answer No. 14:   The Plaintiff objects to this interrogatory on the grounds that it contains multiple questions, to the extent that it seeks information that is not relevant to the subject matter of this lawsuit, is not reasonably calculated to lead to the discovery of admissible evidence, and on the additional grounds that it is overly broad and unduly burdensome.   Without waiving these objections, KI states that the following persons are responsive to this Interrogatory:

(a)   Semen Malkin – Administrator and Director of KI DCMM, Scientific Leader and Supervisor of the Modeling technology AIS/SimPort and Simulator projects development – from 1990 until the present.

(b)   Igor Rakitin – Deputy Director of KI DCMM, Deputy Supervisor of the Modeling technology AIS/SimPort and Simulator projects development – from 1990 until the present.

(c)   Vadim Shalya – Head of KI DCMM Laboratory on Technology of Simulation, Project Manager on AIS/SimPort development from 1990 until April 1999. In 1997-98 – Responsible Representative of KI at SAIC/WSC. Participated in Sherco project.

(d)   Konstantin Terletskiy – KI employee – AIS/SimPort System administrator – from 1994 until June 1999. From March 1997 mostly worked at SAIC/WSC sites in US. Participated in Sherco, Armstrong projects.

(e)   Sergey Zhigunov: KI employee – AIS/SimPort developer-programmer from 1993 until March, 1999. Developed Object builder, Shared data-base and Real Time executive control

481464.3                          23

I SOLEMNLY SWEAR OR AFFIRM under the penalties of perjury that the matters set forth in these Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

Date May 21. 03

Chief of Department, Prof.

S. Malkin

As to objections only:

_____
John M. G. Murphy
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202
(410) 685-1120 (tele.)
(410) 547-0699 (fax)

Attorneys for the Plaintiff

481464.3

33