**OBER|KALER**
A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

Jesse B. Hammock
jbhammock@ober.com
410-347-7664

**Offices in**
Maryland
Washington, D.C.
Virginia

June 13, 2003

**VIA FACSIMILE (202-434-5029) AND FIRST CLASS MAIL**
Margaret A. Keeley, Esquire
Williams & Connolly
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901

Re: *Kurchatov v. Western Services Corporation, et al.*
In the United States District Court for the District of Maryland
Case No. AMD 02 CV3878

Dear Meg:

I write to address to a number of outstanding discovery issues, including those discussed in our June 6 telephone conversation and your letter of June 9, 2003, which requested clarification as to Kurchatov's objections to WSC's document requests.

As you may recall, Kurchatov objected to requests 1-6, 9, 11-13 and 15 on various grounds, including, among other things, that the requests were overly broad and unduly burdensome. As to Document Requests 1, 2, 4-9 and 11, Kurchatov will produce *all* responsive non-privileged documents in its custody and control, reserving the right to supplement. As to Document Request No. 13, Kurchatov will produce *all* responsive non-privileged documents within its custody and control, but please be aware that due to storage capacity of website-related information, some "website iterations" were deleted in the late '90s; all other non-privileged documents responsive to Request No. 3 will be produced. As to Document Request No. 12, KI denies that any payments were made by WSC or SAIC to KI directly. While some *per diem* payments were made to KI engineers, those payments were made to the engineers directly, and copies of these documents were not given to KI. KI, therefore, does not have any of these documents in its custody or control. Nonetheless, KI has requested that engineers who were paid directly by WSC or SAIC review their personal files for responsive documents. If and when any such documents are found by KI employees, they will be produced. Notwithstanding this, KI maintains that since the documents are not in its custody or control, KI has no legal obligation to produce them.



1903
OBER|KALER
2003
Forward thinking.
For the century ahead.

487008.2

Margaret A. Keeley, Esquire
June 13, 2003
Page 2

Concerning Document Request No. 13 in which you ask for documents evidencing the legal relationship between KI and InterDCM and InterDUM, we maintain that this request is irrelevant, overly broad and unduly burdensome. If you wish to narrow the request so as to specify the documents you are seeking, we would gladly entertain producing responsive relevant documents. Until such time, however, KI maintains its objections.

Finally, as to Request No. 15, KI has acknowledged, through its Interrogatories, possibly receiving three computers from WSC and/or SAIC, but is not aware of any documents addressing the transfer of these computers. To the extent that any contracts between WSC and/or SAIC and KI address these computers, all responsive non-privileged documents will be produced.

I also write to confirm several points addressed and/or resolved in our conversation of June 6, 2003, in which we discussed the versions and format of software that will be produced by both sides, as well as issues pertaining to the depositions of Messrs. Rakitin and Malkin. I have confirmed that Messrs. Rakitin and Malkin will be unavailable for deposition in July. On Thursday, June 12, I telephoned and informed you (by voice mail) of their availability in August, and gave you alternative dates. Please note that the only dates in August that are "non-negotiable" are August 20 through 24 because both will be traveling on business. Please confirm your preferred dates in August and that your client will be covering the cost of airfare for Messrs. Rakitin and Malkin in advance to attend the depositions.

As to the versions and format of SimPort that each party will produce, I write to confirm that we agreed in our telephone conversation of June 6, 2003 that WSC will produce the first and last versions of SimPort 2000, as well as all versions of SimPort '97. Also, we have conferred with our expert, and request that you also produce SimPort in the following format: a snapshot of the code tree which contains the source code in the structure that the development company uses to do their builds; all available documentation of the code; and, a definition and diagram of the product (software) architecture. While this terminology means nothing to me, our expert assures me that computer software developers will know what he means. If your software people have any questions, please do not hesitate to relay them to me, and I will relay them to our expert.

In response to your e-mail today regarding KI's document production, I have been in contact with the copy company, and they assure me that the documents will be copied and in our office by Monday, June 16; I will send them out the same day. If there are any further delays, I will let you know as soon as possible.

486150.2

Margaret A. Keeley, Esquire
June 13, 2003
Page 3

Finally, on June 6 we also discussed WSC's objection to KI's Request for Production No. 29; WSC objected to the request as overly broad. After reviewing the request, the response, and conferring, it is our position that Request No. 29 is not overly broad. As you will recall, Request No. 29 states as follows:

> "All correspondence and communications between [WSC] and SAIC and/or DS&S with respect to any simulation software and/or related technology."

Initially, obviously, any communication regarding AIS-95 and SimPort is relevant, necessary, and responsive. Moreover, the scope of the interrogatory, in that it requests all communications for any simulation software, seeks also to determine any communication regarding software initially bearing the AIS-95 or SimPort mark that may have been marketed under another name. In a recent discussion regarding other discovery matters, however, you indicated that it is your belief that WSC has not developed or marketed any other software other than under the marks AIS-95 or SimPort. Accordingly, you are free to produce only the AIS-95 and SimPort communications, but we need written confirmation that there is no other simulation software that has been the subject of WSC/SAIC/DS&S communications. In short, we do not believe it is necessary to narrow the scope of Request No. 29, and we request that WSC respond accordingly.

On a related note, your June 9 letter indicates that WSC will be launching "a new program which will incorporate the SimPort 2000 source code." It is our position that such software is derived from SimPort, in whole or part, and is therefore responsive to numerous requests for production. As such, we require that the source code, communications, licenses, payments, *etc.*, regarding this software also be produced. Please inform me at your earliest convenience if WSC will comply with this request.

I believe this takes care of all outstanding discovery issues between the parties. If I have missed anything, please do not hesitate to give me a call so that we can clarify. I look forward to speaking to you soon.

Very truly yours,

Jesse B. Hammock

JBH:cld
cc: John M. G. Murphy, Esquire