# OBER|KALER
A Professional Corporation

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com


**EXHIBIT**
7

Jesse B. Hammock
jbhammock@ober.com
410-347-7664

**Offices In**
Maryland
Washington, D.C.
Virginia

June 20, 2003

<u>**VIA FACSIMILE (202-434-5029) AND FIRST CLASS MAIL**</u>

Margaret A. Keeley, Esquire
Williams & Connolly
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901

      Re:   *Kurchatov v. Western Services Corporation, et al.*
             In the United States District Court for the District of Maryland
             Case No. AMD 02 CV3878

Dear Meg:

      I write in response to your letter received Tuesday, June 17, 2003, concerning outstanding discovery issues between the parties and to address the sufficiency of WSC's recent document production. To briefly address your issues regarding KI's document production, in response to Document Request No. 10, 14, 16 and 19, KI will produce all non-privileged and responsive documents in its custody or control, reserving its right to supplement pursuant to the Federal Rules. As to your Document Request No. 13, requesting documents identifying the legal relationship between KI and InterDCM or InterDUM, initially I would like to clarify one issue; InterDCM and InterDUM are the same company. Apparently, InterDCM is the English translation for the Russian InterDUM (or vice versa). As to the documentation you request, I'll address that below.

      Next I would like to address several issues with regard to WSC's recent production. Your June 17 letter indicates that you maintain your objection to Request No. 29. You state, for example that "the majority of communications [implicated by Request No. 29] are of a technical nature that have no bearing on this law suit." It is our position that "technical" issues are at the heart of the dispute between the parties and are unquestionably relevant. In the context of a copyright claim regarding computer software, "technical communications" may prove (or disprove) or support that KI's copyrighted software was improperly utilized. While we appreciate that you have produced documents relating to contracts for each of the 20 projects involving SimPort, it is still necessary that we receive all communications between WSC and SAIC/DS&S concerning all simulation technology. Although you recently communicated to me

480428.1

Margaret A. Keeley, Esquire
June 20, 2003
Page 2

that no software derived from SimPort is marketed under another name, to protect the interests of our client it is necessary that we evaluate all communications, contracts and copies of simulation software marketed under marks other than AIS-95/97 or SimPort, so as to make this determination for ourselves. With regard to the upcoming "new product" which contains portions of SimPort 2000, it is necessary for us to make an independent evaluation whether or not any of the software other than the portion that you admit is derived from SimPort, is derived from Kurchatov technology. As such, we maintain that the response to Request No. 29 is appropriate and necessary. Please advise at your earliest convenience whether you will produce these documents and copies of software, so we may properly determine the need for judicial relief.

As to other deficiencies in WSC's response to KI's request for production, we would like clarification as to the following:

Request No. 1: WSC responded that it will *only* produce the first and last version of SimPort 2000. After consulting with our computer expert, it is our position that all versions of all software, including SimPort 1997, SimPort 2000, the "new product" you mentioned in your recent letter, and all other simulation technology, are necessary for a proper evaluation of the source of code for each. As such, WSC's response that it will only produce the first and last versions of SimPort 2000 is insufficient. WSC's refusal to produce any other software is wholly inadequate.

Request No. 2: Again, WSC responded that it will produce no simulation software other than SimPort. In fact, WSC responded that it will not even produce all of the versions of SimPort requested. This response is wholly inadequate, especially in light of our recent conversation that WSC does indeed market other simulation software, that you allege was not derived from KI technology. As you are well aware, we allege that WSC improperly used or "copied" our software. In order to determine the extent of this improper use of our software by Mr. Utmel and WSC, it is necessary to have experts analyze and compare our software and WSC's. I appreciate your comment that the "other" software was not derived from or based on SimPort, but, to be frank, that is a determination for an independent expert to make, not a defendant in litigation, or its attorney. Based on this, WSC's response to Request No. 2 is insufficient.

Request No. 3 and 4: WSC again responded that the only software it will produce is pre-2000 versions and the first and last version of SimPort 2000. This response ignores the requests, and agrees to produce no more than the inadequate responses to Requests 1 and 2. In order to properly determine whether SimPort 2000 was derived from KI's technology, it is

Margaret A. Keeley, Esquire
June 20, 2003
Page 3

necessary to track the progress of the software (component by component) through its development, by viewing each version in comparison to KI's technology. To do this, KI's experts need "every prior version of software" on which any program "marketed, licensed or sold" was based. As such, the response to Requests No. 3 and 4 are inadequate.

Request No. 5, 6 and 7:    WSC's response improperly narrows the request by agreeing to produce only the email, memos, notes, flow charts, and "information received", etc. that deal directly with SimPort, and not any that deal with other software. Again, while we appreciate your client's assurances that no other software he markets is derived in any way from SimPort, I am sure you can appreciate that we cannot just take his word for it. In order to ensure the full protection of KI's rights in its intellectual property, all of the requested information must be produced for all simulation software marketed, sold, licensed, etc., by WSC, not just that which WSC calls SimPort. Any production short of this is wholly inadequate.

Request No. 8:    In its response, WSC states that it will produce only contracts, agreements, purchase orders and statements of work or understandings, but omits whether it will produce all documents generated, received, etc., during the performance (or planning) of the contracts. Please indicate whether WSC will *all* produce such relevant and necessary documents.

Request No. 9, 12-15, 17, 20-28, 30: WSC responds that, notwithstanding its objections, it will produce responsive documents relating to simulation technology, but fails to state that WSC will produce *all* responsive documents. Please indicate whether WSC will produce *all* such responsive documents.

Request No. 10, 11, 18, 19:    To these document requests, WSC responds that it will produce responsive documents "sufficient to establish" what WSC believes is the motivation for seeking these documents. Such a response is wholly inadequate. As you know, so long as the documents requested are likely to lead to the discovery of admissible evidence they are discoverable and must be produced, absent some privilege (which has not been claimed). It is clearly improper to pick and choose only those documents that WSC believes are "sufficient" to answer what WSC believes is the point of KI's request, especially when *all* responsive documents are requested. Please advise us as soon as possible whether WSC will withhold or produce *all* of these responsive documents.

As to the depositions of Messrs. Malkin and Rakitin, noted for two days each in July, as I am sure you are aware, the Federal Rules limit depositions to one day of 7 hours. After recent consultation with Messrs. Malkin and Rakitin, both are available any day in August aside from

OBER|KALER
A Professional Corporation

Margaret A. Keeley, Esquire
June 20, 2003
Page 4

the 11th through 14th and the 20th through the 24th. Please indicate specific single days in August when you would like to depose both, taking into account the unavailable dates.

As you can tell, there are many issues with the sufficiency of WSC's document production. As far as I am aware, currently the only unresolved issue regarding KI's document production is documents evidencing KI's "permission" to file suit and those evidencing the legal relationship between KI and InterDUM/DCM. While we still maintain that such documents are irrelevant, in the spirit of cooperation and to resolve the discovery dispute, we will produce these documents if WSC produces the documents responsive to KI's numerous outstanding requests, detailed above.

Please respond at your earliest convenience so that we can resolve this discovery dispute and arrange the deposition dates.

Very truly yours,

Jesse B. Hammock

JBH:cld

cc: John M. G. Murphy, Esquire

486428.1

TOTAL P.05