OBER|KALER
A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

Jesse B. Hammock
jbhammock@ober.com
410-347-7664

**Offices In**
Maryland
Washington, D.C.
Virginia

July 18, 2003

## VIA FACSIMILE (202-434-5029) AND FIRST CLASS MAIL

Margaret A. Keeley, Esquire
Williams & Connolly
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901

> Re:  *Kurchatov v. Western Services Corporation, et al.*
> In the United States District Court for the District of Maryland
> Case No. AMD 02 CV3878

Dear Meg:

We write in response to your letter received at 4:02 p.m. July 18, 2003, regarding the depositions of Professor Malkin and Dr. Rakitin. Because of the schedule for air travel from Russia to Maryland during the weekend of the 13th and 14th of September, Dr. Rakitin and Professor Malkin will not arrive until the evening of September 14. Therefore, since we require one day for preparation (the 15th), we request that the five days extend from September 16 through September 20. Please respond if this is acceptable.

We also write in response to your letter dated July 14, 2003, regarding the deposition of Mr. Zhigunov. We propose that Friday, August 22, 2003 be set aside for his rescheduled deposition. Please confirm whether you believe this to be an acceptable date. By e-mail and Federal Express sent today, I informed Mr. Zhigunov that his deposition scheduled for July 22 will be rescheduled, suggesting the August 22nd date. He has confirmed his availability for this day. Under separate cover, I will be sending similar notices to the unrepresented deponents and to the appropriate attorneys for those presumably represented by counsel.

I also write to respond to your letter dated July 17, 2003. We confirm that it is our position that any party needing an interpreter for a deposition is responsible for payment. As to WSC's production of SimPort code, we discussed in our June 9, 2003 teleconference, and you confirmed in your July 10, 2003 letter, that your "primary programmer of SimPort" is currently



491255.1

OBER|KALER
A Professional Corporation

Margaret A. Keeley, Esquire
July 18, 2003
Page 2

traveling outside the country, but when he or she returns, you will inquire as to "any earlier iterations or portions of the software." After speaking to the programmer, please write to confirm whether any earlier iterations or portions of the software exist, and if so, when KI can expect production.

As to Document Request Nos. 5, 6 and 7, since you have agreed to produce the documents, which you say consist of over 100 boxes, we feel it will be most cost effective to come to the documents and review them. Please advise us as to your and your client's availability in the next two weeks for such a review. As to production of the e-mails, as you will recall, Request No. 5 sought all "memos, e-mail, correspondence, notes, reports and other such documents generated or transmitted in the course of developing, creating or executing any computer software program marketed, licensed or sold in whole or in part under the mark SimPort." We trust that any mechanism you design to search the e-mails will produce all responsive documents consistent with our obligations under the federal rules.

Request Nos. 10, 11, 18 and 19 – Thank you for confirming that you have produced all responsive profit and loss statements in existence. Your July 17 letter goes on to state, however, that WSC has "also produced documents relating to the approximate $1,000,000 time and material fee *paid to KI.*" After reviewing the profit and loss statements provided, we note that there are no indications of payments directly to KI. It is unclear whether the documents you are referring to that evidence the $1,000,000 payment are the profit and loss statements showing the *per diem* payments to KI's employees for travel, lodging and food, or if you refer to some other document. Please confirm if it is your position that the $1,000,000 time and materials fee is evidenced by the *per diem* payments to KI's employees.

As to your requested response to your June 30, 2003 letter regarding KI's production of documents, I refer you to my July 15, 2003 letter with attached documents containing, among other things, the employment records sought, the existing internal communications within KI concerning SimPort, documents related to the legal relationship between KI and InterDCM/InterDUM, documents evidencing the grant of authority to institute legal proceedings, and other documents responsive to WSC's requests. We have requested that KI review its records to determine if any other responsive documents noted in your June 30 letter exist, including other versions of KI's SimPort. It is our understanding that KI employees will be traveling to the United States in the end of July, and will bring with them other versions of KI's SimPort, documents related to the current project at the Leningrad Nuclear Power Plant, and other documents responsive to your June 30, 2003 letter. As soon as we receive those documents from our client, review them and have them Bates stamped and copied, we will produce them. We will contact you as soon as we receive these documents. Note that I have enclosed with this

491255.1

OBER | KALER
A Professional Corporation

Margaret A. Keeley, Esquire
July 18, 2003
Page 3

letter, Document Nos. KI010387 through KI010389, which represent the marketing materials retained by KI for SimPort. While KI did affix the SimPort mark to promotional materials during its relationship with WSC and SAIC in the mid 90's, it apparently did not retain copies of these documents.

　　　　If you have any questions, please do not hesitate to contact me, and I hope you enjoy your vacation.

　　　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　　　Jesse B. Hammock

JBH:cld
Enclosures
cc:　　Charles L. Simmons, Esquire (w/enclosures -- via first class mail)
　　　　John M. G. Murphy, Esquire (w/o enclosures)

491255.1