| | | | | |
|---|---|---|---|---|
| DAVID POVICH | PHILIP J. WARD | LAW OFFICES | DAVID C. KIERNAN | THOMAS G. HENTOFF |
| STEVEN M. UMIN | F. WHITTEN PETERS | | LON E. MUSSLEWHITE | KUMIKI GIBSON |
| JOHN W. VARDAMAN | JAMES A. BRUTON, III | **WILLIAMS & CONNOLLY LLP** | ROBIN E. JACOBSOHN | PAUL B. GAFFNEY |
| PAUL MARTIN WOLFF | PETER J. KAHN | | HEIDI K. HUBBARD | EMMET T. FLOOD |
| J. ALAN GALBRAITH | JUDITH A. MILLER | 725 TWELFTH STREET, N.W. | GLENN J. PFADENHAUER | ROBERT A. VAN KIRK |
| JOHN G. KESTER | LON S. BABBY | | GEORGE A. BORDEN | MARCIE R. ZIEGLER |
| WILLIAM E. McDANIELS | MICHAEL S. SUNDERMEYER | WASHINGTON, D. C. 20005-5901 | ROBERT J. SHAUGHNESSY | KENNETH C. SMURZYNSKI |
| BRENDAN V. SULLIVAN, JR. | JAMES T. FULLER, III | | JONATHAN P. GRAHAM | JOHN E. SCHMIDTLEIN |
| RICHARD M. COOPER | BRUCE R. GENDERSON | | DAVID S. BLATT | SUZANNE H. WOODS |
| GERALD A. FEFFER | CAROLYN H. WILLIAMS | (202) 434-5000 | ARI S. ZYMELMAN | CRAIG D. SINGER |
| ROBERT P. WATKINS | F. LANE HEARD III | | DANE H. BUTSWINKAS | JAMES L. TANNER, JR |
| JERRY L. SHULMAN | STEVEN R. KUNEY | | LAURIE S. FULTON | J. ANDREW KEYES |
| LEWIS H. FERGUSON, III | GERSON A. ZWEIFACH | FAX (202) 434-5029 | DENNIS M. BLACK | GILBERT O. GREENMAN |
| ROBERT B. BARNETT | PAUL MOGIN | | PHILIP A. SECHLER | M. ELAINE HORN |
| DAVID E. KENDALL | HOWARD W. GUTMAN | | LYNDA SCHULER | ENU MAINIGI |
| GREGORY B. CRAIG | STEVEN A. STEINBACH | www.wc.com | PAUL K. DUEFFERT | MICHAEL F. O'CONNOR |
| JOHN J. BUCKLEY, JR. | MARK S. LEVINSTEIN | | R HACKNEY WIEGMANN | |
| TERRENCE O'DONNELL | MARY G. CLARK | EDWARD BENNETT WILLIAMS (1920-1988) | ROBERT M. CARY | OF COUNSEL |
| DOUGLAS R. MARVIN | VICTORIA RADD ROLLINS | PAUL R. CONNOLLY (1922-1978) | KEVIN M. HODGES | VINCENT J. FULLER |
| JOHN K. VILLA | DANIEL F. KATZ | | DAVID M. ZINN | RAYMOND W. BERGAN |
| BARRY S. SIMON | WILLIAM R. MURRAY, JR. | | JOSEPH G. PETROSINELLI | JEREMIAH C. COLLINS |
| KEVIN T. BAINE | EVA PETKO ESBER | | STEVEN M. FARINA | AUBREY M. DANIEL, III |
| STEPHEN L. URBANCZYK | STEPHEN D. RABER | | KEVIN M. DOWNEY | ROBERT M. KRASNE |

July 3, 2003

*Via Facsimile & First Class Mail*

Jesse B. Hammock, Esq.
Ober, Kaler, Grimes & Shriver
120 East Baltimore St.
Baltimore, MD 21202
Facsimile: (410) 547-0699

### *Re: KI v. WSC v. GSE*

Dear Jesse:

  We write in response to your letter of June 20, 2003 to address those discovery issues left unaddressed in our letter of June 26, 2003. First, thank you for confirming that KI will produce all non-privileged, responsive documents for Requests No. 10, 14, 16 and 19.

  With regard to the remaining discovery issues, we will address those issues in the order in which they were addressed in your letter, although we have combined our responses for requests involving common issues.

Jesse B. Hammock, Esq.
July 3, 2003
Page 2

Request No. 29

    WSC's relationship with SAIC/DS&S spans almost seven years. As we stated in our letter of June 9, 2003, the communications that have occurred during these years is voluminous, and many do not relate in any way to simulation technology. Despite this breadth, WSC will produce all responsive documents other than e-mail.

    With regard to e-mail, WSC would literally have to retrieve and review over eight thousand e-mails for responsiveness, most of which would either be wholly unrelated to this request or only tangentially related. As we have stated before, we will consider a more narrowed request, such as one that provides targeted key words (and/or key dates) to search for within this vast universe of communications between WSC and SAIC/DS&S.

Requests No. 1, 2, 3 & 4:

    There are two outstanding issues relevant to these requests. First, as you know, WSC has objected to producing what are substantially duplicate versions of SimPort 2000. We stand ready to exchange with you, as previously agreed, the first and last versions of SimPort 2000 and all versions of SimPort 1997. We will also consider producing the large number of interim versions – which are substantially similar to the versions being produced – if your expert provides a reasonable basis for needing those interim, duplicate versions after reviewing the versions we have already agreed to produce.

    Second, WSC has objected to producing information in the aforementioned requests that relate to non-SimPort simulation technology. As an initial matter, Requests No. 1, 3 & 4 do not call for simulation software marketed under a mark other than SimPort. With respect to Request No. 2, although WSC believes that the non-SimPort source code it possesses is wholly irrelevant to this litigation, in the interests of cooperation and to avoid further discovery disputes, it will produce all source code in its possession that is responsive to Request No. 2.

Requests No. 5, 6 and 7:

    Contrary to the assertion in your letter of June 20, 2003, WSC has not "improperly narrow[ed]" Requests No. 5, 6 & 7 to information dealing only with SimPort and "not ...with other software." Your requests do not call for information related to other simulation software technology. In each of the aforementioned

Jesse B. Hammock, Esq.
July 3, 2003
Page 3

requests, you have specifically and exclusively requested information related to "any computer software program *marketed, license or sold in whole or in part under the mark SimPort*." SimPort is the only software that meets that description.

Nonetheless, as discussed above, WSC will produce the source code for all non-SimPort simulation software technology.

Request No. 8

WSC continues to believe that this request is overbroad to the extent that it seeks *all* documents concerning any particular nuclear or fossil fuel power facility generated or received by WSC in connection with the development, creation and/or execution of SimPort. However, with the exception of the e-mail communications with DS&S/SAIC discussed above (in response to Request No. 29), WSC will produce all responsive, non-privileged documents. Because of the volume of this material, we ask that you provide us with the name of a copy service, so that we can have the documents copied and billed directly to you.

Again, with regard to e-mail communications, WSC will, of course, consider a revised request (including specific search terms), tailored more narrowly to seek the documents that are pertinent to this case.

Requests 9, 12-15, 17, 20-28, 30:

WSC clarifies that where it states that it will produce responsive documents, it means that it will produce *all* responsive documents, subject to the specific limitations identified in the response and the general objections.

Requests No. 10, 11, 18, 19:

With regard to Request No. 10, WSC objects to this request to the extent that it seeks all *work product* related to *any computer software*. KI's request would require WSC to produce proprietary documents wholly unrelated to SimPort and the issues raised in this litigation. Moreover, you will already possess source code for SimPort 1997, SimPort 2000 and all other simulation related technology by virtue of WSC's responses to Requests No. 1 through 4.

With regard to documents evidencing the time spent by and remuneration paid to KI scientists, WSC objects to this request to the extent that it seeks *all* documents evidencing time and remuneration. Because WSC paid for the

Jesse B. Hammock, Esq.
July 3, 2003
Page 4

scientists living expenses, etc. when they first came to the United States, *all* documents evidencing remuneration paid to said scientists would encompass housing payments, phone and electric bills, travel expense receipts, cancelled checks, etc. Moreover, time records would also be voluminous, and would simply duplicate the information already available through the financial records. It would be an immense burden for WSC to find, review and produce all of that documentation, and it is wholly unnecessary because that information can be established through the financial records which WSC has already produced. If KI wishes to inquire about any particular expense or time item, WSC will consider requests for further documentation as to such specifically identified items.

With regard to Request No. 11, WSC has produced all non-privileged, responsive documents.

With regard to Requests No. 18 & 19, WSC has produced financial information (e.g., WSC's bookkeeping records, financial spreadsheets, subcontracts, etc.) sufficient to show all monies exchanged pursuant to Request No. 18 and any sums received by WSC pursuant to Request No. 19. Producing *all* documents that "evidence, refer to, relate to, reflect or embody" the requested information would necessitate producing *inter alia* all bank statements, cancelled checks, phone bills received and paid, travel expenses for engineers, receipts, etc. That information is reflected in the documents already produced. Again, if KI is interested in finding specific information about a particular exchange of money and/or sum received, we will consider a more specific request.

We believe this should address the outstanding issues you have raised with WSC's responses to KI's document requests. If you have any questions or need clarification, please do not hesitate to call me.

Sincerely,

Ann N. Sagerson

cc:    Charles L. Simmons, Jr. Esq.