## Certification of Good Faith

1. I, Jesse B. Hammock, an attorney for Russian Research Center, The Kurchatov Institute ("KI"), submit the following declaration based upon personal knowledge.

2. When KI propounded its Requests for Production of Documents, it requested all versions, iterations and components of all simulation software, including software bearing the mark SIMPORT.

3. KI also requested all communications related to SIMPORT, including communications between WSC and SAIC/DS&S and between these entities and any third-party. KI requested all documents that evidence work done by scientists formerly associated with KI that currently work for WSC, all documents evidence any information received from KI through the course of developing, creating or executing computer software, and other such communications and documents related to the creation, marketing or licensing of simulation software.

4. WSC responded that it would not produce all versions of SIMPORT, but would only produce the first and last versions of SIMPORT 2000 and the only version it claims to retain of SIMPORT 1997.

5. Thereafter, on or about May 27, 2003, counsel for KI wrote to counsel for WSC expressing the necessity of receiving every version of WSC's SIMPORT.

6. Thereafter or on about June 9, 2003, Ms. Keeley responded to KI's May 27th letter stating that it would limit its production to the first and last version of SIMPORT 2000 and the only claimed existing version of SIMPORT 1997.

7. Previously on or about June 7, 2003, Ms. Keeley and counsel for KI spoke regarding production of software and Ms. Keeley stated that it was her opinion that the only software that needed to be analyzed was that which WSC had offered to produce. Counsel for KI informed Ms. Keeley that he had to confer with KI's computer expert regarding the necessity of further production.

8. Thereafter on or about June 20, 2003, counsel for KI again wrote Ms. Keeley and informed her that KI must have every version (as well as all prior iterations) of WSC's SIMPORT for

725991

an appropriate analysis, pursuant to instruction of KI's computer expert.

9. Thereafter, WSC produced the first "data load" and last "data load" of SIMPORT 2000 software as well as what it claims as the only existing version of SIMPORT 1997. The data loads are not the first and last versions of SIMPORT 2000, instead they are the versions of SIMPORT 2000 as they existed immediately prior to use at two power plants. To date, WSC has produced no other software, despite agreeing to produce copies of all software other than SIMPORT, which is in its custody and control.

10. In its request for production of documents, KI also requested all communications related to simulation software between KI, WSC, DS&S, SAIC and any third parties. To date, despite their promises to the contrary, WSC has produced no communications. WSC has withheld all emails claiming they are too voluminous to produce. WSC has not stated a reason for maintaining the remainder of the communications.

11. As to the remaining documents requested, WSC has stated that they consist of over one hundred boxes of documents and would only produce them at the expense of KI. Counsel for KI contacted counsel for WSC and offered to travel to and review the documents as they exist in normal course of business but has not received a reply to this offer. Now, in a telephone call of July 31, 2000, Ms. Keeley states that the alleged 100 boxes of documents are not in WSC's custody and control and may not be produced.

12. On July 30, 2003 I sent a letter by fax and first class mail to Ms. Keeley regarding the outstanding discovery raised in this motion.

13. On July 31, Ms. Keeley and I spoke regarding the outstanding discovery and she stated:

    (a) WSC is "burning" compact disks with the computer code other than SIMPORT on it, but does not know when it will be produced;

    (b) WSC is attempting to review the email but is not sure when it can be produced because he is a "one man shop";

725991

    (c)    The "100 boxes" of documents may not be produced by WSC because they may be owned by SAIC/DS&S and, therefore not in WSC's "custody and control"; and

    (d)    All other communications have been produced;

    (e)    All documents evidencing the first use in commerce of the SIMPORT work had been produced.

14. Ms. Keeley's promise to produce these documents accounts for less than all that has been requested from WSC.

15. On Monday, August 4, 2003, Ms. Keeley, by letter, stated that the most of the "100 boxes" of documents are actually in the custody and control of DS&S (and WSC will, therefore only produce "all copies that remain in its possession"), and that WSC will search for and produce all requested emails and produce copies of source code other than SIMPORT by Friday, August 8, 2003. Ms. Keeley's letter makes no mention of the other communications requested by KI or the early iterations or versions of its alleged independent versions of SIMPORT software, among other things.

I declare under penalty of jury that the foregoing is true and correct.

Executed on August 4, 2003.

                                              /s/
                                   Jesse B. Hammock
                                   Ober, Kaler, Grimes & Shriver
                                   A Professional Corporation
                                   120 East Baltimore Street
                                   Baltimore, Maryland 21202-1643
                                   410-685-1120
                                   410-547-0699 (fax)

725991