IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| RUSSIAN RESEARCH CENTER ) <br> THE KURCHATOV INSTITUTE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WESTERN SERVICES CORP., et al., ) <br> ) <br> Defendants and ) <br> Third-Party Plaintiff, ) <br> v. ) <br> ) <br> GSE SYSTEMS, INC. ) <br> ) <br> Third-Party ) <br> Defendants. ) | Case No.: AMD 02-3878 |

MEMORANDUM IN OPPOSITION TO
THE PLAINTIFF'S MOTION TO COMPEL

The fundamental problem with Plaintiff Russian Research Center, The Kurchatov Institute's ("Kurchatov") Motion to Compel ("Motion") is that the vast majority of what it seeks to compel -- to the extent it can be deciphered -- does not exist or has already been produced. The software and documents that do exist (and have not already been produced) are duplicative, irrelevant, and unnecessary. Moreover, Kurchatov's

motion is riddled with misrepresentations of the issues in dispute,[1] and the parties' attempt to resolve those issues. Indeed, Kurchatov has repeatedly manufactured disputes where none exist, in an apparent effort to portray Western in a negative light. Furthermore, Kurchatov's Motion has utterly failed to meet both the timing and specificity requirements of the United States District Court for the District of Maryland Local Rule 104.8(a) (hereinafter "Local Rule"). For these reasons, Kurchatov's motion should be summarily denied.

   First, with regard to the production of source code, Kurchatov misrepresents its needs for obtaining all "versions" of the SimPort software, misrepresents Western's previous offers to produce software, and misrepresents what Western has already produced. Despite Kurchatov's attempt to suggest otherwise, the only issue in dispute is whether Western must produce interim "versions" of its SimPort 2000 source code – versions which are essentially duplicative copies. Kurchatov's own reasoning in its Motion belies its contention that the interim versions are necessary to prove infringement. Western has already produced the first and last versions of SimPort 2000, and has repeatedly maintained that if Kurchatov's expert, after reviewing what Western has already produced, articulates a reasonable basis for the interim versions, Western would

---

[1] For example, Kurchatov has cited several document requests, implying they are at issue, to which Western's response has always been that it would produce responsive documents. In many other instances, where there were initially disagreements regarding the scope of a particular request, written and oral representations made by Kurchatov's counsel led Western's counsel to believe that the dispute had been resolved to the satisfaction of Kurchatov. See, e.g., Kurchatov's Ex. C (Letter from Jesse B. Hammock on July 18, 2003).

produce the source code. In addition, Western has produced its only version of SimPort 1997, and indeed, *in an effort to avoid discovery disputes*, has produced *non-SimPort* related source code as well.[2]

     Second, Kurchatov's Motion, in addition to being untimely, fails to identify with any specificity what it seeks, or the reason it believes Western's response to date has been inadequate. Rather, Kurchatov attempts to bolster its Motion by manufacturing discovery disputes concerning documents where none exist, even going so far as to identify document requests in its Motion to Compel to which Western has never objected. Kurchatov's Motion should be summarily denied.

**ARGUMENT**

I. **KURCHATOV HAS FAILED TO DEMONSTRATE ITS NEED FOR INTERIM VERSIONS OF THE SIMPORT SOFTWARE.**

     All parties agree that the dispute between Kurchatov and Western is over the SimPort software, as it existed in 1997 and as it exists today. SimPort is software that is used to build power plant simulators. Western originally developed the software in 1997 – after Kurchatov breached its agreement to provide software that was capable of building customized simulators – and then fundamentally redesigned the software in 1999. For purposes of this litigation, Western has referred to the earlier version of SimPort as "SimPort 1997" and the later version as "SimPort 2000."

---

[2] Western recently discovered a zip drive containing object code which it believes to be related to the AIS-95 technology. Western has produced this code as well.

3

Kurchatov argues that the fact finder needs to examine all versions of Western's SimPort software because "[t]ypically, *later versions build on the first*, with some components of the software being updated, while others remain the same."  See Motion at 3 (emphasis added).  But it is precisely because "later versions [typically] build [upon] the first," that the production of <u>all</u> versions of Western's SimPort is duplicative, unnecessary, and irrelevant.  Id.

Moreover, each version would have to be produced on a separate compact disc ("CD"), and each CD would contain Western's highly proprietary source code.  Western is justifiably concerned about the security of its source code if the parties each have dozens of copies of its highly proprietary software.

### A.  Western has Produced the Only Version of Simport 1997 in its Possession.

To the extent that Kurchatov's motion seeks to compel SimPort 1997, it is chasing ghosts.  Contrary to Kurchatov's insinuations, <u>see</u> Motion at 6, Western has produced its one and only copy of SimPort 1997.[3]  Thus the only issue in dispute here is whether Western must produce all versions, which are essentially duplicative, of its SimPort 2000 software (hereinafter referred to as "SimPort" or "SimPort 2000").

---

[3] Western's counsel has informed Kurchatov on numerous occasions, both orally and in written documentation that the SimPort 1997 source code that Western has produced is the only version that Western possesses.  <u>See</u> Kurchatov's Ex. E (Letter from Ann N. Sagerson on July 3, 2003).

B.     **The Interim "Versions" of Simport 2000 are Substantially the Same.**

Western has used SimPort 2000 to build or upgrade simulators for dozens of power plants. For each new simulator or upgrade, Western "freezes" the SimPort source code in order to maintain a copy for warranty work and other business related reasons. Thus, Western has a copy of the source code from almost every project that it has completed.

The source code for SimPort changes very little from project to project. Indeed, the only difference between each "version" is in the specifics of the simulator itself, which is customized for each power plant customer, and in minor modifications based on specific problems identified by the customer. It is the production of these "versions" that is in dispute.

Because the source code changes very little, these multiple copies of SimPort are substantially similar. Nevertheless, in order to allow Kurchatov to make that evaluation itself, Western produced the earliest version of the SimPort source code and the latest version of the SimPort source code.[4] At one point, Kurchatov's counsel had agreed that such a production was reasonable. Counsel for Kurchatov even wrote to confirm "that

---

[4] Contrary to Kurchatov's assertion in footnote 1 of its Motion, Western did not simply produce the "end-product of SIMPORT" as opposed to the actual SimPort source code. If counsel for Kurchatov would carefully review its own exhibits, counsel would see that "Western's production of the CD entitled "GE" is the most recent version of the SimPort 2000 source code, and represents the version that was used to build the GE simulator. As with the SeaBrook CD, *Western has produced the source code only, not the simulator*." See Kurchatov's Ex. B (Letter from Margaret A. Keeley on July 10, 2003) (emphasis added).

5

we agreed in our telephone conversation of June 6, 2003 that Western will produce the first and last versions of SimPort 2000, as well as all versions of SimPort 1997." Exhibit ("Ex.") A (Letter from Jesse B. Hammock on June 13, 2003).

Kurchatov now argues that it needs all versions of the SimPort source code in order "test the veracity of WSC's defense" that the SimPort 2000 source code was developed "with no reliance on [Kurchatov's technology]." Motion at 7. But Kurchatov's own reasoning, i.e., that later versions of software typically build upon the first, belies this contention.[5] If Kurchatov's alleged source code was to be found in Western's SimPort, it would most likely be found in the *earliest* version of the code, which Western has produced. The later versions, to the extent they changed at all, would most likely move away from any alleged infringement. Nevertheless, Western produced the latest version of the source code so that Kurchatov could determine for itself that the earliest and latest versions of the code were substantially similar.

Kurchatov's claim that "an examination of just the first and last versions, however, can be misleading, particularly if there has been any substantial time elapsed between the releases," is a red herring. Motion at 3. With the production of the first and

---

[5] Kurchatov attempts to further mislead the Court by blatantly misrepresenting statements made by Western's counsel. Kurchatov claims that Western's counsel has stated "that the *only* necessary comparison involves WSC's *final* SimPort product and not the intermediate versions." Motion at 7 (emphasis added). Western's counsel has made no such statement. On the contrary, Western recognizes the fundamental precept of software development that later versions typically build upon the first. Thus Western has produced *both* the earliest and latest versions of its software. See, e.g., Kurchatov's Ex. B (Letter from Margaret A. Keeley on July 10, 2003).

6

last version of Western's SimPort, Kurchatov has the means to examine whether there has been a substantial change between the two and, if so, to then request that Western produce all versions of the SimPort source code.[6]  If there is no substantial change, then Kurchatov has no need to examine the interim versions of the software, as Western readily admits that if there is any infringing material found in both the earliest and latest versions of the SimPort source code, it will be found in the interim versions as well.[7]

    **C.**    **The Increased Risk That Western's Highly Propriety Information Will Be Lost or Misplaced, Outweighs any Benefit Derived From Producing Multiple Copies of the SimPort Code.**

Apart from the fact that Kurchatov does not need all versions of SimPort source code in order to evaluate whether any infringement exists (the only issue for which the source code is relevant), Western is justifiably concerned that producing multiple

---

[6] Western's has explained its concern with producing multiple copies of its code and has repeatedly maintained that it would consider a request to produce all interim versions if, after examination of the first and last versions of the software, Kurchatov's expert believes the interim versions are necessary.  See, e.g, Ex. B (Letter from Margaret A. Keeley on June 9, 2003).

[7] Despite Kurchatov's weak allegation to the contrary, see Motion at 7, Western is not at all concerned about what Kurchatov will "find" in the interim versions of the source code. Rather, Western has properly objected to the production of all versions of SimPort as overbroad and unduly burdensome and Kurchatov has failed to articulate a reasonable basis for needing dozens of copies of the SimPort source code.  Among other things, Western is understandably concerned with having multiple copies of its highly proprietary source code outside of its control.

copies of its source code increases the risk that Western's highly proprietary information[8] may get lost, misplaced, or worse yet, fall into the hands of a competitor.

In order to produce every "version" of the SimPort source code, Western would need to place each version on a separate compact disc ("CD"). Given the more than a dozen projects completed by Western, this would mean the production of more than a dozen CDs to both Kurchatov and GSE Systems, Inc. ("GSE"). Kurchatov and GSE would, in turn, make copies and provide those copies to their experts. Notwithstanding the parties attempt to ensure the confidentiality and security of the code through the Protective Order of Confidentiality, it is axiomatic that the chances of a CD being misplaced, lost, stolen or inadvertently left in public somewhere, increase exponentially when there are literally dozens of copies floating around as opposed to one or two.[9]

---

[8] The parties all recognize that the source code at issue here is highly proprietary. Indeed, the parties have agreed in their Protective Order of Confidentiality that the discovery that will be exchanged in this case, including the source code, is so sensitive that only the parties' attorneys, experts and other necessary representatives should be able to view any item marked "Confidential" by the producing party. See Protective Order of Confidentiality entered June 4, 2003.

[9] Western's counsel recently made another attempt to resolve this dispute by proposing a simple process to ensure the security of any produced source code. Western's proposal would require: (1) that each party keep a log of CDs received, copied, stored, and sent to experts; (2) that CDs be kept in locked compartments during non-business hours; and (3) that source code copied to a hard drive be stored in a separate directory so that it can be easily located and deleted after the litigation is complete and that the computer be password protected. Western's counsel agreed to produce all interim versions of its source code if all parties agreed to such a security proposal. As of the date of this filing, Kurchatov's counsel had not responded to this offer.

Taken together, any benefit Kurchatov hopes to achieve through the production of all versions of the SimPort code is outweighed by the increased risk of exposure of Western's proprietary information, given that the multiple versions are essentially duplicative copies.

**II.    KURCHATOV HAS FAILED TO PROPERLY IDENTIFY WHICH DOCUMENT REQUESTS ARE IN DISPUTE AND HAS NOT ASSERTED A BASIS FOR THE INSUFFICIENCY OF WESTERN'S RESPONSES.**

Kurchatov's failure to comply with this Court's Local Rules makes Western's job in responding to Kurchatov's Motion exceedingly difficult.  <u>First</u>, this Court requires motions to compel based upon purportedly insufficient discovery responses to be filed within thirty days of receiving the opposing party's response, and requires the moving party to list the document requests in dispute, the responses thereto, <u>and the asserted basis for the insufficiency of the response</u>.  <u>See</u> Local Rule 104.8(a).  Kurchatov has not complied with this Rule, forcing Western and the Court to guess as to what Kurchatov is specifically seeking, and why it believes it is entitled to it.  <u>Second</u>, Kurchatov repeatedly manufactures disputes where none exist by seeking documents that either have already been produced or simply do not exist.  <u>Third</u>, to the extent that Western can decipher what documents are in dispute, Western's has properly objected to those requests and Kurchatov has failed to articulate why Western's responses are insufficient.

9

### A.   Kurchatov has not Complied With Local Rule 104.8.

### 1.   Kurchatov's Motion to Compel is Untimely.

Kurchatov's Motion to Compel was filed more than seventy days after Western served its initial Responses and Objections to Kurchatov's First Set of Document Requests (hereinafter "Responses") and thus Kurchatov is procedurally barred by Local Rule 104.8(a).  That rule states:

> If a party who has propounded interrogatories or requests for production is dissatisfied with the response to them and has been unable to resolve informally (by oral or written communications) any disputes with the responding party, that party <u>shall</u> serve a motion to compel within thirty days of the party's receipt of the response.

<u>See</u> Local Rule 104.8(a) (emphasis added).

Western timely served its initial Responses to Kurchatov's Document Requests on May 21, 2003.  <u>See</u> Kurchatov's Ex. A.  Kurchatov's counsel responded by letter on May 27, 2003, but, significantly, expressed dissatisfaction with only four of Western's responses, three of which relate exclusively to source code (<u>i.e.</u>, Document Requests No. 2, 3 & 4).  <u>See</u> Ex. C (Letter from Jesse B. Hammock on May 27, 2003).[10]  Western responded to Kurchatov's letter on June 9, 2003 and addressed all four of Kurchatov's concerns.[11]  It was not until June 20, 2003, exactly thirty days after Western

---

[10]  The only other Document Request that Kurchatov addressed was Document Request No. 29.

[11]  In addition, Western raised all of the concerns that it had with Kurchatov's initial Responses and Objections to Western's First Set of Document Requests.  <u>See</u> Ex. B (Letter from Margaret A. Keeley on June 9, 2003).

10

served its Responses that Kurchatov (by letter) raised dissatisfaction with Western's other responses.  See Ex. D (Letter from Jesse B. Hammock on June 20, 2003).

This Court admonished the parties in the Scheduling Order entered April 4, 2003, that all Motions to Compel shall be filed in accordance with Rule 104.8.  See Scheduling Order entered April 4, 2003.  Kurchatov has clearly failed to comply with this Rule, filing its Motion more than seventy days after receiving Western's Responses, and thus Kurchatov's Motion should be denied on this ground alone.

### 2. Kurchatov Has Not Specified Properly the Document Requests in Dispute or Articulated the Alleged Insufficiency in Western's Responses.

Kurchatov's motion also fails to meet this Court's requirement that "the memorandum in support of the motion shall set forth": (1) "the discovery request" at issue; (2) "the response thereto"; and (3) and the "asserted basis for the insufficiency of the response."  Local Rule 104.8(a) (emphasis added).  Without such specifics, neither the responding party nor the Court can determine which document requests are at issue or the basis for the dispute.

After presenting over three pages of background information, Kurchatov finally gets to the "The Requests."  See Motion at 3.  Kurchatov identifies no less than sixteen discovery requests, but fails to discuss the categories of documents called for by those sixteen requests, much less articulate why it believes Western's responses to the

requests were inadequate.[12]  See Motion at 4-6.  Indeed, out of the four pages detailing Western's "response," only one paragraph actually addresses Western responses to Kurchatov *document* requests.  This paragraph suggests that Kurchatov is primarily concerned with five categories:  (1) "planning materials and communications" related to the development of the software; (2) "documentation of the monies received by [Western] for the sale or licensing" of the SimPort software; (3) "documentation evidencing the 'time and materials fee'" from Western's Answer; (4) Western's "first use in commerce of the SIMPORT mark"; and (5) "correspondence between [Western] and the United States Patent and Trademark office."  See Motion at 9.

Significantly, two of the categories of documents mentioned above, i.e., "documentation of the monies received by [Western] for the sale or licensing" of SimPort and "correspondence between [Western] and the United States Patent and Trademark office," apparently come from Kurchatov's Document Requests Nos. 19 and 21 respectively, but were not among the sixteen document requests identified in Kurchatov's motion.  See Kurchatov's Ex. A.  Moreover, Western is unsure to which document request the "documentation evidencing the 'times and materials' fee" pertains and, even if Western

---

[12]  Had Kurchatov included Western's responses immediately following its identified document requests (as opposed to simply attaching Western's response), it would have been perfectly obvious that many of the document requests are not in dispute.  Indeed, Western did not even object to a number of the requests, but rather agreed to produce all responsive documents.

could make that determination,[13] Kurchatov has not asserted a basis for the insufficiency of Western's response. Western simply cannot respond if it does not know to which document requests it is responding, or the basis on which its initial response is allegedly insufficient.[14]

In short, it is not Western's responsibility to parse through Kurchatov's Motion in order to determine what documents requests are at issue. And even if Western could make that determination – which it cannot – Kurchatov has not asserted a basis for the insufficiency of Western's responses.

Kurchatov's failure to comply with Local Rule 104.8(a) alone warrants that its Motion be summarily denied.

### B. Kurchatov Has Manufactured Disputes Where None Exist.

It is hardly surprising that Kurchatov does not articulate the alleged insufficiency of Western's responses (as required by Local Rule 104.8(a)) when the Court considers the fact that several of the discovery requests identified by Kurchatov are not now and <u>never have been</u> in dispute; <u>a fact that can be gleaned from Kurchatov's own exhibits</u>. See Kurchatov's Ex. A. Indeed, Western <u>never objected</u> to Document Requests

---

[13] This category likely refers to Kurchatov's Document Request No. 18, which is not one of the sixteen document requests identified in Kurchatov's Motion. Moreover, as discussed infra, Section II, C n.16, Western has produced documents sufficient to establish to the "time and materials" fee paid to Kurchatov.

[14] Adding to the confusion, the other two categories of documents are in fact <u>not</u> in dispute, as discussed infra, Section II, B.

Nos. 20, 26, 28 or 30 and has produced responsive documents thereto. Nevertheless, Kurchatov identifies these four requests in its Motion to Compel, indicating that discovery disputes exist as to these requests when, in fact, the record clearly shows that they do not. Id.

In addition, Kurchatov states that it is "entitled to the production of all documents evidencing [Western's] first use in commerce of the SimPort mark … and correspondence between [Western] and the United States Patent and Trademark office is also clearly relevant." Western is not withholding any such documents. To the contrary, Western indicated in its *initial response* to Kurchatov's First Request for Production of Documents that it would produce all responsive documents thereto (and it has). Kurchatov's counsel explicitly acknowledges this in the Declaration of Good Faith filed with its Motion, but does not explain why the issue is nonetheless a subject of its Motion to Compel. See Kurchatov Ex. F ¶ 13(e). Similarly, Western has already agreed to the "production of all documents evidencing [Western's] first use in commerce of the SimPort mark . . . .", see Motion at 9, and "planning materials and communications," see Motion at 9 n.3 and Kurchatov's Ex. A. Kurchatov cannot compel what has already been produced, or what does not exist.

Similarly, although Western did initially object to some of the other requests, most of those "disputes" have previously been worked out between the parties, a fact that Kurchatov conveniently ignores. See, e.g., Kurchatov's Ex. C (Letter from Jesse B. Hammock on July 18, 2003) ("As to Document Requests Nos. 5, 6, 7, *since you have agreed*

14

*to produce the documents…*") (emphasis added).  If Kurchatov believes that particular documents requests are still in dispute, it should explicitly so indicate.  Western should not have to guess.

    C.    **Western Properly Objected to Kurchatov's Document Requests and Kurchatov Has Not Even Attempted to Articulate a Basis for the Insufficiency of Western's Responses.**

Apart from the fact that Western cannot determine what document requests Kurchatov believes to be in dispute, Kurchatov has not even attempted to articulate a reason why Western's responses are insufficient.

The only paragraph in Kurchatov's motion directly addressing documents reads as follows:

> "The planning materials and communications will allow the Court and the jury to place in context the development of the software as shown by the successive versions, and perhaps will itself shed light both on KI's claims and WSC's defenses. Documentation of the monies received by WSC for the sale or licensing of the infringing software is directly relevant to KI's damages claims, of course, and there would seem to be less than no reason for WSC to await a Motion to Compel to disgorge documentation evidencing the "time and materials fee" WSC raises in its own Answer.  Finally, KI is manifestly entitled to the production of all documents evidencing WSC's first use in commerce of the SIMPORT mark if WSC intends in any way to contest KI's trademark claims, and correspondence between WSC and the United States Patent and Trademark office is also clearly relevant."

See Motion at 9.

After stripping this paragraph of the three categories of documents that are clearly not in dispute, (i.e., Western's first use of the SIMPORT mark, correspondence

15

with the Patent and Trademark Office, and planning materials and communications[15]), and the category for which Western cannot identify a document request, (i.e., documentation evidencing the "time and materials" fee[16]), there is only one category of documents left: "documentation of the monies received by WSC for the sale and licensing of the infringing software." See Motion at 9.

To the extent that this category relates to Kurchatov's Document Request No. 19, Western responded in its Objections and Responses to Kurchatov's First Set of

---

[15] Western and Kurchatov have engaged both in written correspondence and multiple teleconferences regarding particular document requests that could collectively be considered requests for the "planning materials and communications" related to the development of SimPort. As a result of these discussions, Western has produced all planning materials related to the development of SimPort. As for communications, Western has produced all hard copy communications related to the development of SimPort, see Kurchatov's Exhibit F ¶ 13(d), and has, with regard to e-mail communications, performed a reasonable search of over 8,000 e-mails and produced all responsive documents derived from that search. Here again, it is Western's understanding that the issue of e-mail communications has been satisfactorily resolved. See Kurchatov's Ex. C (Letter from Jesse B. Hammock on July 18, 2003) ("We trust any mechanism you design to search the e-mails will produce all responsive documents consistent with our obligations under the federal rules.")

[16] In any event, Western has produced documents, i.e., profit and loss statements and e-mail communications, sufficient to establish the "time and materials" fee paid to Kurchatov. Western does not possess any additional documentation that would reflect a payment to Kurchatov that is not reflected in documents already produced (although there may be certain payments for which there is no documentation). Western objects to this request only to the extent that Kurchatov seeks *every* document related to the time and materials fee paid to Kurchatov. Producing every underlying document that substantiates the payments Western made to Kurchatov would include all cancelled checks, bank statements, receipts for phone bills, electric bills, housing bills, travel expenses, etc. Such additional documentation is entirely redundant since that information is already reflected in the documents produced. Moreover, locating and producing such documents would be unduly burdensome as Western would have to search through seven years of files to find this wholly redundant documentation.

16

Document Requests that it would produce documents "sufficient to establish the sums of monies received as a result of the sale or licensing of SimPort or AIS-95." See Kurchatov's Ex. A.  To that end, Western produced all of its subcontracts, which state how much Western is to be paid for a project, and all of its account records, which clearly show all monies received by Western for the sale or licensing of SimPort.  Western simply and properly objects to the production of all documents evidencing monies received, which would inevitably include thousands of invoices, bank account statements, checks, deposit slips, receipt of funds, etc.  This additional documentation is wholly unnecessary, and any marginal benefit to be gained, which Kurchatov has utterly failed to establish, pales in comparison to the overwhelming cost to Western in searching for *every* underlying document responsive to this request when that information is so clearly and precisely reflected in the documents Kurchatov has already received.  Moreover, Western has agreed to consider any reasonable request for additional documentation as to any particular transaction.  See Kurchatov's Ex. E (Letter from Ann N. Sagerson on July 3, 2003).  Kurchatov has not even attempted to articulate a reason why Western's response is insufficient or why additional documentation is necessary.

## CONCLUSION

For the reasons stated above, Western respectfully requests that Kurchatov's Motion to Compel and award of attorneys' fees be summarily denied.

          Respectfully submitted,

          WILLIAMS & CONNOLLY LLP


          By: _____/s/_____
                Bruce R. Genderson (Bar No. 02427)
                Margaret A. Keeley (Bar No. 15654)
                Ann Sagerson (Bar No. 15821)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Counsel for Western Services Corporation and George Utmel*

Dated: August 18, 2003