## Amended Local Rule 104.7 Certification

1.  I, Jesse B. Hammock, an attorney for Russian Research Center, The Kurchatov Institute ("KI"), submit the following certification pursuant to Local Rule 104.7.  On or about August 14, 2003, counsel for KI and WSC engaged in a telephone conference to discuss the inadequacy of WSC's document production.  Regrettably, counsel was unable to resolve the disputes between the parties.  Thereafter, counsel for KI submitted letters detailing numerous unresolved insufficiencies in WSC's document production, namely on August 28, 2003 and September 11, 2003.

2.  When KI propounded its Request for Production of Documents, it requested all versions, iterations and components of all simulation software, including software bearing the mark SIMPORT.  KI also requested all communications related to SIMPORT's development and licensing, including communications between WSC and SAIC/DS&S and between these entities and any third-party.  KI further requested all documents that evidence work done by scientists formerly associated with KI that currently work for WSC, all documents evidence any information received from KI through the course of developing, creating or executing computer software, and other such communications and documents related to the creation, marketing or licensing of simulation software and all documents evidencing any payments to WSC from any entity for the licensing or sale of SIMPORT.

3.  WSC responded that it would not produce all versions of SIMPORT, but would only produce the first and last versions of SIMPORT 2000 and the only version it claims to retain of SIMPORT 1997.  As to the communications, WSC alleged that it would produce all responsive communications (regarding the development and licensing of SIMPORT) except emails.  WSC claimed that it was overly burdensome to review the 8,000 emails it retains for relevance.  As to the documents evidencing payments, WSC stated that it would produce its internal documentation evidencing all payments to and expenditures by WSC with regard to all entities to which SIMPORT was licensed or sold.

4.  Thereafter, on or about May 27, 2003, counsel for KI wrote to counsel for WSC expressing the necessity of receiving every version of WSC's SIMPORT.  Thereafter or on about June 9, 2003, Ms. Keeley responded to KI's May 27th letter stating that it would limit its production to the first and last version of SIMPORT 2000 and the only claimed existing version of SIMPORT

493651.1

1997.  Eventually, WSC produced only end products of SIMPORT, representing the first and last versions immediately prior to use at Seabrook and one other power plant.  Eventually, on or about July 9, 2003, counsel for WSC stated, for the first time, that none of the early versions of SIMPORT (*i.e.*, all that it was based on) were retained, all had apparently been destroyed at some time in the past.

    5.   In its request for production of documents, KI also requested all communications related to simulation software between KI, WSC, DS&S, SAIC and any third parties.  To date, despite their promises to the contrary, WSC has produced no communications or other supportive documentation regarding the development of SIMPORT or the current dispute between the parties.  Initially, WSC withheld all email communications, claiming they are too voluminous to produce.  Now, WSC claims that all communications prior to 2000 were destroyed or lost when WSC purchased new computers in late 1999.  Nonetheless, WSC has also failed to produce one email or other communication related to the current dispute between the parties.

    6.   As to the documents WSC allegedly relied upon in producing its allegedly independent software, WSC previously stated that they consist of over one hundred boxes of documents and would only produce them at the expense of KI.  After counsel for KI contacted counsel for WSC and offered to travel to and review the documents as they exist at WSC, in a telephone call of July 31, 2000, Ms. Keeley stated that the alleged 100 boxes of documents are not in WSC's custody and control and may not be produced.  Thus, WSC has produced no documents relied upon in developing its SIMPORT, no communications regarding the development of SIMPORT and no communications regarding the ongoing dispute between KI and WSC.

    7.   On or about August 14, counsel for KI and WSC engaged in a conference in an attempt to resolve the discovery disputes between the parties.  In that conference:

>   (a)  WSC offered to produce all of the end-product versions of SIMPORT licensed to the power plants, if KI would agree to numerous confidentiality provisions outside what the parties had already agreed to in the protective order in this case. KI offered a counterproposal a couple of days later, but WSC has not responded.  WSC maintained that none of the early versions on which SIMPORT

        is based exist and were all likely deleted with the alleged computer change-over in 1999;

(b) Ann Sagerson stated that all emails (and other electronically stored communications) prior to 2000 were apparently lost when WSC changed over its computers in late 1999 and, thus, could not be produced. As to all communications after 1999 regarding the disputes between the parties, Ms. Sagerson stated that she believed they had been produced. I responded that we have not received one email regarding the disputes between the parties;

(c) As to all documents (notes, charts, diagrams and documents received from third parties) relied on to develop SIMPORT, all have either been produced or no longer exist. To date no such documents have been produced;

(d) As to all documents evidencing work done or time spent on development of WSC's version of SIMPORT, Ms. Sagerson stated that all responsive documents had been produced in the form of various manuals, which the KI scientists helped to draft. I asked Ms. Sagerson about time records and she stated that WSC would not produce them because the time spent by WSC's employees in developing SIMPORT can be gleaned from WSC's already produced profit and loss statements. A thorough review of these documents does not indicate the amount of time anybody spent developing SIMPORT.

    8. On August 29, 2003, Ann Sagerson stated that WSC would produce the disputed versions of SIMPORT. That is, Ms. Sagerson represented that all versions of SIMPORT that were licensed to the various power plants would be produced at some unspecified date in the future. As of the date of filing this Certification, no such software has been produced.

    9. As to the documents evidencing payments made to WSC or by WSC with regard to the SIMPORT licenses, while WSC alleged that it had produced all the documents it had promised with regard to the approximately 20 entities that WSC has licensed SIMPORT to, a letter produced pursuant to subpoena by one of the power plants (written to the plant by SAIC/DS&S) shows that SIMPORT has been licensed to approximately 32 power plants. To

493651.1
3

date, no documents for the remaining 12 plants have been produced.

I declare under penalty of jury that the foregoing is true and correct.

Executed on September 24, 2003.

                                      /s/
                                 Jesse B. Hammock