IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| RUSSIAN RESEARCH CENTER<br>THE KURCHATOV INSTITUTE,<br><br>                Plaintiff,<br><br>   v.<br><br>WESTERN SERVICES CORP., et al.,<br><br>            Defendants and<br>           Third-Party Plaintiff,<br><br>   v.<br><br>GSE SYSTEMS, INC.<br><br>           Third-Party<br>           Defendants. | Case No.: AMD 02-3878 |

**MEMORANDUM IN OPPOSITION TO
GSE'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS BY WSC IN RESPONSE TO GSE'S
<u>SECOND REQUEST FOR PRODUCTION OF DOCUMENTS</u>**

GSE Systems, Inc.'s ("GSE") motion to compel should be denied. GSE has failed to meet the requirements of the United States District Court for the District of Maryland Local Rule 104.8(a) (hereinafter "Local Rule") in three material respects. First, GSE did not contact Western Services Corporation ("Western") to try to resolve these "disputes" informally. Second, GSE did not serve its motion within thirty days of receiving Western's responses. Third, GSE has not clearly articulated the asserted basis for the

insufficiency of Western's responses. Rather, GSE repeatedly asserts that it "is entitled" to the documents it has requested and that Western's objections (regardless of the grounds) are a "violation of the Federal Rules of Civil Procedure." <u>See, e.g.</u>, GSE's Motion to Compel Production of Documents by WSC in Response to GSE's Second Request for Production of Documents at 6-8, 14-16 (hereinafter "GSE Motion"). In many instances, GSE has simply misread or misconstrued Western's responses, sometimes seemingly ignoring what Western agreed to produce.

In addition, where Western has objected, its objections are proper. GSE's Document Requests, as applied to Western, are grossly overbroad. Western developed the software in dispute in this litigation and has been marketing and licensing that software for over six years. Nevertheless, GSE included no time limits on its Document Requests and in each and every case sought "all documents" related to its Requests.

For these reasons, GSE's motion should be summarily denied.

## **ARGUMENT**

I.  **GSE FAILED TO COMPLY WITH THE REQUIREMENTS OF LOCAL RULE 104.8(a).**

This Court admonished the parties in the Scheduling Order entered April 4, 2003, that all Motions to Compel <u>shall</u> be filed in accordance with Rule 104.8. <u>See</u> Scheduling Order entered April 4, 2003. That rule states:

> If a party who has propounded interrogatories or requests for production is dissatisfied with the response to them *and has been unable to resolve informally* (by oral or written

2

>communications) any disputes with the responding party, that party <u>shall</u> serve a motion to compel within *thirty days* of the party's receipt of the response. The memorandum in support of the motion <u>shall</u> set forth, as to each response to which the motion is directed, the discovery request, the response thereto, and the *asserted basis for the insufficiency of the response.*

<u>See</u> Local Rule 104.8(a) (emphasis added).

GSE has clearly failed to comply with this rule, as explained in detail below.

### A.   GSE Did Not Attempt to Resolve These Discovery "Disputes" Informally as Required by the Rule.

This Court's Local Rules state that a party shall serve a motion to compel "<u>if</u> … [the party] is dissatisfied with the response … <u>and</u> has been unable to resolve informally (through oral or written communications) any disputes with the responding party… ." <u>See</u> Local Rule 104.8(a). The wisdom of this rule is particularly apparent in a situation such as this. Had GSE simply contacted Western, many, if not all, of these disputes could have been resolved informally, obviating the need for the parties to spend countless hours writing lengthy memoranda. Indeed, many of these "disputes" are simply the product of GSE's non-commonsensical reading of Western's responses. Unfortunately, despite the fact that counsel for GSE and Western had been face to face (in depositions) eight times in the interim period, GSE did not try to resolve the disputes informally prior to serving its motion to compel.[1]

---

[1] When Western's counsel learned of GSE's intent to file a motion to compel, Ms. Keeley called Mr. Gorman to inquire of the nature of the motion because GSE had never raised any issue with Western's discovery responses. Mr. Gorman invited Ms. Keeley to call him back the following week to discuss why GSE was dissatisfied with the responses if she

3

### B. GSE Served its Motion to Compel More Than Thirty Days After Receiving Western's Responses.

GSE served its Second Request for the Production of Documents on July 25, 2003 and Western timely served its responses on August 25, 2003. Under the Local Rules, GSE was required to file a motion to compel within thirty days of receiving Western's responses. See Local Rule 104.8(a) ("[the moving] party shall serve a motion to compel within *thirty days* of the party's receipt of the response.") (emphasis added). Nevertheless, GSE did not serve its motion to compel on Western until October 1, 2003, more than 30 days after Western served its responses (and without attempting to resolve the dispute informally). GSE's failure to abide by the timing requirements of Local Rule 104.8(a) alone mandates dismissal of its motion.

### C. GSE Has Not Asserted a Basis for the Insufficiency of Western's Responses.

A motion to compel must set forth, *inter alia*, "the asserted basis for the insufficiency of [opposing party's] response." See Local Rule 104.8(a). Without such specifics, neither the responding party nor the Court can determine the basis for the dispute.

In this regard, GSE's motion is remarkable for one thing: its consistency. Its recitation of the alleged basis for the insufficiency of Western's response is virtually identical for each and every document request addressed. First, GSE baldly asserts that it

---

desired, but stated that there was no duty to meet and confer prior to the motion to compel being served.

4

is "entitled" to all documents called for in the Request, without any substantive explanation as to *why* GSE is entitled to all such documents.[2]  Second, GSE repeatedly asserts that Western's objections and responses, regardless of the grounds, are "a violation of the Federal Rules of Civil Procedure." <u>See, e.g.</u>, GSE Motion at 2.  The Local Rules require the party serving the motion to set forth the asserted basis for the insufficiency of the response, and GSE has failed to do that.  It is not a violation of the Federal Rules of Civil Procedure to object to an overbroad and unduly burdensome document request.  Indeed, the Federal Rules explicitly anticipate this, <u>see</u> Fed. R. Civ. P. 34(b), as do this Court's Local Rules, <u>see</u> Local Rule 104.6 (stating that responses to documents requests shall set forth "a brief statement of the grounds for objection").  Western's objections to GSE's overbroad Requests are perfectly proper.

## II.     WESTERN HAS PROPERLY OBJECTED TO GSE'S GROSSLY OVERBROAD DOCUMENT REQUESTS.

### A.     Request No. 1.

Western has properly objected to GSE's Request No. 1 as, *inter alia*, overbroad and unduly burdensome and GSE has not articulated why Western's response is insufficient.  Rather, GSE makes two bald assertions.  First, GSE simply asserts that it is "entitled" to <u>all</u> of the documents in Western's possession and second that Western's response is insufficient because Western has not identified the documents and materials it

---

[2] For example, GSE asserts in response to Request No. 19 that GSE "is entitled to all documents evidencing the direct or indirect exchange of money... . All documents evidencing any direct or indirect exchange of money or other valuable consideration are discoverable and should be produced." <u>See</u> GSE Motion at 6.

5

is withholding, asserting that such failure is a "violation of the Federal Rules of Civil Procedure."[3] GSE Motion at 2. Both assertions are incorrect.

First, Western is not withholding any particular category or type of document. The purpose of Western's objection was to make it clear that Western would perform a reasonable search and produce responsive documents, but that the reasonable search may not undercover <u>every single document</u> related to these technologies. In order to be perfectly transparent, Western, in its response, listed certain categories of documents that it would produce in response to this Request, including documents that would be responsive to other GSE Document Requests.[4] By listing particular categories of documents, however, Western did not intend to exclude any other particular category of document. Indeed, although GSE lists "obvious categories of documents" that Western is allegedly withholding, each of those categories of documents is called for in another Request. For example, "handwritten and electronic notes" are called for in GSE Request No. 13; "bids and responses to customers' requests for proposals" are called for in Request Nos. 4, 6, 7; "e-mail communications/messages that would be identified and produced using broader e-mail and document search criteria such as the names of customers to whom WSC has marketed AIS-95, SimPort, SimPort 1997, and/or SimPort 2000

---

[3] There is no requirement under the Federal or Local Rules that a party specifically identify the documents it is not producing. Indeed, to do so would be just as burdensome as producing the documents themselves.

[4] Collectively Kurchatov and GSE have propounded 60 document requests on Western, most, if not all of which relate to AIS-95, SimPort, SimPort 1997 and/or SimPort 2000.

6

simulation technology" are called for in Document Request Nos. 2, 4, 13, 26 (and where appropriate, objected to).  See Ex. A.

In fact, subject to specific objections related to other GSE Document Requests[5], Western very likely has produced almost every document in its possession that relates to AIS-95, SimPort, SimPort 1997 and/or SimPort 2000.[6]  The actual amount of additional documentation that has not been produced, to the extent it exists, is probably insignificant.  Nevertheless, it would be an immensely burdensome endeavor for Western, at this stage in the discovery process, to go back and find each document that has not already been produced.  Thus, to the extent that GSE is maintaining that Western must produce every single document in its possession, beyond what it has already produced after performing a reasonable search, GSE's Request is overbroad and unduly burdensome.[7]

---

[5] See, e.g., Western's objections to GSE's Document Requests Nos. 9, 18, 21, 22, 23, 24, infra, at pages 11-12.

[6] This dispute is primarily about intellectual property rights in SimPort, as it existed in 1997 and as it exists today.  The ownership of the software will be determined based on the software itself and the circumstances of its creation.  To that end, Western has produced the software (including software unrelated to SimPort or AIS technology), agreements between the parties, correspondence between the parties and between third parties, subcontracts and licensing agreements, financial records, time records of employees, technical documents, marketing materials, communications related to the development of SimPort and countless other categories of documents.

[7] Western developed SimPort and has been marketing and utilizing it since as least as early as 1997.  Thus Western has over six years of documents that potentially "relat[e] to" these technologies.

### B.     Requests Nos 2, 3, 13, 14.

GSE's objections to Requests Nos. 2, 3, 13 and 14 highlight how easily many of these "disputes" could have been resolved if GSE had simply sought clarification from Western. GSE makes two common objections to Western's responses to these Documents Requests.[8]

First, GSE seems to think that Western is engaging in chicanery by stating, in response to each of these Requests, that it will produce "responsive documents." When Western states that it will produce "responsive documents," it simply means that documents that are responsive to that Request will be produced. While Western fails to see how GSE can read this as "effort to set up some way to withhold documents," see GSE Motion at 9, Western assures the Court and GSE that Western's use of the phrase "responsive documents" is in no way meant to imply any limitation to Western's production. Rather, where Western has adopted limiting constructions of GSE's Requests, it had said so clearly.[9]

---

[8] The only issue that GSE has with Western's responses to Request Nos. 13 and 14 is with regard to Western's use of the phrase "responsive documents."

[9] For example, in Request No. 2, GSE sought "[a]ll documents relating to communications concerning simulation technology between or among any of the following: GSE, KI, WSC, Utmel, SAIC or DS&S." Western responded with a commitment to produce "responsive documents relating to communications concerning AIS-95, SimPort, SimPort 1997 and SimPort 2000 simulation technology... ." This response makes clear how Western limited its production (by excluding any simulation technologies other than those named). The word "responsive" as used here simply makes clear that what is being produced otherwise meets the Request (e.g., constitutes a communication between or among the specific entities or persons named in the Request).

8

Second, GSE states that Western's objection to producing documents relating to "non-SimPort technology"[10] is improper (and, indeed, according to GSE, yet another violation of the Federal Rules of Civil Procedure) because "whether AIS-95 is a SimPort simulation technology is an issue disputed by WSC and [the objection] *therefore allows WSC to withhold documents*...that are clearly discoverable."  GSE's Motion at 2-3 (emphasis added).  But GSE ignores what Western has committed to produce.  While ultimately Western does dispute whether AIS-95 is a SimPort technology, Western recognizes that the AIS technology is relevant to the claims of the parties and thus agreed to produce documents "relating to <u>AIS-95</u>, SimPort, SimPort 1997 and SimPort 2000 simulation technology."[11]  <u>See</u> GSE's Motion at 3-4 (emphasis added).  Thus Western's response, <u>defined as including AIS-95</u>, in no way enables Western to withhold relevant documents.

### C.     Request No. 4.

Contrary to GSE's assertion, Western is not engaging in "gamesmanship and wordsmithing," <u>see</u> GSE Motion at 5, designed to withhold relevant and discoverable documents in its response to Request No. 4.  Rather, Western has properly objected to this,

---

[10]  This objection is only pertinent to Requests Nos. 2 and 3.

[11]  For purposes of these Document Requests, when Western refers to "non-Simport technology," Western does not intend to exclude AIS-95.  Western previously agreed, in connection with Kurchatov's Document Requests, that it would define SimPort to include AIS-95 for purposes of responding to Kurchatov's Requests and Western makes that same agreement here.

9

*as drafted*, vague and grossly overbroad Document Request.  Read literally,[12] this Request would call for the production of all documents relating to communications between, for example, Western and Western, Western and SAIC, Western and DS&S, SAIC and SAIC, etc., regardless of whether those documents relate *in any way* to SimPort or simulation technology or to any claims related to this litigation.  Such a request would clearly be overbroad and unduly burdensome (and irrelevant to the issues in this suit) as Western, DS&S and SAIC are engaged in other businesses that have absolutely no relationship to simulation technology or to any matters relevant to this lawsuit.

Western's objection and response was a reasonable attempt to correct what it perceived to be a poorly drafted and grossly overbroad document request.  Unfortunately, GSE's motion to compel could not be less helpful in clarifying what documents GSE is seeking through this Request.  GSE states that Western "appears to be contending that it need not produce communications among it, SAIC, and/or DS&S unless such communications relate both to the simulation technology and to WSC, Utmel, DS&S or SAIC."  GSE Motion at 5 (emphasis in original).  GSE makes no mention of communications with third parties, which Western originally perceived to be the main thrust of this Request.  The bottom line is, this is a poorly drafted Document Request, and Western made a reasonable attempt to decipher what documents were actually being

---

[12] Assuming that the two phrases before the "and/or" in subsection (b) are meant as single and independent phrases, then reading subsections (a) and (b) together with the and/or in subsection (b) produces an absurdly overbroad request because it conceivably covers all communications between or among WSC and/or SAIC and/or DS&S and WSC, Utmel, DS&S or SAIC, regardless of the subject matter of those communications.

sought and to produce those documents. To the extent GSE continues to press this Request, Western objects to it as being hopelessly overbroad.

**D.     Requests Nos. 9, 18, 21, 22, 23, 24.**

GSE's Requests Nos. 9, 18, 21, 22, 23, and 24 all essentially request the same type of information, i.e., financial records, and Western's objection to each of these Requests is essentially the same. Request No. 9 seeks all documents evidencing "any direct or indirect exchange of money" between Western, Utmel, DS&S and SAIC (related to SimPort); Request No. 18 seeks all documents evidencing "any payments made to KI" (related directly and indirectly to SimPort); Request No. 21 seeks all documents that evidence "any and all monies exchanged between Western and any other person" (related to SimPort); Request No. 22 seeks all documents that evidence "sums received" by Western, SAIC, DS&S and Utmel (related to SimPort); Request No. 23 seeks all documents that evidence "revenue and profits" earned from the use of the SimPort mark; and Request No. 24 seeks all documents that evidence "all revenue and profits earned from the use, sale, or marketing of SimPort technology." See Ex. A. In short, each Document Request is seeking financial information related to monies Western, Utmel, SAIC, DS&S, Kurchatov and third parties received or exchanged related, directly or indirectly, to SimPort.

In each case, Western has objected to the production of every document that evidences such monies received or exchanged by Western (and others) while agreeing to produce documents "sufficient to establish" that which was requested. To that end,

11

Western produced all of its subcontracts, which state how much Western is to be paid for a project; all of its profit and loss statements, which clearly show all monies received (including revenue and profit) and monies expended; all of its financial and accounting records, which clearly reflect monies paid by Western; and other relevant financial documentation including, but not limited to, e-mails that reflect payments made by Western to Kurchatov. Western simply and properly objects to the production of <u>all</u> documents evidencing monies received and exchanged, which would inevitably include thousands of invoices, bank account statements, cancelled checks, deposit slips, receipt of funds, receipts for phone bills, receipts for electric bills, receipts for housing bills, etc. This additional documentation, if it exists at all, is wholly unnecessary, and any marginal benefit to be gained, which GSE has utterly failed to establish, pales in comparison to the overwhelming cost to Western in searching for <u>every</u> underlying document responsive to these Requests when that information is so clearly and precisely reflected in the documents GSE has already received. Moreover, Western has not knowingly withheld any documents that would reflect a payment either received or made (including any documents reflecting revenues or profits) that is not reflected in the documents already produced (although there may be certain payments for which there is <u>no</u> documentation).

  E.  **Requests Nos. 10, 11, 12.**

Any alleged "disputes" over these three Document Requests, all of which seek simulation software source code, are moot, for two reasons. First, Western has already produced interim versions of the SimPort software in response to earlier document

requests propounded by Kurchatov (the issue apparently in dispute).[13]  Second, GSE's Document Requests Nos. 10, 11 and 12 are <u>identical</u> to Kurchatov's Document Requests Nos. 1, 2, and 3 which have already been the subject of a motion to compel that this Court has recently denied.[14]  <u>See</u> Kurchatov's Motion to Compel the Defendants to Produce all Software and Outstanding Documents in Their Custody and Control; <u>see also</u> Letter Order dated Oct. 7, 2003 denying Kurchatov's Motion to Compel.

### F.  Request Nos. 15, 16, 19, 20.

Notwithstanding Western's objections, Western has produced all responsive documents related to GSE's Requests Nos. 15, 16, 19 and 20.

### G.  Request No. 17.

GSE has not asserted its basis for the insufficiency of Western's response other than to make the conclusory statement that "GSE is entitled to have produced to it all documents … that relate to AIS-95, SimPort, SimPort 1997, and/or SimPort 2000 simulation technologies" and that Western has somehow violated the Federal Rules of Civil Procedure by objecting.  <u>See</u> GSE Motion at 13.  First, this Document Request does

---

[13] GSE's Request No. 11 calls for all of Western's simulation software source code, whether or not it is related to SimPort.  As Western stated in its response, it has produced the source code for all of its simulation programs, which are now combined in a single product called 3-Key.  It appears, thus, as if GSE's objection to Western's response is related to the interim versions of the SimPort source code, which as addressed in section E, is moot.

[14] Western produced the interim versions of the SimPort software, subject to an enhanced security agreement between the parties, prior to the Court's ruling on Kurchatov's motion to compel.

not call for "all documents that relate to AIS-95, SimPort, SimPort 1997 and/or SimPort 2000." It requests "all documents that evidence any work done by any scientist associated with, or previously associated with, KI with respect to any computer software intended for marketing, licensing or sale in the United States, including the work product of its scientists, time records or other such records showing the work actually performed by said scientists and the remuneration paid for the work performed by such scientists." Id. at 12.

Moreover, Western has properly objected to this Request as overbroad and unduly burdensome, stating that it would produce documents sufficient to establish the time scientists formerly associated with Kurchatov spent on the development and application of SimPort (the only software in dispute in this litigation) and sufficient to establish the remuneration paid to such scientists for that work. To that end, Western has produced all time records, project financials (which will reflect the specific projects each engineer worked on), account records and other financial statements (which reflect the remuneration paid to these scientists).

Western objects to producing <u>every</u> underlying document that would evidence this information and in particular objects to the extent that this Document Request calls for documentation related to simulation software other than SimPort or AIS-95.[15] The documentation that Western has provided clearly reflects the work that these

---

[15] See Western's Response to Request No. 26, infra at pages 15-16, for a more detailed explanation of Western's objection to the production of documents related to non-SimPort software.

14

scientists have performed on behalf of Western and the remuneration[16] paid to those scientists for that work.  Western does not possess any additional documentation that would reflect time records or payments related these scientist that are not reflected in documents already produced (although these scientists may have performed certain work or Western may have made certain payments for which there is no documentation).

H.     Request No. 26.

To the extent that GSE's Request No. 26 seeks correspondence related to non-SimPort software, it is grossly overbroad and not relevant to any claims or defenses in this litigation.  This Document Request calls for "[a]ll correspondence and communications between and among WSC, Utmel, SAIC and/or DS&S with respect to any simulation computer software."  See GSE Motion at 20 (emphasis added).  Western agreed to produce all such correspondence and communications related to AIS-95, SimPort, SimPort 1997 and SimPort 2000, the only software in dispute in this litigation.  Western's non-SimPort software is of no conceivable relevance[17] to any claim, defense, counterclaim or third-party claim in this suit.  That GSE makes no attempt to articulate the relevancy, after having

---

[16]  See Western's Response to Requests Nos. 9, 18, 21, 22, 23 & 24, supra at pages 11-12, for a detailed explanation of Western's objection to the production of all financial related documents.

[17]  In addition to being irrelevant, this documentation and correspondence will inevitably consist of commercially sensitive documents.

an opportunity to examine the technology itself, clearly supports the appropriateness of Western's objection.[18]

## CONCLUSION

For the reasons stated above, Western respectfully requests that GSE's motion to compel be denied.

---

[18] Although Western does not believe its non-SimPort software is relevant to this lawsuit, it agreed to produce (and did produce) such software so that the parties could "verify" that this software was in fact not derivative of SimPort. This simulation software remains irrelevant, however, and Western's effort to resolve the earlier disputes by agreeing to produce the technology hardly opens the door for the parties to pursue this fishing expedition any further.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


By: _____/s/_____
    Bruce R. Genderson (Bar No. 02427)
    George A. Borden
    Margaret A. Keeley (Bar No. 15654)
    Ann Sagerson (Bar No. 15821)

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

*Counsel for Western Services Corporation and George Utmel*

Dated: October 20, 2003

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum in Opposition to the Third-Party Defendant's Motion to Compel was served on the following electronically and by first class mail on October 20, 2003:

>Charles L. Simmons, Jr., Esq.
>Gorman & Williams
>Two North Charles Street
>Suite 750
>Baltimore, MD 21201
>
>John M.G. Murphy, Esq.
>Ober, Kaler, Grimes & Shriver, P.C.
>120 East Baltimore Street
>Baltimore, MD 21202

_____/s/_____
Ann N. Sagerson