**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RUSSIAN RESEARCH CENTER ) | |
| THE KURCHATOV INSTITUTE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.: AMD 02-3878** |
| v. ) | |
| ) | |
| WESTERN SERVICES CORP., et al., ) | |
| ) | |
| **Defendants and** ) | |
| **Third-Party Plaintiff,** ) | |
| v. ) | |
| ) | |
| GSE SYSTEMS, INC. ) | |
| ) | |
| **Third-Party** ) | |
| **Defendants.** ) | |

**MEMORANDUM OF LAW IN SUPPORT OF WESTERN**
**SERVICES CORP.'S MOTION TO PRESERVE**
**CONFIDENTIALITY OF RICHARD D. CLARK'S REPORT**

On June 4, 2003, the Court approved the Protective Order of Confidentiality stipulated to by the parties. The Protective Order of Confidentiality limits the disclosure of materials obtained through the discovery process which constitute or contain "confidential information" as contemplated by Fed. R. Civ. P. 26(c)(7). See Ex. 1, Protective Order of Confidentiality dated June 4, 2003, at ¶ 1. Fed. R. Civ. P. 26(c)(7) provides that "for good cause shown," a court may enter a protective order requiring "that a trade secret or other

confidential research, development, or commercial information not be revealed or be revealed only in a designated way."

The Report of Richard D. Clark, CPA, MBA (the "Report"), attached to this memorandum as Exhibit 2, is the epitome of the type of confidential commercial information that the Protective Order of Confidentiality and Fed. R. Civ. P. 26(c)(7) are designed to protect.   The Report was prepared and signed by Richard D. Clark, Western's expert on damages, pursuant to Fed. R. Civ. P. 26(a)(2)(B).  Clark wrote the Report based on his review of Western's confidential financial and contractual documents, which were previously produced during discovery and designated confidential without objection.[1]

Western produced the Report to plaintiff Russian Research Center, The Kurchatov Institute ("Kurchatov") and third-party defendant GSE Systems, Inc. ("GSE") on November 3, 2003.  On November 5, 2003, Western's counsel advised counsel for Kurchatov and GSE that the Report should be designated "Confidential" pursuant to the Protective Order of Confidentiality.  Ex. 3.  By letter dated November 21, 2003, counsel for

---

[1] On the first two pages of the Report, Clark lists the documents he reviewed to arrive at the opinions stated in the Report: (1) Profit and Loss Statements of Western Services Corporation for each of its Subcontracts, including details of receipts and direct costs; (2) copies of subcontract and modification agreements for the years from 1997 through 2002 (including the date, subcontract number and project name  for each subcontract); and (3) proposals for subcontracts submitted by Western that were lost (including the date, proposal reference number, and project name for each of the lost subcontract proposals). See Ex. 2.  All of these documents have previously been produced and designated "Confidential" by Western, with no objection by the other parties to this lawsuit.  See Ex. 6.

GSE indicated that GSE objected to the confidential designation of the Report because it desired to provide the Report to at least some officers, directors, and employees of GSE and Kurchatov. [2]

For the reasons that follow, Western urges the Court to preserve the "Confidential" designation of the Report and thereby protect Western's confidential commercial information from being revealed to their business competitors.

## ARGUMENT

I.    **RULE 26(c)(7) AUTHORIZES DISTRICT COURTS TO PROTECT CONFIDENTIAL COMMERCIAL INFORMATION SUCH AS THE REPORT.**

Paragraph 7 of the Protective Order of Confidentiality provides that the designating party may move the Court for an order preserving the "Confidential" designation of a disputed item and that on any such motion "the burden shall be on the party seeking confidentiality to justify it under Rule 26(c)." See Ex. 1, at ¶ 7. Here, good cause exists under Fed. R. Civ. P. 26(c)(7) to protect Western from the harm that will ensue if the confidential information contained in the Report is disclosed to its competitors, Kurchatov and GSE.

To establish good cause for a protective order under Fed. R. Civ. P. 26(c)(7), the party resisting discovery bears the burden of showing that (1) the information sought is

---

[2] Subparagraph 3(e) of the Protective Order of Confidentiality provides that "in no event shall any Confidential Information be given to officers, directors or employees of the parties." See Ex. 1, at ¶ 3(e).

confidential and (2) that the party will be harmed by its disclosure. <u>In re Wilson</u>, 149 F.3d 249, 252 (4th Cir. 1998) (citing Charles Alan Wright & Richard L. Marcus, Federal Practice and Procedure § 2043, at 555-57 (2d ed. 1994)); <u>see also</u> <u>Brittain v. Stroh Brewery Co.</u>, 136 F.R.D. 408, 412 (M.D.N.C. 1991)).  If this showing is made, the party seeking unrestricted access to the materials must establish that unlimited disclosure of the information is sufficiently necessary to its case to outweigh the harm of disclosure.  <u>In re Wilson</u>, 149 F.3d at 252; <u>Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.</u>, 200 F.R.D. 255, 262 (M.D.N.C. 2001).  Here, as evidenced by the Declaration of George Utmel, named defendant in this litigation and President of Western, which is attached hereto as Exhibit 4, the confidentiality of the Report and the harm that will flow from allowing such confidential commercial information to fall in the hands of the decision-makers of key competitors are clear.  <u>See</u> Ex. 4, Utmel Decl. ¶¶ 3-7.

     "In determining whether the material is confidential, the Court must look at the nature of the information, the measures taken to protect its secrecy, and the extent of knowledge of the information by both outsiders and insiders." <u>Brittain</u>, 136 F.R.D. at 415. There is no question that this Report "contains highly sensitive commercial information which reveals Western's profit and cost structures, contractual relationships, and

unsuccessful contractual bids."[3]  Utmel Decl. ¶ 4.  Indeed, the Report contains the precise

amount Western bid on each of several projects (a fact not disclosed during the bidding

process) and a detailed summary of Western's profits and losses on each of several other

SimPort-related projects. See Ex. 2.  Moreover, this information "is not publicly available,

has been closely guarded by Western at all times, and has only been disclosed to Western's

employees and agents, Western's contractual partners, recipients of Western's contractual

bids (subject to applicable confidentiality agreements), and 'Qualified Persons', as defined

by the Protective Order of Confidentiality dated June 4, 2003."  Utmel Decl. ¶ 5.  Thus,

Western has made a *prima facie* showing of the confidentiality of the Report.[4]  See

Brittain, 136 F.R.D. at 415 (finding "*prima facie* showing of confidentiality" where

information not shared with anyone outside of corporation and only provided to those

inside corporation on a "need to know" basis); see also Drexel, 200 F.R.D. at 260 (finding

sufficient showing of confidentiality where information at issue "is not confidential vis-à-

vis the whole world but only as to [competitor]").

---

[3] Indeed, GSE has acknowledged the confidentiality of this type of information.  In a letter dated August 12, 2003, GSE indicated that it considered even the names of its proposals, contracts, and customers to be confidential.  See Ex. 5.

[4] The Report itself has only been disclosed to "Qualified Persons" under the Protective Order of Confidentiality.  The documents which underlie the Report, because of their very nature, have at times been disclosed to Western's contractual partners (e.g., proposals) and recipients of Western's contractual bids.

Likewise, "the information is both valuable and could cause harm if it is released." Brittain, 136 F.R.D. at 415. The disclosure of the Report to the corporate decision-makers of GSE and Kurchatov "would provide GSE and Kurchatov with vital information which could be used to price similar goods and services, underbid Western in present and future contract proposals, and otherwise interfere with Western's business operations and relationships." Utmel Decl. ¶ 7. Therefore, providing GSE and Kurchatov with this information may enable them to win power plant contracts worth hundreds of thousands, if not millions, of dollars that may otherwise be awarded to Western. Utmel Decl. ¶¶ 3,7. The possibility of "[l]oss of business, sales, and reputation, are sufficient" to show that the proponent of a protective order would be "harmed by the release of the information" to opposing parties who are alleged to have commercially "predatory motives". Drexel, 200 F.R.D. at 261.

Finally, neither GSE nor Kurchatov has been, or will be, able to proffer a need for disclosure of this Report to their employees that outweighs the potential for harm to Western if such disclosure is allowed. See In re Wilson, 149 F.3d at 252 (courts must consider harm party will suffer from disclosure and "balance that harm against [opposing party's] need for its employees to access the documents"). In this case, as "in most cases … the key issue often is not whether the information will be disclosed, but under what conditions it should be disclosed." Drexel, 200 F.R.D. at 260 (citing Federal Practice and Procedure § 2043, at 565). Western is merely seeking to limit the disclosure of the confidential Report, not prevent its disclosure altogether. Like many of the documents

exchanged in this intellectual property litigation amongst direct competitors in a highly competitive business, this Report should only be revealed to counsel for the parties and other "Qualified Persons" under the Protective Order of Confidentiality, so that it cannot be used as a tool for unfair competition. See C.A. Muer Corp. v. Big River Fish Co., 1998 U.S. Dist. LEXIS 12639, *12 (E.D. Pa. 1998) ("Restricting access to proprietary business documents to attorney and expert eyes promotes fairness and efficiency by preventing [proponent of confidentiality protective order] from being disadvantaged in the commercial marketplace as a result of this litigation."); MedImmune, Inc. v. Centocor, Inc., 271 F. Supp. 2d 762, 773 (D. Md. 2003) ("The competing interests to be evaluated in determining the outcome of such a dispute are one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors."); GTE Products Corporation v. Gee, 112 F.R.D. 169, 171-72 (D. Mass. 1986) ("[O]rders prohibiting the disclosure of discovery materials by an attorney to his client have frequently been issued under Fed. R. Civ. P. 26(c)(7) to prevent disclosure to a party's business competitor(s) of trade secrets, or other confidential research, development or commercial information.") (internal citations omitted).

Accordingly, the Court should preserve Western's designation of the Report as "Confidential" because Western has shown good cause for protecting it from harmful disclosure pursuant to Fed. R. Civ. P. 26(c)(7).

II.   **UNDER THE EXPRESS TERMS OF THE PROTECTIVE ORDER OF CONFIDENTIALITY, THE REPORT SHOULD BE TREATED AS CONFIDENTIAL.**

An alternative but equally compelling reason to treat the Report as confidential can be found in the explicit language of Paragraph 9 of the Protective Order of Confidentiality, which provides: "All extracts and summaries of Confidential Information shall also be treated as confidential in accordance with the provisions of this Order." Ex. 1, at ¶ 9.  The Report is both a summary and a collection of extracts of Confidential Information and should be treated as confidential accordingly.

The Report expressly states that the opinions contained therein were based on Clark's review of a series of financial and contractual documents produced by Western in this litigation.  See Ex. 2, section entitled "Documents Reviewed".   Ann N. Sagerson, Esq., Western's counsel, avers that all of these documents were designated "Confidential" pursuant to the Protective Order of Confidentiality when they were produced during discovery, and that neither Kurchatov nor GSE has objected to any of these designations.[5] Ex. 6.  The Report should therefore be treated as confidential because it summarizes and contains extracts of information for which the "Confidential" status remains undisputed.

---

[5] As noted in Sagerson's Declaration, counsel for Kurchatov did object to the confidentiality of one financial statement, apparently because he believed that it was a blank document. Western's counsel informed Kurchatov that the document did in fact contain confidential information and has received no further objection.

In fact, even where the applicable confidentiality order failed to provide expressly for "derivative" confidentiality of an expert report that was based on review of confidential information, the court in Horizon Unlimited, Inc. v. Silva, 2000 WL 730340 (E.D. Pa. 2000), reasoned  that such an expert report is implicitly entitled to protection.  In Horizon Unlimited, the court held plaintiff's counsel in contempt for disclosing an expert report based on confidential information in violation of the confidentiality order which "limit[ed] all discovery materials marked 'confidential' to use by certain people, including the attorneys in this action but not the parties themselves, unless otherwise approved by the court." Horizon Unlimited, 2000 WL 730340, at *4.  Even though the expert report itself had not been marked confidential, the court held that "[i]t was unreasonable for [counsel] to conclude that an expert report based on confidential flight test data was not itself confidential."  Id.   Likewise, it is unreasonable for GSE to challenge the confidentiality of the Report when it has rightly accepted the "Confidential" designation of the financial documents upon which the Report was based.  See also Mitchell v. National Railroad Passenger Corporation, 208 F.R.D. 455, 461 (D.D.C. 2002) (erring on the side of caution and prohibiting disclosure of expert report because "expert reports . . . may or may not contain confidential information" as defined by the confidentiality order in that case).

The Court therefore should require GSE and Kurchatov to abide by Paragraph 9 of the Protective Order of Confidentiality and treat the Report, which is a summary and collection of extracts of indisputably confidential information, as confidential and thereby

prohibit its disclosure to anyone other than "Qualified Persons" as defined by the Protective Order of Confidentiality.  <u>See</u> Ex. 1, at ¶¶ 9, 3.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Western respectfully requests that the Court preserve its "Confidential" designation of the Report pursuant to the Protective Order of Confidentiality.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


By:  _____/s/_____

Bruce R. Genderson (Bar No. 02427)
George A. Borden (Bar No. 06268)
Margaret A. Keeley (Bar No. 15654)
Ann N. Sagerson (Bar No. 15821)

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

*Counsel for Western Services Corporation
and George Utmel*

Dated: December 8, 2003

### Certification

Pursuant to Local Rule 104.7 and Fed. R. Civ. P. 26(c), I, George Borden, Esq. certify that Charles Simmons, Esq., counsel for GSE, and I conferred by telephone concerning the "Confidential" designation of the Report.  Mr. Simmons requested that the Report be subject to paragraph 10 of the Protective Order of Confidentiality which would have allowed a limited number of client representatives of GSE and Kurchatov to review the document.  Western refused this request because it believes disclosing the Report to any officer, director, or employee of GSE or Kurchatov would allow these competitors to use the confidential commercial information disclosed therein to Western's detriment.

_____/s/_____
George A. Borden

## <u>Index of Exhibits</u>

1. Protective Order of Confidentiality entered June 4, 2003

2. Report of Richard D. Clark, CPA, MBA (the "Report")

3. November 5, 2003 Email Message from Ann N. Sagerson, Esq. (counsel for Western) to John M.G. Murphy, Esq. (counsel for Kurchatov) and Charles L. Simmons, Jr., Esq. (counsel for GSE)

4. Declaration of George Utmel

5. August 12, 2003 Letter from Francis J. Gorman, Esq. (counsel for GSE) to Ann N. Sagerson, Esq. (counsel for Western)

6. Declaration of Ann N. Sagerson, Esq.

## **Appendix of Cases Not Generally Published**

1. <u>C.A. Muer Corp. v. Big River Fish Co.</u>, 1998 U.S. Dist. LEXIS 12639 (E.D. Pa. 1998).