IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| RUSSIAN RESEARCH CENTER<br>THE KURCHATOV INSTITUTE, | *<br>* |
| Plaintiff/Counterclaim Defendant, | * |
| v. | *    Civil Action No.: |
| SCIENCE APPLICATIONS INTERNATIONAL<br>CORPORATION and DATA SYSTEMS<br>AND SOLUTIONS LLC, | *    AMD 03-2340<br>* |
| Defendants/Counterclaim Plaintiffs/<br>and Third Party Plaintiffs, | * |
| v. | * |
| GSE SYSTEMS, INC., | * |
| Third Party Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**GSE SYSTEMS, INC.'S MEMORANDUM IN OPPOSITION TO
WESTERN SERVICES CORP.'S MOTION TO PRESERVE
CONFIDENTIALITY OF RICHARD D. CLARK'S REPORT**

GSE Systems, Inc. ("GSE"), by and through counsel, submits this Memorandum in Opposition to Western Services Corp.'s ("WSC") Motion To Preserve Confidentiality of Richard D. Clark's Report.

**Summary of GSE's Position**

WSC seeks to maintain a confidential designation over the report of Richard D. Clark, WSC's Rule 26(a)(2) expert on financial matters. This Court should deny WSC's

request because the report itself contains no confidential or commercially sensitive information, GSE agrees to have WSC redact confidential/commercially sensitive information, and GSE need to show the report to a limited number of employees/officers/directors outweighs any confidentiality concerns WSC may have in a redacted report.

I.  **History Of The Dispute**

This case concerns ownership and authorship rights in technology and software known as SimPort and in the name SimPort itself.  Russian Research Center The Kurchatov Institute ("KI") asserts that it developed the SimPort technology and wrote software incorporating that technology in the early to mid 90s.  Alternatively, WSC asserts that it has authorship and ownership rights in the name, technology and software based primarily on its hosting of KI's Russian engineers in the United States during the first commercial installations of SimPort in the United States between 1996 and 1999. WSC also asserts rights in an "independently created" version of SimPort allegedly developed by WSC in late 1999 and early 2000.  The authorship and ownership rights in this case are complicated by various alleged oral, written, draft, implied, and express agreements between KI and WSC discussed and negotiated between 1996 and 1999.

In reaction to KI's suit against WSC, WSC brought a third party Complaint against GSE alleging various violations of the Lanham Act and common law unfair competition.  WSC's allegations against GSE center on a professional relationship between KI and GSE.  A contractual relationship between KI and GSE is memorialized in a memorandum of understanding and subsequent exclusive license agreement, both

executed in 2002.  Those agreements confer exclusive rights to GSE to market and license KI's SimPort technology and software under the name SimPort.  WSC asserts that GSE promotional materials identifying GSE as the exclusive licensee of the SimPort technology are incorrect and improper under the Lanham Act.  Further, WSC asserts that communications between GSE and representatives of domestic power plants concerning the fact that KI had instituted the present action somehow constituted unfair competition and was the proximate cause of SAIC/DS&S losing prime contracts to supply SimPort, and ultimately in WSC losing contracts from SAIC/DS&S to provide the technical resources necessary to install SimPort in a power plant setting.

     WSC has provided no documentary evidence that any potential contract it had with SAIC/DS&S was lost because of the dispute between KI and WSC.  WSC has further provided no documentary evidence that any conduct by GSE resulted in a power plant electing not to award a contract to SAIC/DS&S.  Instead, WSC relies on speculation and innuendo in concluding and, in turn, alleging that power plant contracts were not awarded to SAIC/DS&S because of the KI/WSC dispute and/or because GSE somehow unfairly competed in the power simulation marketplace.  On this shaky foundation WSC asserts a damage claim against GSE in the amount of $936,678.

     WSC's calculations supporting its damages claim of $936,678 exist in written form in only one place, the Rule 26(a)(2) report of Richard D. Clark.  Exhibits to the report calculate WSC's historical profit and losses on a project specific basis for an ultimate determination of an average "net income" percentage.  The report then applies this "net income percentage" to the sum of six gross contract bid amounts for contracts

3

WSC contends SAIC/DS&S lost as a result of conduct by KI and GSE. This calculation results in WSC's monetary damages claim against GSE under the third party Complaint and against KI under the Counterclaim.

Mr. Clark's report was provided to counsel for KI and GSE in a fax dated November 3, 2003. At that time, WSC did not designate the report as confidential under the terms of the Protective Order of Confidentiality ("Protective Order") agreed to by counsel and approved by this Court on June 4, 2003. Two days later, by e-mail to counsel for KI and GSE dated November 5, 2003, WSC's designated the report confidential under the Protective Order.[1]

In telephone discussions with counsel for WSC, GSE requested that WSC withdraw its confidential designation of the Clark report. GSE explained the necessity of showing the report to GSE and KI so that WSC's damages claim could be considered and evaluated. WSC declined to withdraw the confidential designation based on concerns that information in the report could be considered competitively sensitive.

In response to WSC's concerns, GSE proposed that WSC agree to subject the report to paragraph 10 of the Protective Order Of Confidentiality ("Protective Order"). See November 21, 2003 letter to WSC's counsel attached as <u>Exhibit A</u>. Paragraph 10 was included in the Protective Order by the parties in anticipation that certain information designated as confidential may need to be shared with officers, directors or employees.

---

[1] KI's counsel forwarded a copy of Mr. Clark's report to Mr. Richard Luebke, in house counsel for GSE, prior to WSC's designation of the report as confidential. Counsel for GSE and KI then received WSC's e-mail designating the report as confidential at 6:57 p.m. on November 5, 2003. Mr. Luebke was contacted and instructed to make no copies of the report and not to show or distribute the report to anyone at GSE or KI. Mr. Luebke confirmed that he would act in accordance with these instructions and confirmed that he had not shown or distributed the report prior to receiving these instructions.

4

Paragraph 10 of the protective order addresses the parties' agreement to confer in good faith to resolve these types of issues:

> The parties anticipate that it may be necessary to share with officers, directors or employees of a party certain information contained in documents marked Confidential. Counsel for the parties agree to confer in good faith in an attempt to reach agreement on either the sharing of such documents with officers, directors or employees of a party for purposes of the litigation only, or redaction of Confidential Information in such documents so that the remaining information may be shared with officers, directors or employees of a party without violating the provisions of this Order. The parties reserve the right to seek from the Court modification of this Order in the even that counsel cannot reach agreement on such issues.

See Protective Order attached as Exhibit 1 to WSC's Memorandum of Law in support of its motion to preserve the confidentiality of Mr. Clark's report ("WSC's Memorandum").

Discussions between counsel for WSC and GSE were held pursuant to Paragraph 10. GSE suggested that WSC propose a redacted version of the Clark report as a means of addressing WSC's confidentiality concerns. In particular, GSE suggested that the exhibits to the Clark report, containing WSC's profit and loss information on a project-by-project basis, be redacted. WSC refused this proposals and refused to subject the Clark report to paragraph 10.

GSE formally objected to WSC's designation of the report as confidential and requested that WSC reconsider its position in a letter dated November 25, 2003. See letter attached as <u>Exhibit B</u>. Unfortunately, rather than reconsidering its position or working toward a compromise position, WSC forced the issue to briefing before this Court.

**II.   The Information In The Body Of The Report Is Not Confidential**

The parties have agreed that information exchanged in discovery may be designated as confidential under the Protective Order if it falls within the scope of information contemplated by Rule 26(c)(7) (i.e. trade secret or confidential research, development or commercial information).  See Protective Order at Para. 1.  With the exception of the profit and loss statements attached as exhibits to Mr. Clark's report,[2] none of the information contained in the Clark report is confidential within the parties' mutually agreed definition.

Mr. Clark's report consists of three components:  (1) the four-page report itself; (2) Mr. Clark's Curriculum Vitae. (Exhibit 1); and (3) two pages of project specific profit and loss statements (Exhibits 2 and 3).  The unreasonableness of WSC's refusal to limit its confidential designation on the entire report is evidenced by the fact that WSC continues to seek to maintain as confidential all three parts of the report, even the Curriculum Vitae of its expert.  There is nothing commercially sensitive about Mr. Clark's C.V, it is not confidential, and should not be subject to the Protective Order in this case.

As discussed above, the profit and loss statements attached to Mr. Clark's report are arguably confidential and GSE agrees that these statements should be removed prior to GSE or KI receiving copies of the report.

---

[2] The profit and loss statements arguably contain confidential information and GSE agrees that these statements should be removed from Mr. Clark's report prior to copies being provided to GSE and KI for consideration and evaluation.

The only component of the report that would remain at issue is the four-page body of the report itself. A page-by-page review of the report body shows that none of the information in the report is "confidential" within the parties' definition of the term.

A.   **Page One**

Page one of Mr. Clark's report provides an introductory paragraph containing a disclaimer on Mr. Clark's opinion, his hourly rate, and similar information. Nothing in this paragraph is even arguably confidential.

The first subsection of the report is titled "Documents Reviewed." The introductory sentence and first numbered sentence state that Mr. Clark has reviewed information in preparing his report and that the information includes profit and loss statements on a project specific basis. The fact that Mr. Clark reviewed information and that he reviewed profit and loss statements is not confidential.

The second numbered sentence identifies the names of projects awarded by power plants to SAIC/DS&S between 1997 and 2002, the identifying number of the subcontract between SAIC/DS&S and WSC, and the dates of the awards of the subcontracts. There is nothing commercially sensitive about this information. Competitors in the power simulation industry know of the identity of power plants that have installed simulation software. In most instances, the power plants solicit requests for proposals prior to selecting a contractor to provide simulation software. The identity of the successful simulation software provider is also well known in the industry. Thus, there is nothing confidential about the fact that SAIC/DS&S won contracts for each of the projects listed numbered paragraph 2. Further, there is nothing confidential about the fact that WSC

7

was awarded the subcontracts from SAIC/DS&S for each of these contracts. It was known by the parties in this case prior to this litigation that SAIC/DS&S subcontracts its technical work on power plant simulation projects exclusively to WSC.

  B.  <u>Page Two</u>

  Page two begins with a continuation of the listing of project names, subcontract numbers and subcontract award dates from page one. As discussed above, there is nothing confidential about this information.

  Numbered sentence 3 is a listing of the project names, proposal reference numbers, and dates of proposal for the six contracts WSC alleges were lost because of conduct by KI and GSE. WSC does not consider the names of these projects confidential. WSC provided the names of each of these alleged lost contracts in its answers to interrogatories. See Answer to Interrogatory No. 5 attached as <u>Exhibit C</u>. WSC made no designation of confidentiality with respect to its answers to interrogatories. Further, this information is not confidential because WSC, GSE and other simulation software providers bid on many of these projects. It is known in the simulation software industry that WSC was not the successful bidder on these projects.

  The next subsection of the report is entitled "Historical Financial Analysis." The introductory paragraph to this section discusses the fact that Mr. Clark prepared profit and loss statements based on a distinction made by WSC in this case that projects were fulfilled utilizing "pre-2000 SimPort" and "2000 SimPort." There is nothing confidential about the fact that Mr. Clark prepared his profit and loss statements or that he prepared separate statements based on WSC's distinction between two "versions" of the software.

Likewise, there is nothing confidential in the text of footnotes 1 and 2 discussing assumptions made by Mr. Clark concerning the accuracy of financial numbers provided to him by WSC's counsel.

    C.    **<u>Page Three</u>**

Page three begins with a text paragraph that summarizes the gross loss on the six projects that utilized the "pre-2000 SimPort software." There is no detail in the paragraph concerning the total contract price for each project, the receipts for each project, or the costs of each project. Thus, there simply is nothing commercially sensitive to be learned from the fact that WSC had a combined loss on six project of a certain dollar amount.

Likewise, the second paragraph of page three contains the gross net income received by WSC from twelve separate projects utilizing the "2000 SimPort" software. Gross income is summarized in the report for the twelve projects and an average net income is computed on the projects. However, no project specific information is given. Without the project specific contract prices, project specific receipts and project specific costs, there is nothing commercially sensitive to be learned from these numbers. No contract bid by GSE or others in the simulation industry could be tailored to a competitive advantage based on the information contained in this paragraph.

Paragraph three of page three discusses an election made by Mr. Clark that he would not incorporate the losses incurred on the "pre-2000 SimPort" projects into his calculation of "average net income" used to calculate WSC's alleged losses. While subject to considerable debate between the parties, there is no "confidential" information

in this paragraph within the definition of the term agreed to by the parties.

The next subsection of the report is titled "Analysis of Damages and Conclusion." This section lists the names of the six projects allegedly lost by WSC and lists the gross contract amount bid by WSC for each project. Standing alone, this information is not commercially sensitive. The report does not provide the scope of the contract bids nor does the report detail the resources to be provided to each project. There is no specification of labor rates, overhead costs allocated to the project, or any other information that could be gleaned to determine how WSC arrived at its gross contract bid amounts. Documents produced in discovery by WSC contain some of this information but the underlying documents have been designated confidential and have not been provided to GSE. Thus, the juxtaposition of the project name next to the gross contract bid amount does not constitute confidential information because there simply is nothing commercially sensitive to be learned from the information as presented.

To the extent that the information could be considered commercially sensitive, GSE would agree to a redaction of the project names so that only the gross contract bid amounts appear in this section. This would permit GSE and KI to consider and evaluate the total gross contract amounts claimed for the six projects without knowing which contract bid amount applied to which of the six projects allegedly lost.

### D. Page Four

The last text paragraph of page three continues and concludes on page four. This paragraph merely applies Mr. Clark's calculated "net income percentage" to the total gross contract bid amounts for the six alleged lost projects to arrive at his monetary

damages calculation. Again, the gross numbers represented in this paragraph, without project specific detail amounts, should not be considered commercially sensitive or confidential because no commercial advantage could be obtained through a review and consideration of these calculations.

In sum, there is no confidential information on pages one through four of the body of Mr. Clark's report and there is no confidential information in Mr. Clark's C.V. The Court should deny WSC's motion to maintain its confidentiality designation on this information.

### III. GSE's Need To Evaluate WSC's Damages Claim Outweighs Any Minimal Confidentiality Concerns That Would Remain In A Redacted Report

In every protective order dispute, the courts must balance the harm one party may suffer from disclosure against the opposing party's need for access to the documents and information. See Moore's Federal Practice – Civil § 26.105[a]. Moreover, it is well recognized that "[c]ourts often afford fuller protection to technical, proprietary information than that extended to ordinary business information" such as the information at issue here. See, e.g., Davis v. AT&T Corp., 1998 U.S. Dist. LEXIS 20417, *4 (W.D.N.Y. 1998) (citing Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20, 22 (D.Del. 1988); Maritime Cinema Service Corp. v. Movies En Route, Inc., 60 F.R.D. 587 (S.D.N.Y. 1973). When the information or documents sought involve matters that are central to the entire case, at least some limited disclosure should be permitted. Maritime Cinema, 60 F.R.D. 587 (S.D.N.Y. 1973).

Contrary to WSC's assertion, GSE has a significant need to share Mr. Clark's report with at least some employees and/or officers and/or directors. WSC's damages claim is central to the entire case against GSE. As addressed above, GSE is being sued based on speculation and innuendo that power plants elected not to award simulation contracts to SAIC/DS&S because of some action of GSE and KI. WSC's damages claim for nearly one million dollars is based on this faulty assumption.

GSE and KI should be permitted to review and consider the evaluation and calculations performed by Mr. Clark and provide their input based on their experience in the simulation industry on the validity of the calculations and the assumptions made by Mr. Clark. This is the equitable and appropriate resolution of this dispute, particularly in light of GSE's willingness to have WSC redact even arguably commercially sensitive information from the report.

### Conclusion

For these reasons, GSE Systems, Inc. requests that WSC's Motion to Preserve the Confidential Designation of Richard D. Clark's Report by denied and that the Court grant such other and further relief as justice may require.

/s/
Charles L. Simmons Jr. P.C.
Federal Bar No. 024278
Francis J. Gorman, P.C.
Federal Bar No. 00069
Michael S. Yang
Federal Bar No. 025951
GORMAN & WILLIAMS
Two North Charles Street

Baltimore, Maryland 21201
410-528-0600
410-528-0602 (facsimile)

Attorneys for Third Party
Defendant GSE Systems, Inc.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of December, 2003, a copy of the foregoing was filed electronically and was served on the following registered users to whom electronic notice is sent upon filing:

Bruce R. Genderson, Esq.
Margaret A. Keeley, Esq.
Ann Sagerson, Esq.
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
 (202) 434-5000
Counsel for Western Services
Corporation and George Utmel

    and

John M.G. Murphy, Esq.
E. Scott Johnson, Esq.
Ober, Kaler, Grimes & Shriver, P.C.
120 East Baltimore Street
Baltimore, MD 21202
(410) 685-1120
Counsel for Russian Research Center
The Kurchatov Institute

                                       /s/
                            Charles L. Simmons Jr., P.C.