Interrogatory No. 5: State with particularity each and every fact supporting Your contention that "WSC has lost several contractual opportunities as a result of KI's and GSE's improper and intentional interference, and creation of confusion" (see paragraph 60 of WSC's Third-Party Complaint).

RESPONSE: WSC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. As discovery in this case has just begun it is premature for GSE to require WSC to "state with particularity each and every fact" supporting WSC's contention. Subject to and without waiving such objections, WSC states:

In or around July 2002, DS&S, with WSC serving as subcontractor, submitted a bid to Southern Nuclear Corporation Plant Farley ("Farley"). Upon information and belief, after the bid submission but before the awarding of the contract, GSE employees and/or agents contacted employees of Farley and suggested that WSC did not own the SimPort technology. Thereafter, the contract was awarded to RNI Technologies, a division of GSE, despite the fact that, upon information and belief, DS&S and WSC submitted the lowest bid and were technically qualified for the project.

In or around April 2002, DS&S, with WSC serving as subcontractor, submitted a bid for the Volgot Power Plant Simulator Upgrade Bid. Upon information and belief, after the bid submission but before the awarding of the contract, GSE employees and/or agents sent a fax transmission to employees and/or agents of Volgot suggesting that WSC did not own the SimPort technology.

9

Thereafter, the contract was awarded to RNI Technologies, a division of GSE, despite the fact that, upon information and belief, DS&S and WSC submitted the lowest bid and were technically qualified for the project.

In or around August 2002, DS&S, with WSC serving as subcontractor, submitted a bid for the Detroit Edison Fermi 2 Simulator Upgrade. Upon information and belief, DS&S and WSC were technically qualified for the project and submitted the lowest bid. Upon information and belief, Detroit Edison personnel told DS&S personnel that they were uncomfortable with the KI/WSC/GSE litigation and did not want to get involved. The contract was thereafter awarded to a higher bidder in or around February 2003.

In or around February 2003, DS&S, with WSC serving as subcontractor, submitted a bid for the Fort Calhoun Simulator Refurbishment Project. Upon information and belief, DS&S personnel were informally told by Fort Calhoun employees that they had no chance of being awarded this contract due to the pending litigation. Although DS&S and WSC were technically qualified, the contract was awarded to another bidder in May 2003. Upon information and belief, the bidder who was awarded the contract submitted a bid approximately two million dollars higher than the DS&S/WSC bid.

In or around February 2003, DS&S, with WSC serving as subcontractor, submitted a bid for the Emerson Dairyland Power Cooperative CRT Based Training Simulator ("Emerson"). Although this project has yet to be awarded, upon information and belief, employees at Emerson have told DS&S

employees that they are concerned about the pending lawsuit. DS&S and WSC are technically qualified for the project.

In addition to the specific bid proposals, WSC has been contacted by an employee of Electric Power Research Institute ("EPRI"), Merrill Quintrell, who has informed WSC that the ownership of the SimPort technology is a major concern among WSC customers. Upon information and belief, EPRI is postponing the award of several projects, which would otherwise be awarded to WSC, because of the confusion among EPRI members as to the ownership of SimPort technology and the concern over the pending lawsuit.

Pursuant to Fed. R. Civ. P. 33(d), WSC will produce the responsive documents.

**Interrogatory No. 6:** State with particularity each and every fact supporting Your contention that "WSC developed the SimPort technology" (see paragraph 63 of WSC's Third-Party Complaint).

**RESPONSE:** WSC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. As discovery in this case has just begun it is premature for GSE to require WSC to "state with particularity each and every fact" supporting WSC's contention. Subject to and without waiving such objections, WSC states:

### SimPort 1997

In approximately 1996, KI alleged to WSC that it had software that provided all the tools necessary to build a simulation model that was customized to a particular power plant, and was looking to market this software in the United